The Honorable John C. Coughenour

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BAROVIC V. BALLMER, ET AL. | Lead Case No: 2:14-cv-00540-JCC |
| | (Consolidated with Case No. 2:14-cv-00586-JCC) |
| This Document Relates To: | **NOMINAL DEFENDANT MICROSOFT CORPORATION'S MOTION TO DISMISS COMPLAINT** |
| ALL ACTIONS | NOTED ON MOTION CALENDAR: OCTOBER 31, 2014 |

NOMINAL DEFENDANT MICROSOFT
CORPORATION'S MOTION TO DISMISS
LEAD CASE NO: 2:14-CV-00540-JCC

**Orrick, Herrington & Sutcliffe LLP**
701 Fifth Avenue, Suite 5600
Seattle, WA  98104
Tel:  206-839-4300

## TABLE OF CONTENTS

**Page(s)**

I.   INTRODUCTION ................................................................................................ 1

II.  PLAINTIFFS' ALLEGATIONS OF FACT ....................................................... 4

    A.   Microsoft's 2009 Commitments With the EC and The 2011 Violation ........... 4

    B.   The Shareholder Demands and The Board's Investigation ............................... 5

    C.   This Lawsuit .................................................................................................... 8

III. ARGUMENT ..................................................................................................... 8

    A.   The Decision To File a Suit on Behalf of Microsoft Belongs  to the
        Board of Directors and Not to Plaintiffs. ........................................................ 9

    B.   The Business Judgment Rule Protects the Microsoft  Board's Decision
        Not to Pursue the Claims Asserted in this  Litigation. ................................... 10

    C.   Plaintiffs' Allegations Fail to Overcome the Presumption of Good Faith
        Under the Business Judgment Rule. ............................................................... 11

        1.   The Board Was Not Legally Required to Follow Any Prescribed
            Procedures and Retained Wide Discretion To Interview
            Witnesses ........................................................................................ 14

        2.   The Board Had No Legal Obligation To Deliver A Report Of Its
            Investigation To Plaintiffs. ............................................................. 16

        3.   Microsoft's Acknowledgment Of Its Technical Error Was Not
            An "Admission" That Its Directors or Officers Breached
            Fiduciary Duties ............................................................................. 17

IV.  CONCLUSION ................................................................................................ 18

NOMINAL DEFENDANT MICROSOFT         -i-
CORPORATION'S MOTION TO DISMISS
LEAD CASE NO: 2:14-CV-00540-JCC

**Orrick, Herrington & Sutcliffe LLP**
701 Fifth Avenue, Suite 5600
Seattle, WA  98104
Tel:  206-839-4300

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...........................................................................................9

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ...........................................................................................9

*In re Coinstar Inc. S'holder Deriv. Litig.*,
   No. C11-133 MJP, 2011 U.S. Dist. LEXIS 131817 (W.D. Wash. Nov. 14,
   2011)..................................................................................................................6

*Daniels-Hall v. Nat'l Educ. Ass'n*,
   629 F.3d 992 (9th Cir. 2010).............................................................................4

*Davis v. HSBC Bank Nevada, N.A.*,
   691 F.3d 1152 (9th Cir. 2012)...........................................................................5

*In re F5 Networks, Inc. Deriv. Litig.*,
   No. C06-794 RSL, 2007 WL 2476278, (W.D. Wash. Aug. 6, 2007) .............8, 12

*In re Gilead Sciences Secs. Litig.*,
   No. C03-4999 MJJ, 2005 U.S. Dist. LEXIS 3170,
   (N.D. Cal. Jan. 26, 2005)...................................................................................5

*Grassmueck v. Barnett*,
   281 F. Supp. 2d. 1227 (W.D. Wash. 2003) ......................................................14

*Halpert Enters., Inc. v. Harrison*,
   No. 07-1144-cv, 2008 WL 4585466 (2d Cir. Oct. 15, 2008) (unpublished
   opinion) ............................................................................................................14

**State Cases**

*Boeing Co. v. Shrontz*,
   C.A. No. 11273, 1994 Del. Ch. LEXIS 14 (Del. Ch. Jan. 19, 1994) ...............16

*In re Citigroup Inc. S'holder Deriv. Litig.*, 964 A.2d 106, 126 (Del. Ch. 2009) .....................10

*Davis v. Cox*,
   180 Wn. App. 514 (2014).................................................................................11

*In re F5 Networks, Inc.*,
   166 Wn.2d 229 (2009) ...................................................................................8, 9

NOMINAL DEFENDANT MICROSOFT
CORPORATION'S MOTION TO DISMISS
LEAD CASE NO: 2:14-CV-00540-JCC

-i-

**Orrick, Herrington & Sutcliffe LLP**
701 Fifth Avenue, Suite 5600
Seattle, WA  98104
Tel:  206-839-4300

*Gatz v. Ponsoldt,*
  No. Civ. A. 174-N, 2004 WL 3029868 (Del. Ch. Nov. 5, 2004) ..........................17

*Goodwin v. Castleton,*
  19 Wn.2d 748 (1944) ...........................................................................................9, 11

*Grimes v. Donald*
  673 A.2d 1207 (Del. Ch. 1996) ......................................................................8, 12, 18

*Haberman v. Wash. Pub. Power Supply Sys.,*
  109 Wn.2d 107 (1987) ..............................................................................................9

*Interlake Porsche & Audi, Inc. v. Bucholz,*
  45 Wn. App. 502 (1986) ..........................................................................................10

*Kindt v. Lundt,*
  No. Civ.A. 17751-NC, 2003 WL 21453879 (Del. Ch. May 30, 2003) ..................13

*Levine v. Smith,*
  591 A.2d 194 (Del. 1991) ...................................................................................14, 16

*Mount Moriah Cemetery ex rel. Dun & Bradstreet Corp. v. Moritz,*
  Civ. A. No. 11431, 1991 WL 50149 (Del. Ch. Apr. 4, 1991) ..............................15

*Nursing Home Bldg. Corp. v. De Hart,*
  13 Wn. App. 489 (1975) ..........................................................................................10

*Scattered Corp. v. Chicago Stock Exchange, Inc.,*
  No. cv 14010, 1996 WL 417507 (Del. Ch. July 12, 1996) ....................................13

*Scott v. Trans-Sys., Inc.*
  148 Wn.2d 701 (2003) ............................................................................................10

*Spiegel v. Buntrock,*
  571 A.2d 767 (Del. 1990) ....................................................................................9, 12

*In re Spokane Concrete Prods., Inc.,*
  126 Wn.2d 269 (1995) .............................................................................................11

*In re Walt Disney Co. Deriv. Litig.,*
  906 A.2d 27 (Del. 2006) ..........................................................................................12

**State Statutes**

RCW 23B.08.010(2)(b) .................................................................................................9

RCW 23B.08.320 .........................................................................................................14

NOMINAL DEFENDANT MICROSOFT CORPORATION'S
MOTION TO DISMISS
LEAD CASE NO: 2:14-CV-00540-JCC

-ii-

**Orrick, Herrington & Sutcliffe LLP**
701 Fifth Avenue, Suite 5600
Seattle, WA 98104
Tel:  206-839-4300

RCW 23B.16.020 ..................................................................................................................16

**Rules**

Fed. Rule Civ. P 12(b)(6) ....................................................................................1, 4, 9, 18

Fed. Rule Civ. P 23.1 ........................................................................................................1, 18

European Commission, Code of Conduct for Commissioners, C (2011) 2904, § 1.7,
   <http://ec.europa.eu/commission_2010-2014/pdf/code_conduct_en.pdf > (EU) ...............15

**Other Authorities**

W. Fletcher, *Private Corporations* (perm. ed. 1974) § 1039 ......................................................10

*Shareholder Litigation in Washington State,* Wash. State Bar Assoc.,
   § 3.6(4) (2014)..................................................................................................................10

NOMINAL DEFENDANT MICROSOFT CORPORATION'S
MOTION TO DISMISS
LEAD CASE NO: 2:14-CV-00540-JCC

-iii-

**Orrick, Herrington & Sutcliffe LLP**
701 Fifth Avenue, Suite 5600
Seattle, WA  98104
Tel:  206-839-4300

1    Nominal Defendant Microsoft Corporation ("Microsoft" or the "Company")

2  respectfully moves for dismissal of Plaintiffs' Complaint pursuant to Rules 12(b)(6) and 23.1

3  of the Federal Rules of Civil Procedure.  Plaintiffs' litigation demands were duly considered

4  and refused by the Company's Board of Directors, and Plaintiffs have not alleged

5  particularized facts to overcome the strong presumption of the business judgment rule.  As a

6  result, Plaintiffs have failed to establish a right to prosecute claims derivatively in the name of

7  Microsoft.

8                    **I.      INTRODUCTION**

9    In 2009, Microsoft resolved an antitrust dispute with the European Commission

10  ("EC").  In all versions of Windows licensed in the European Union, Microsoft committed to

11  include a Browser Choice Screen to promote consumer choice among internet browsers that

12  compete with its own Internet Explorer.  Microsoft generally complied with its commitment

13  until its engineers made a technical error in the release of Windows 7 Service Pack 1 ("SP1")

14  in 2011.  When it learned of the problem in 2012, Microsoft immediately investigated and

15  made a prompt and full report to the EC.  Based on the results of the Company's investigation

16  and report, the EC publicly issued its own report, ultimately fining Microsoft €561 million for

17  the violation.

18    This lawsuit ensued.  Plaintiffs are two individual shareholders who purport to sue on

19  Microsoft's behalf.  Undeterred by the conclusion that the violation resulted from a technical

20  engineering error (as admitted in their Complaint), Plaintiffs here allege, without explanation,

21  that some of the Company's directors and officers "caused Microsoft to eliminate the choice

22  screen" and should be liable for damages.  Before filing suit, Plaintiffs made a written demand

23  that the Board of Directors bring suit against Defendants.  Plaintiffs did not interview

24  witnesses or conduct their own investigation, and so offered no new facts to support breach of

25  fiduciary duty claims.  Microsoft's Board dutifully considered Plaintiffs' demand by creating a

26  Demand Review Committee, retaining independent legal counsel, and conducting an

27  investigation focused on the merits of the demand.  Although invited to make their own

28

1  presentation to the Committee, Plaintiffs' lawyers did not.  Based on the Committee's

2  investigation and the results of the Company's earlier investigation, the Board found no

3  fiduciary breaches, concluded that filing suit was not in the Company's best interests, and

4  passed a resolution refusing Plaintiffs' demand.  With their demand rejected, Plaintiffs now

5  sue derivatively.

6        Well-established law requires dismissal of Plaintiffs' derivative suit at the pleadings

7  stage.  The decision-making authority of a corporation is vested by statute in the corporation's

8  board of directors, and Washington's business judgment rule provides strong protection

9  against collateral attack by dissenting shareholders.  To proceed with a derivative claim,

10  shareholders must plead *particularized* facts that raise a reasonable doubt whether the directors

11  acted in good faith or performed a reasonable investigation in rejecting their demand.

12  Plaintiffs here allege *no* facts that could plausibly call the Board's good faith or reasonable

13  investigation into question.

14        Plaintiffs appear to rest their claim for derivative status entirely on the assertion that

15  the Board's investigation was unreasonable, but Plaintiffs plead no *facts* supporting this

16  conclusion.  To the contrary, the Complaint and attached exhibits highlight the robust nature of

17  the Company's investigation.  Ignoring the review of thousands of documents and interviews

18  of 36 witnesses, Plaintiffs' sole criticism of the investigation is that the Board did not

19  "interview … the EU competition chief, Joaquín Almunia, in connection with its

20  investigation."  There is an element of irony in this allegation.  While Plaintiffs claim that the

21  Board should have interviewed Mr. Almunia, their Complaint ignores that the Board (like

22  Plaintiffs) had access to the extensive findings from the EC investigative report prepared by

23  Mr. Almunia and his staff – findings which in no way contradict the conclusions in the

24  Board's Resolution denying Plaintiffs' demand.  Plaintiffs do not allege that there is any

25  additional material information known only to Mr. Almunia, and that the Board and DRC

26  failed to account for it.  More fundamentally, however, a board has broad discretion in its

27  choice of investigative techniques, including which witnesses to interview.

28

NOMINAL DEFENDANT MICROSOFT CORPORATION'S
MOTION TO DISMISS                                                  - 2 -
LEAD CASE NO: 2:14-CV-00540-JCC

Orrick, Herrington & Sutcliffe LLP
701 Fifth Avenue, Suite 5600
Seattle, WA  98104
Tel:  206-839-4300

The Complaint makes two additional assertions that are equally inadequate.  First, the Complaint alleges that the Board provided insufficient details to Plaintiffs describing its investigation.  Because a board has no obligation to provide shareholders with a written report of its internal investigation, Plaintiffs' contention that Microsoft responded to its demand only with "conclusory facts" fails as a matter of law.  Second, Plaintiffs assert that Microsoft must sue Defendants because the Company "admitted" a serious EC violation.  But acceptance of corporate responsibility for the Windows technical error is not an admission that its directors and officers "caused" the violation in breach of their duties, and cannot undermine the Board's business judgment.

Plaintiffs also completely ignore the Board's conclusion that Microsoft could not keep any damages it recovered from an action against directors and officers because of the combination of two factors.  First, Microsoft's articles of incorporation require Microsoft to indemnify directors and officers against a damages verdict except in the case of intentional or bad faith conduct, and none of the various investigations into this matter suggested even a hint of such misconduct (nor do the Plaintiffs allege it in their complaint).  Second, Microsoft is self-insured, and therefore could not recover insurance as a consequence of its obligation to indemnify.  Thus, even if Microsoft obtained an award of damages against the Individual Defendants, it would indemnify Defendants for that judgment, essentially paying itself.

In sum, after conducting a robust investigation, Microsoft's Board properly exercised its statutory authority to determine that pursuing the present action is not in Microsoft's best interests.  Plaintiffs have failed to allege particularized facts that the Microsoft board acted in bad faith or otherwise investigated unreasonably.  Accordingly, Plaintiffs' attempt to usurp the Board's statutory authority is barred by the business judgment rule, and the Court should dismiss Plaintiffs' Complaint with prejudice.  If the presumption of the business judgment rule is sustained, the Court will not need to consider the Individual Defendants' concurrently filed Motion to Dismiss.

NOMINAL DEFENDANT MICROSOFT CORPORATION'S
MOTION TO DISMISS
LEAD CASE NO: 2:14-CV-00540-JCC

- 3 -

Orrick, Herrington & Sutcliffe LLP
701 Fifth Avenue, Suite 5600
Seattle, WA  98104
Tel:  206-839-4300

## II.   PLAINTIFFS' ALLEGATIONS OF FACT[1]

### A.   MICROSOFT'S 2009 COMMITMENTS WITH THE EC AND THE 2011 VIOLATION

In December 2009, to resolve a pending antitrust dispute concerning Microsoft's inclusion of only the Internet Explorer web browser (and not other internet web browsers) with the Windows Operating System, Microsoft agreed to certain commitments with the EC (the "Commitments," which Plaintiffs call the "Settlement"), under which Microsoft agreed to deliver a Browser Choice Screen ("BCS") to personal computers operating Windows in the European Economic Area for a period of five years.  Compl. ¶ 3.  Showing consumers the BCS in the Windows setup process was intended to give them the option to install competing internet web browsers other than Internet Explorer.  Compl. ¶ 48.

In the Summer of 2012, European Union competition commissioner, Joaquín Almunia, "warned Defendants that on some occasions Microsoft software was not providing users the full access to competing Web browsers."  Compl. ¶¶ 5, 53.  As Microsoft disclosed to the public and the EC, this issue was primarily caused by a technical error by Microsoft engineers in failing to update code that distributed the choice screen in the SP1 software between February 2011 and July 2012.  Compl. ¶ 57.  As a result of the technical error, new PCs with SP1 did not receive the BCS software as they should have.  *Id*.  Microsoft promptly accepted responsibility for the omission.[2]  It retained the law firm Dechert LLP to investigate and prepare a report on "Microsoft's Failure to Deliver the Browser Choice Screen to Windows 7

---

[1] Pursuant to Fed.R.Civ.P. 12(b)(6), Plaintiffs' factual allegations are assumed to be true, except as otherwise stated below, only for the purposes of this motion.

[2] Plaintiffs' conclusory assertion that "defendants did nothing to halt the illicit scheme" in response to EC inquiries (Compl. ¶ 53), and that "defendants offered no explanation as to how the Settlement could have been violated" (Compl. ¶ 6) are unequivocally contradicted by specific factual allegations from news reports quoted in the Complaint.  Compl. ¶ 57 (noting Microsoft's explanation that the BCS was inadvertently left out of the Windows 7 SP1 when an engineering team forgot to update code that distributed the choice screen; that Microsoft had "taken steps to strengthen our software development and other processes to help avoid this mistake—or anything similar—in the future," and the fact that the EU considered Microsoft's quick admission of the omission, multiple apologies and coordination with the EU authorities in determining fine amount).  Therefore, Plaintiff's conclusory assertions should be disregarded.  *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) ("We are not . . . required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.").

NOMINAL DEFENDANT MICROSOFT CORPORATION'S
MOTION TO DISMISS
LEAD CASE NO: 2:14-CV-00540-JCC

- 4 -

Orrick, Herrington & Sutcliffe LLP
701 Fifth Avenue, Suite 5600
Seattle, WA  98104
Tel:  206-839-4300

Service Pack 1 Personal Computers in Europe," provided the European Commission "a complete and candid assessment," and took steps "to strengthen [its] software development and other processes" to help avoid such mistakes in the future.  Compl. ¶¶ 56, 58; Declaration of Daniel J. Dunne, dated August 11, 2014 ("Dunne Decl.") Ex. A ("EC Dec.") ¶¶ 31-36.[3]

In October 2012, the EC informed Microsoft of its preliminary view that the Company had violated its Commitments (*i.e.*, by failing to present the BCS to users of new computers with SP1 from the introduction of SP1 in February 2011 until July 2012).  Compl. ¶ 54.  On March 6, 2013, the EC issued its Decision and Findings, in which it fined the Company €561 million for noncompliance with the Commitments.  EC Dec. ¶ 79; Compl. ¶ 6.  Tellingly, Plaintiffs do not include in their Complaint any of the factual findings from the publicly available EC report, which found that Microsoft's failure to deliver the browser choice screen to certain affected users was entirely "due to inadvertent technical and human errors."  EC Dec. ¶ 52.  The same day the fine was announced, Microsoft issued a statement apologizing, taking full responsibility for the technical error that caused the problem, and describing its efforts to "strengthen [its] software development and other processes to help avoid this mistake – or anything similar – in the future."  Compl. ¶ 55.  Plaintiffs do not allege that these efforts were inadequate.

## B.    THE SHAREHOLDER DEMANDS AND THE BOARD'S INVESTIGATION

Shortly after this press release, counsel for purported shareholders Stephen DiPhilipo and Kim Barovic sent demand letters (the "Demand Letters") to the Microsoft Board demanding that the Board investigate and thereafter initiate legal action on behalf of the Company against certain officers and directors who engaged in the alleged misconduct that resulted in the BCS error.  Compl. ¶¶ 8, 15.

---

[3] The Court may take judicial notice of the publicly available European Commission Decision, which imposed the €561 million fine on Microsoft because that decision is referred to throughout the Complaint (*e.g.*, Compl. ¶¶ 6, 55, 56, Ex. B at 2).  *See Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012) (on a motion to dismiss, "courts may take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading") (citation and quotation marks omitted); *In re Gilead Sciences Secs. Litig.*, No. C 03-4999 MJJ, 2005 WL 181885, *4 (N.D. Cal. Jan. 26, 2005) (courts may take judicial notice of documents relied on but "not expressly referenced in the [complaint], provided the authenticity of those documents is not in dispute").

NOMINAL DEFENDANT MICROSOFT CORPORATION'S
MOTION TO DISMISS
LEAD CASE NO: 2:14-CV-00540-JCC

- 5 -

Orrick, Herrington & Sutcliffe LLP
701 Fifth Avenue, Suite 5600
Seattle, WA 98104
Tel: 206-839-4300

On May 10, 2013, the Board of Directors appointed two members to a Demand Review Committee to review, investigate and make a recommendation to the Board concerning what actions, if any, would be necessary or appropriate and in the best interests of the Company and its stockholders in light of the Demand Letters.  Compl. ¶ 9, Ex. E at 2.  The DRC retained the law firm Fenwick & West LLP as independent counsel to assist it.  Among other things, the DRC:

- "Reviewed and analyzed the European Commission's March 2013 Decision and Findings";

- "Reviewed and analyzed the September 4, 2012 Report of Dechert LLP on Microsoft's Failure to Deliver Browser Choice Screen to Windows 7 Service Pack 1 Personal Computers in Europe (the 'Dechert Report')";

- "Reviewed and analyzed the key documents identified by Dechert and relied on in the Dechert Report";

- "Reviewed over 10,000 additional documents";

- "Conducted relevant witness interviews";

- "Analyzed the Company's internal controls and reporting structure relating to antitrust compliance, both before and after July 2012";

- "Researched and analyzed the standards of conduct for, and legal standards for imposing liability on, corporate officers and directors under Washington law";

- "Reviewed and analyzed relevant corporate governance documents, including the Company's Articles of Incorporation, Bylaws, Corporate Governance Guidelines, Standards of Business Conduct, minutes from meetings of the Company's Board of Directors, Antitrust Compliance Committee, and Regulatory and Public Policy Committee, and relevant press releases and SEC filings";[4]

- "Considered the Company's indemnification obligations to current and former officers and directors, as well as the Company's self-insured status"; and

---

[4] Defendants request that the Court take judicial notice of Microsoft's Articles of Incorporation, Dunne Decl. Ex. B, available at <http://www.microsoft.com/investor/CorporateGovernance/PoliciesAndGuidelines/articlesincorp.aspx#a_13>, because the document is in the public record and relates directly to the viability of the claims Plaintiffs wish the Board to pursue.  *See In re Coinstar Inc. S'holder Deriv. Litig.*, No. C11-133 MJP, 2011 U.S. Dist. LEXIS 131817 at *8 (W.D. Wash. Nov. 14, 2011) (on a motion to dismiss shareholder derivative action for failure to allege demand futility, court took judicial notice of a company's certificate of incorporation, which contained director exculpation clause).

NOMINAL DEFENDANT MICROSOFT CORPORATION'S
MOTION TO DISMISS
LEAD CASE NO: 2:14-CV-00540-JCC

- 6 -

Orrick, Herrington & Sutcliffe LLP
701 Fifth Avenue, Suite 5600
Seattle, WA  98104
Tel:  206-839-4300

- "Invited counsel for [Plaintiffs and Randee Bernstein] to meet with counsel for the Demand Review Committee and to provide any information they believed that the Demand Review Committee should consider."

Compl. Ex. B at 2-3.  As to the last point, Plaintiffs do not allege that they or their attorneys accepted the DRC's invitation to meet with the Committee to provide additional information for the DRC's consideration.

At the conclusion of its investigation, the DRC presented its findings to the Board and recommended that the Board reject Plaintiffs' demands.  After careful consideration, the Board adopted the DRC's recommendation and passed a resolution rejecting Plaintiffs' demands and declining to permit Plaintiffs to initiate or pursue any litigation on the Company's behalf relating to any of the allegations contained in the Demand Letters.  Compl. ¶ 9, Ex. C.  In reaching this conclusion, the Board found, among other things, that:  (1) the relevant facts did not support a claim for breach of fiduciary duty; (2) Microsoft could not recover damages from Defendants in any event because they are immune from liability and/or entitled to indemnification, and because Microsoft is self-insured; (3) Microsoft could not secure meaningful equitable relief because the Company had already enacted significant remedial measures; and (4) pursuing the demanded claims would result in substantial expense to the Company.  Compl. Ex. C.  On January 28, 2014, the DRC's counsel informed Plaintiffs that the DRC had investigated the demands and the Board had rejected them.  Compl. ¶ 9, Exs. B, E.

Under Article X of Microsoft's Amended and Restated Articles of Incorporation, each of the Director Defendants is immune from liability for monetary damages for their conduct as a director except, in relevant part, for intentional misconduct, knowing violation of law or receipt of a personal benefit to which the director is not legally entitled — none of which Plaintiffs allege in their Complaint.  Dunne Decl., Ex. B.  In addition, under Article XII, all of the Defendants are entitled to indemnification by Microsoft for any liability arising out of their conduct as officers or directors of the Company, subject to the same exceptions described above with respect to Article X.  *Id.*  Microsoft is self-insured.  Compl. Ex. B at 3.

NOMINAL DEFENDANT MICROSOFT CORPORATION'S
MOTION TO DISMISS
LEAD CASE NO: 2:14-CV-00540-JCC

- 7 -

Orrick, Herrington & Sutcliffe LLP
701 Fifth Avenue, Suite 5600
Seattle, WA  98104
Tel:  206-839-4300

On March 26, 2014, following a request from Barovic's counsel, Microsoft provided further details concerning the 36 people who had been interviewed in connection with the BCS issue.  Compl. ¶¶ 13, 67.  Microsoft disclosed that the persons interviewed included "members of the Board and the Board's Antitrust Compliance Committee, a former president of Microsoft's Windows division, [thirteen] members of Microsoft's Legal and Corporate Affairs department [including members of its antitrust group and antitrust compliance team], [ten] members of the Windows Sustained Engineering team, [two] employees in Advertising and Consumer Support, an executive in Windows Marketing, an employee in Windows testing; and an employee in Original Equipment Manufacturer Sales."  Compl. ¶ 67 (bracketed text from Compl. Ex. C).  In addition, two members of the Windows Product team and three members of the Windows Update team were also interviewed.  Compl. Ex. C.

## C.    THIS LAWSUIT

On April 11 and 18, 2014, respectively, Barovic and DiPhilipo filed the instant derivative complaints on behalf of Microsoft.  Plaintiffs do not allege in their Complaint that they ever conducted any investigation, interviewed witnesses, or otherwise developed new facts or theories not already known to Microsoft.  They do not allege that they met with the DRC to discuss their factual support or legal theories.  On June 26, 2014, Barovic and DiPhilipo filed a Verified Consolidated Shareholder Derivative Complaint.

## III.    ARGUMENT

Following a board's refusal of a demand, a shareholder derivative plaintiff must meet the heightened pleading standard of "alleg[ing] facts with particularity creating a reasonable doubt that the board is entitled to the benefit of the [business judgment rule] presumption." *Grimes v. Donald*, 673 A.2d 1207, 1219 (1996); *see also In re F5 Networks, Inc. Derivative Litig.*, No. C06-794 RSL, 2007 WL 2476278, at *7 (W.D. Wash. Aug. 6, 2007).[5]  The standards for assessing derivative complaints mesh perfectly with the standards that govern motions to

---

[5] Washington courts look to Delaware courts for authority on some matters of corporate governance.  *In re F5 Networks, Inc. Derivative Litig.*, 166 Wn.2d 229, 239 (2009) (looking to Delaware law on derivative litigation for guidance in the absence of Washington law).

NOMINAL DEFENDANT MICROSOFT CORPORATION'S
MOTION TO DISMISS
LEAD CASE NO: 2:14-CV-00540-JCC

- 8 -

Orrick, Herrington & Sutcliffe LLP
701 Fifth Avenue, Suite 5600
Seattle, WA  98104
Tel:  206-839-4300

1   dismiss under Fed.R.Civ.P. 12(b)(6).  The Court should dismiss the Complaint because Plaintiffs

2   fail to allege facts supporting a plausible claim for relief, *Ashcroft v. Iqbal*, 556 U.S. 662, 678

3   (2009), and because the Complaint fails to make factual allegations that "raise a right to relief

4   above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

5   **A.    THE DECISION TO FILE A SUIT ON BEHALF OF MICROSOFT BELONGS**
       **TO THE BOARD OF DIRECTORS AND NOT TO PLAINTIFFS.**
6

7           It is a fundamental tenet of Washington corporations law that, "[t]he business and

8   affairs of the corporation shall be managed under the direction of its board of directors, which

9   shall have exclusive authority as to the substantive decisions concerning management of the

10  corporation's business."  RCW 23B.08.010(2)(b).  It is similarly well settled that this authority

11  extends to the decision over whether to file a suit on the corporation's behalf.  *See In re F5*

12  *Networks, Inc.*, 166 Wn.2d at 236 ("[T]he corporation's board and officers manage the

13  corporation and make decisions like whether to file a lawsuit.").

14          Shareholder derivative suits that attempt to wrest away the board's statutory right to

15  make business decisions "are disfavored and may be brought only in exceptional

16  circumstances." *Haberman v. Wash. Pub. Power Supply Sys.*, 109 Wn.2d 107, 147 (1987).

17  These circumstances only exist when the directors or officers of a corporation "are acting

18  fraudulently or collusively among themselves or with others, in such a manner as will result in

19  serious injury to the corporation or to the interests of its stockholders …" *Goodwin v.*

20  *Castleton*, 19 Wn.2d 748, 761 (1944).  Accordingly, courts and the legislature have created

21  strict rules to govern whether and how such an extraordinary suit should be allowed to

22  proceed.

23          One such safeguard is the requirement that before initiating suit, the shareholder makes

24  a written demand on the board of directors for action.  "The purpose of pre-suit demand is to

25  assure that the stockholder affords the corporation the opportunity to address an alleged wrong

26  without litigation, to decide whether to invest the resources of the corporation in litigation, and

27  to control any litigation which does occur." *In re F5 Networks, Inc.*, 166 Wn.2d at 236-40; *see*

28  *also Spiegel v. Buntrock*, 571 A.2d 767, 773 (Del. 1990).

NOMINAL DEFENDANT MICROSOFT CORPORATION'S
MOTION TO DISMISS                                                              - 9 -
LEAD CASE NO: 2:14-CV-00540-JCC

Orrick, Herrington & Sutcliffe LLP
701 Fifth Avenue, Suite 5600
Seattle, WA  98104
Tel:  206-839-4300

1    Here, Plaintiffs made largely identical demands on the Board on March 21 and 22,

2    2013.  Compl. Exs. A, D.  As discussed in detail above at 5-8, after carefully investigating and

3    considering the matter, the Board concluded that the facts did not support a legally cognizable

4    claim and that it was not in the Company's best interests to pursue any claims.  Compl., Ex. B

5    at 2-3.  The Board rejected Plaintiffs' demands and declined to permit Plaintiffs to initiate or

6    pursue any litigation on the Company's behalf relating to any of the allegations contained in

7    the Demand Letters.  Compl. ¶ 64, Ex. B at 2.  As explained in the next section, that decision

8    is protected by Washington's business judgment rule and precludes Plaintiffs from maintaining

9    this lawsuit.

10   **B.    THE BUSINESS JUDGMENT RULE PROTECTS THE MICROSOFT**
         **BOARD'S DECISION NOT TO PURSUE THE CLAIMS ASSERTED IN THIS**
11       **LITIGATION.**

12   The business judgment rule is a standard of judicial review that protects the business

13   decisions of a company's directors or officers from judicial scrutiny by presuming that the

14   directors and officers acted in good faith in compliance with their duties.  *Nursing Home Bldg.*

15   *Corp. v. De Hart*, 13 Wn. App. 489, 498-99 (1975) ("[T]he law will not hold directors liable

16   for honest errors, for mistakes of judgment, when they act without corrupt motive and in good

17   faith. . .") (quoting W. Fletcher, *Private Corporations* (perm. ed. 1974) § 1039); *Scott v.*

18   *Trans-Sys., Inc.* 148 Wn.2d 701, 709 (2003) (courts will not scrutinize business decisions

19   where there is a reasonable basis to indicate that the decision was undertaken in good faith);

20   *Interlake Porsche & Audi, Inc. v. Bucholz*, 45 Wn. App. 502, 509 (1986) (directors not liable

21   for decisions made in good faith).[6]  The business judgment rule recognizes that even the best

22   of directors, who fully comply with their duties in good faith, may make business decisions

23   that, in hindsight, turn out to be incorrect and result in losses to the company.  *See, e.g.,*

24   *Citigroup Inc. S'holder Deriv. Litig.*, 964 A.2d 106, 126 (Del. Ch. 2009) ("To impose liability

---

25   [6] The Washington Supreme Court has not addressed whether a shareholder is required to show bad faith
26   to defeat the presumption of the business judgment rule in a demand refused case.  *Shareholder Litigation in*
     *Washington State*, Wash. State Bar Assoc. § 3.6(4) at 100 (2014) (citations omitted).  Although Microsoft
27   believes that Plaintiffs must prove bad faith, even if the presumption could be defeated by showing that the
     directors acted unreasonably so as to breach a duty of care, Plaintiffs' Complaint fails to allege particularized
28   facts to satisfy this standard.

1   on directors for making a 'wrong' business decision would cripple their ability to earn returns

2   for investors by taking business risks.").

3         The business judgment rule provides directors and officers with a defense to liability,

4   and as a judicially-created presumption, it is intended to free directors and officers from the

5   burdens of defending litigation over their decisions.  Courts have recognized that they are ill-

6   equipped to second-guess and scrutinize complex corporate business decisions based on

7   hindsight.  *Davis v. Cox*, 180 Wn. App. 514, 535 (2014) ("The business judgment rule cautions

8   against courts substituting their judgment for that of the board of directors, absent evidence of

9   fraud, dishonesty, or incompetence.") (citing *In re Spokane Concrete Prods., Inc.*, 126 Wn.2d

10   269, 279 (1995)).  As a result, under the business judgment rule, a board's refusal to initiate

11   litigation in response to a shareholder demand is entitled to the same broad deference and

12   judicial restraint as other corporate decisions.  Even where claims may have arguable merit

13   (and the claims here do not), a board may refuse to sue in its discretion because it believes

14   litigation is not in the best interests of the corporation.  Shareholders have no right to overturn

15   that decision in court.  As explained by the Washington Supreme Court,

16        [t]he mere fact that a corporation has a cause of action for an injury does not
17        always make it incumbent upon it to sue, any more than in the case of an
          individual.  If, in the opinion of the directors . . . the best interests of the
18        company do not require it to sue, it need not do so.  The matter ordinarily is
          within their discretion and if they act in good faith, their refusal to sue violates
19        no right of dissenting stockholders, so as to entitle them to maintain a suit in their
          own behalf.  The exercise of such discretion by the directors will not be lightly
20        set aside by the court, and where a stockholder complains of such action of the
          directors the court will consider the circumstances, and, if no bad faith is shown,
21        will decline to substitute the judgment of the stockholder for that of the
          managing directors.
22

23   *Goodwin*, 19 Wn.2d at 762-63.

24   **C.    PLAINTIFFS' ALLEGATIONS FAIL TO OVERCOME THE PRESUMPTION
             OF GOOD FAITH UNDER THE BUSINESS JUDGMENT RULE.**
25

26         Once a demand is refused, a shareholder's subsequent derivative suit must be

27   dismissed on motion unless the shareholder meets the heavy burden of rebutting the

28

NOMINAL DEFENDANT MICROSOFT CORPORATION'S
MOTION TO DISMISS
LEAD CASE NO: 2:14-CV-00540-JCC                              - 11 -

Orrick, Herrington & Sutcliffe LLP
701 Fifth Avenue, Suite 5600
Seattle, WA  98104
Tel:  206-839-4300

presumption of the business judgment rule by "alleg[ing] facts with particularity creating a reasonable doubt that the board is entitled to the benefit of the [business judgment rule] presumption." *Grimes*, 673 A.2d at 1219; *see also In re F5 Networks, Inc. Derivative Litig.*, 2007 WL 2476278, at *7 (adopting Delaware demand futility standard of requiring plaintiff to "allege particularized facts creating a reasonable doubt that (1) the directors are disinterested and independent, or (2) the challenged transaction was otherwise the product of a valid exercise of business judgment"); *Spiegel*, 571 A.2d at 777 ("Absent an abuse of discretion, if the requirements of the traditional business judgment rule are met, the board of directors' decision not to pursue the derivative claim will be respected by the courts.  In such cases, a board of directors' motion to dismiss an action filed by a shareholder, whose demand has been rejected, must be granted.") (citations omitted).

In this case, Plaintiffs have not overcome the strong presumption of the business judgment rule.  They have not pled particularized facts giving rise to a reasonable doubt that, in rejecting Plaintiffs' demand, the Microsoft Board breached any of its duties of loyalty, good faith or, if applicable, due care.  *First*, as to the duty of loyalty, by serving a pre-suit demand on the Board, Plaintiffs conceded that a majority of the Microsoft Board is disinterested and independent and competent to respond to their demand.  *See Spiegel*, 571 A.2d at 775 (holding that a demand is a legal concession).  The Complaint does not challenge the independence and disinterestedness of the Board of Directors who rejected their demand, and Plaintiffs' demand bars them from doing so.  As a result, the Board's duty of loyalty is not at issue here.

*Second*, Plaintiffs also make no allegations that the investigation and refusal of their demand was tainted by bad faith by members of the Board.  *See In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27, 67 (Del. 2006) (defining bad faith as "a purpose other than that of advancing the best interests of the corporation," acting "with the intent to violate applicable positive law," or "intentionally fail[ing] to act in the face of a known duty to act, demonstrating a conscious disregard for [one's] duties").  Under Washington Supreme Court cases, bad faith is the only clear basis for overcoming the presumption of the business

NOMINAL DEFENDANT MICROSOFT CORPORATION'S
MOTION TO DISMISS
LEAD CASE NO: 2:14-CV-00540-JCC

- 12 -

Orrick, Herrington & Sutcliffe LLP
701 Fifth Avenue, Suite 5600
Seattle, WA 98104
Tel:  206-839-4300

1    judgment rule.  *See supra* at 10-11.  Plaintiffs' failure to plead a breach of the duty of good

2    faith here forecloses any argument that they have met this burden.

3              *Finally*, as to the arguable legal contention that the Board's investigation was

4    unreasonable, *see supra*, note 6, the Complaint itself demonstrates that the Board's

5    investigation was robust, and Plaintiffs have failed to raise any substantial doubts to the

6    contrary.  With the assistance of independent counsel from Fenwick & West, the DRC

7    conducted an extensive investigation over a period of months which involved, among other

8    things, review and analysis of:  the March 6, 2013 EC Decision; relevant law; the report

9    prepared by the Dechert law firm concerning Microsoft's implementation of the BCS;

10   documents identified and relied upon by Dechert; and over 10,000 additional documents.  The

11   Company also interviewed 36 directors, executives and employees, some more than once.  The

12   DRC analyzed Microsoft's internal controls, its corporate governance documents, and

13   Microsoft's indemnification obligations to current and former officers and directors.

14   Investigations on the scale undertaken in this case are frequently cited as indicia of a thorough

15   and good-faith investigation.[7]

16             Save for the alleged failure to conduct one improbable interview with an EC official,

17   discussed in the next section, Plaintiffs allege no gaps in the investigation, and no material

18   facts that were ignored or disregarded by the Board.  For their part, Plaintiffs and their lawyers

19   offered nothing of substance to the process.  They failed to contribute anything by way of

20   witness interviews, critical documents, material facts or compelling liability theories to assist

21   and guide the Board in its evaluation.  The DRC even invited Plaintiffs' counsel to provide any

22   information they believed the DRC should consider.  Compl. Ex. B at 2-3.  The Complaint

23   does not mention Plaintiffs' response to the invitation; in fact, they did not accept the

24

25

26             [7] *See, e.g.*, *Scattered Corp. v. Chicago Stock Exchange, Inc.*, No. cv 14010, 1996 WL 417507 at *5 (Del.
     Ch. July 12, 1996) (dismissing derivative suit where "[t]he Special Committee conducted its own investigation
     and interviewed more than 25 persons, as well as other persons the plaintiffs had suggested would corroborate
27   their claims of wrongful conduct"); *Kindt v. Lundt*, No. Civ.A. 17751-NC, 2003 WL 21453879 (Del. Ch. May 30,
     2003) (dismissing derivative suit where plaintiff did "not seriously dispute the process employed by the SLC,"
     which reviewed "50,000 pages of documents and interviewed twenty-six persons").

28

NOMINAL DEFENDANT MICROSOFT CORPORATION'S
MOTION TO DISMISS
LEAD CASE NO: 2:14-CV-00540-JCC                     - 13 -        **Orrick, Herrington & Sutcliffe LLP**
                                                                701 Fifth Avenue, Suite 5600
                                                                Seattle, WA  98104
                                                                Tel:  206-839-4300

1   invitation.  In sum, Plaintiffs allege no deficiencies in the investigation so great that they might

2   plausibly lead to an inference that it was not conducted in good faith.

3          In addition, Plaintiffs failed to address the fact that Microsoft's self-insured status

4   eliminates any arguable benefit Microsoft might gain from prevailing in a suit against

5   Defendants.  Even if the Company won a money judgment against Defendants, Microsoft

6   would be required to indemnify the Defendants for the amount of that judgment.  In other

7   words, because it carries no directors and officers liability insurance policy, the damages to

8   Microsoft would be paid from Microsoft's own pocket, not to mention the attorneys' fees and

9   expenses of litigation for *all* litigants.  As a result, Plaintiffs would recover only if they could

10  show non-indemnifiable conduct by the Plaintiffs — intentional misconduct, a knowing

11  violation of law, or a transaction from which the directors personally benefited.  *See*

12  *Grassmueck v. Barnett*, 281 F. Supp. 2d 1227, 1233 (W.D. Wash. 2003) (quoting RCW

13  23B.08.320).  Plaintiffs, however, presented no evidence of non-indemnifiable breaches and

14  financial benefit to the DRC when invited to do so, so they have no basis to attack the Board's

15  conclusion that a suit was not in Microsoft's best interests.

16          **1.      The Board Was Not Legally Required to Follow Any Prescribed
                  Procedures and Retained Wide Discretion To Interview Witnesses**

17

18          Plaintiffs contend that the DRC investigation was deficient because "the DRC never

19  interviewed Almunia or any member of the European Commission" who might "corroborate

20  Barovic's claims of wrongful conduct." Compl. ¶ 14.  It is well settled that there is "no

21  prescribed procedure that a board must follow" in responding to a demand, *Levine v. Smith*,

22  591 A.2d 194, 214 (Del. 1991), and a board that conducts an investigation is under no

23  obligation to make use of any particular investigative technique.  *Halpert Enters., Inc. v.*

24  *Harrison*, No. 07-1144-cv, 2008 WL 4585466, at *2 (2d Cir. Oct. 15, 2008) (unpublished

25  opinion) ("[The lack of proscribed procedures for board investigations] is derived from the

26  underlying norm of the business judgment rule-when making a business decision, such as

27  whether to pursue litigation in response to a shareholder demand, a board must be free to

28  exercise its broad discretion without excessive judicial fetters.").  Indeed, "the choice of people

NOMINAL DEFENDANT MICROSOFT CORPORATION'S
MOTION TO DISMISS
LEAD CASE NO: 2:14-CV-00540-JCC                    - 14 -

Orrick, Herrington & Sutcliffe LLP
701 Fifth Avenue, Suite 5600
Seattle, WA  98104
Tel: 206-839-4300

1   to interview or documents to review is one on which reasonable minds may differ. . . .

2   Inevitably, there will be potential witnesses, documents and other leads that the investigator

3   will decide not to pursue." *Mount Moriah Cemetery ex rel. Dun & Bradstreet Corp. v. Moritz*,

4   Civ. A. No. 11431, 1991 WL 50149, at *4 (Del. Ch. Apr. 4, 1991).  Thus, even if reasonable

5   minds could differ as to whether attempting to interview Mr. Almunia would be helpful, the

6   Board was not obligated by law to interview Mr. Almunia or another EC official, and the

7   failure to conduct such an interview does not give rise to any doubt that the DRC's

8   investigation was reasonable or that the Board acted in good faith.

9           Not only was the Board not legally required to interview any particular official,

10   Plaintiffs have alleged no facts to demonstrate that an interview would have led to a material

11   change in the total mix of information.  The Complaint contains no allegations that

12   Mr. Almunia or any other EC official had personal knowledge or unique information about

13   possible breaches of duties by Microsoft's officers or directors, let alone the substance of such

14   information and how it should have led to a different decision in response to their demands.

15   Nothing prevented Plaintiffs from requesting their own "interview" with an EC official and,

16   assuming that some EC official consented to such an "interview," supplying resulting

17   information to the DRC.  But that is apparently not something they or their lawyers chose to

18   do, and for good reason.  EU regulations mandating open, public meetings and prohibiting *ex

19   parte* communications would not allow an EC official to meet privately to furnish information

20   concerning official business.[8]

21           Although not quoted in Plaintiffs' complaint, the EC has in fact already "spoken" to the

22   DRC about its findings—when it issued a publicly available written decision on March 6,

23   2013, setting forth its own findings and conclusions.  *See* Dunne Decl., Ex. A, EC Dec.  The

24   DRC reviewed the EC's Decision, Compl. Ex. B at 2, and given the EC's finding that the

25   violation was "due to inadvertent technical and human errors," *id.* at ¶ 54, the DRC would

---

26   [8] "Commissioners shall not make any comment which could call into question a decision taken by the
27   Commission. They shall also refrain from disclosing what is said at meetings of the Commission."  European
     Commission, Code of Conduct for Commissioners, C (2011) 2904, available at
28   <http://ec.europa.eu/commission_2010-2014/pdf/code_conduct_en.pdf > § 1.7.

NOMINAL DEFENDANT MICROSOFT CORPORATION'S
MOTION TO DISMISS                                        - 15 -
LEAD CASE NO: 2:14-CV-00540-JCC

Orrick, Herrington & Sutcliffe LLP
701 Fifth Avenue, Suite 5600
Seattle, WA  98104
Tel:  206-839-4300

have had no reason to attempt to interview any EC official about the conduct of directors and officers.  Because they inexplicably omit any findings from the EC's Decision in the Complaint, Plaintiffs obviously do not allege that the EC found wrongdoing at the board or executive levels.[9]  As a result, Plaintiffs have failed to identify any investigative deficiencies with respect to the EC that might serve as an arguable basis for their effort to overturn the Board's business judgment.

### 2. The Board Had No Legal Obligation To Deliver A Report Of Its Investigation To Plaintiffs.

Plaintiffs also allege that the Board wrongfully refused their demand because the Board provided them only with a "conclusory" resolution instead of a detailed written report and has therefore unreasonably attempted "to insulate their investigation from any scrutiny."[10]  Compl. ¶¶ 65, 73.  Corporations and their directors are under no legal obligation to provide a shareholder with a written report.  Shareholder access to board documents is defined by statute, and under Washington law, access is narrowly limited to several categories of documents.[11]  In addressing similar claims that shareholder demands were improperly refused, Delaware courts have held that there exists no legal duty to produce written reports of board investigations.  As explained by the Delaware Chancery Court in *Boeing Co. v. Shrontz*, C.A. No. 11273, 1994 Del. CH. LEXIS 14, *12,

> The Supreme Court in *Levine* [*v. Smith*, 591 A.2d 194 (Del. 1991)] carefully considered and rejected the argument for 'limited discovery' in demand refused litigation.  Yet plaintiffs are advocating that the failure to provide a form of

---

[9] Although it is unnecessary for Microsoft to address the findings in the EC Decision for purposes of this motion, suffice it to say they offer no support for Plaintiffs' claims.

[10] Oddly, Plaintiffs allege that the Resolution "provides absolutely no detail whatsoever regarding who was interviewed . . . ," and that DiPhilipo's counsel therefore has "no idea if the individuals with the most knowledge of the facts were even interviewed."  Compl. ¶74. Exhibit C to the Complaint identifies the specific positions occupied by these interviewees.

[11] Washington law limits a shareholder's statutory right of inspection of corporate records to, in relevant part, "[e]xcerpts from minutes of any meeting of the board of directors, or of any meeting of a committee of the board of directors while exercising the authority of the board of directors, minutes of any meeting of the shareholders, and records of corporate actions approved by the shareholders or board of directors or a committee thereof without a meeting…"  RCW 23B.16.020.

NOMINAL DEFENDANT MICROSOFT CORPORATION'S
MOTION TO DISMISS
LEAD CASE NO: 2:14-CV-00540-JCC

- 16 -

Orrick, Herrington & Sutcliffe LLP
701 Fifth Avenue, Suite 5600
Seattle, WA  98104
Tel:  206-839-4300

limited discovery [the special committee's written report on its investigation] evidences wrongful refusal of demand.  To accept this argument would be to undermine the discovery ruling in *Levine* and side-step the pleading requirements of Rule 23.1   I am satisfied that the failure to disclose a special committee's report to a derivative plaintiff does not, as a general proposition, evidence wrongful refusal of demand.

*See also Gatz v. Ponsoldt*, No. Civ. A. 174-N, 2004 WL 3029868, at *5 (Del. Ch. Nov. 5, 2004) (no report from investigation in response to shareholder demand is required, and failure to generate a report does not rebut presumption of business judgment rule).  In actuality, when they received a copy of the Board's resolution in response to their requests, Plaintiffs received a detailed description of the investigation's procedures and a thorough explanation of the Board's reasoning that it was not in Microsoft's best interests to accept their demand.  Nothing more is required.

### 3. Microsoft's Acknowledgment Of Its Technical Error Was Not An "Admission" That Its Directors or Officers Breached Fiduciary Duties

Plaintiffs allege that the Board was required to sue Defendants because "Defendants caused the Company **to admit to the wrongdoing and accept responsibility.**"  Compl. ¶¶ 65, 73 (emphasis in original).  Plaintiffs appear to equate Microsoft's acceptance of responsibility for a non-intentional violation of the Commitments to an admission that the Individual Defendants breached their statutory fiduciary duties to the corporation—implying that the Board's finding to the contrary in rejecting the Demands is not protected by the business judgment rule.  The contention is built on a false premise because Microsoft's actual statement that, "[w]e take full responsibility for the technical error that caused this problem and have apologized for it" (Compl. ¶ 58) cannot reasonably be interpreted as an admission that the Individual Defendants violated their fiduciary duties of good faith, loyalty or due care.  The statement says nothing more than Microsoft's engineers made an honest, albeit substantial, mistake.

NOMINAL DEFENDANT MICROSOFT CORPORATION'S
MOTION TO DISMISS
LEAD CASE NO: 2:14-CV-00540-JCC

- 17 -

Orrick, Herrington & Sutcliffe LLP
701 Fifth Avenue, Suite 5600
Seattle, WA  98104
Tel:  206-839-4300

1    Plaintiffs fail to allege any *facts* to support an inference that the engineers' technical

2    mistake in this case stemmed from breaches of duties by officers or directors.  Bald assertions

3    fail to satisfy Plaintiffs' burden to allege particularized facts plausibly demonstrating breaches

4    of duty.  *See, e.g.*, *Grimes*, 673 A.2d at 1220 (rejecting as conclusory plaintiff's allegation that

5    "refusal could not have been the result of an adequate, good faith investigation since the Board

6    decided not to act on the demand").  In the end, Plaintiffs offer no facts that defeat application

7    of the business judgment rule to the decision by Microsoft's Board of Directors to reject

8    Plaintiffs' demand to sue the Individual Defendants.

9                              **IV.    CONCLUSION**

10    For the reasons stated above, Microsoft Corporation respectfully requests that the

11    Court dismiss Plaintiffs' complaint pursuant to Rules 12(b)(6) and 23.1 of the Federal Rules of

12    Civil Procedure, with prejudice.

13

14    Dated: August 11, 2014                    ORRICK, HERRINGTON & SUTCLIFFE LLP

15

16                                              By: /s/ Daniel J. Dunne
                                                   George E. Greer (WSBA No. 11050)
17                                                 Daniel J. Dunne  (WSBA No. 16999)
                                                   Charles J. Ha (WSBA No. 34430)
18                                                 ggreer@orrick.com
                                                   ddunne@orrick.com
19                                                 charlesha@orrick.com

20                                                 701 5th Avenue, Suite 5600
21                                                 Seattle, Washington 08104-7079
                                                   Telephone:  +1-206-839-4300
22                                                 Facsimile:  +1-206-839-4301

23                                                 *Attorneys for Nominal Defendant Microsoft*
24                                                 *Corporation*

25

26

27

28

NOMINAL DEFENDANT MICROSOFT CORPORATION'S
MOTION TO DISMISS                                            - 18 -
LEAD CASE NO: 2:14-CV-00540-JCC

**Orrick, Herrington & Sutcliffe LLP**
701 Fifth Avenue, Suite 5600
Seattle, WA  98104
Tel:  206-839-4300