1
2
3
4
5
6
7

The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
9
10

BAROVIC v. BALLMER, ET AL.,

11

12    This Document Relates To:

13    ALL ACTIONS

14

15

16
17
18
19
20
21
22
23
24
25
26
27

)
)   Lead Case No. 2:14-cv-00540-JCC
)
)   (Consolidated with
)   Case No. 2:14-cv-00586-JCC)
)
)   INDIVIDUAL DEFENDANTS'
)   MOTION TO DISMISS
)
)   Noted on Motion Calendar:
)   October 31, 2014
)

INDIVIDUAL DEFENDANTS'
MOTION TO DISMISS (2:14-cv-00540-JCC)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

DWT 24607659v1 0025936-002100

1

2

# <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................ 1

II.     FACTS .............................................................................................................. 2

        A.      The December 16, 2009, Settlement. .................................................... 2

        B.      In July 2012, Microsoft Was Notified the Browser Choice Screen Was Not
                Fully Deployed. .................................................................................... 3

        C.      The Browser Choice Screen Was Eliminated Due to a Technical Error. ............. 3

        D.      Microsoft Promptly Corrected the Error. .............................................. 3

        E.      Plaintiffs Identify No Flaws in Microsoft's Internal Controls. ........................... 4

        F.      Microsoft's Articles of Incorporation Exculpate Directors and Indemnify
                Both Directors and Officers Against Liability for Unintentional Conduct. ......... 6

III.    ARGUMENT .................................................................................................... 6

        A.      The Court Should Dismiss Plaintiffs' Claims for Inadequate Oversight. ........... 6

                1.      Plaintiffs Must Meet a Heightened Pleading Standard to State a
                        Claim Based on Inadequate Corporate Oversight. ................................... 6

                2.      Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty Based
                        on Allegedly Inadequate Corporate Oversight. ....................................... 9

                        a.      Plaintiffs allege no facts showing the Individual Defendants
                                "caused" the browser choice screen to be eliminated. ................. 9

                        b.      Plaintiffs fail to allege facts showing pervasive internal
                                controls problems, much less that Individual Defendants
                                ignored pervasive problems ........................................................ 10

                        c.      Plaintiffs' allegations belie the contention that the Individual
                                Defendants failed to act quickly to remedy the technical
                                error. ....................................................................................... 13

        B.      The Individual Defendants Breached No Fiduciary Duties by Filing and
                Signing Microsoft's 2011 10-K ............................................................. 14

        C.      Plaintiffs Fail to Allege a Viable Unjust Enrichment Claim. ............................ 16

IV.     CONCLUSION ................................................................................................. 17

INDIVIDUAL DEFENDANTS'
MOTION TO DISMISS (2:14-cv-00540-JCC) - i

DWT 24607659v1 0025936-002100

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

1

2

<u>**TABLE OF AUTHORITIES**</u>

3

**Page(s)**

4

**Federal Cases**

5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..............................................................................................6, 7

6

7

*In re Bank of Am. Corp. Sec., Deriv. & Emp. Ret. Income Sec. Act Litig.*,
  2013 WL 1777766 (S.D.N.Y. Apr. 25, 2013) ............................................8, 11, 16

8

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................7

9

10

*In re Coinstar Inc. S'holder Deriv. Litig.*,
  2011 WL 5553778 (W.D. Wash. Nov. 14, 2011)..........................................4, 6, 9

11

12

*In re Cray Inc. Deriv. Litig.*,
  431 F. Supp. 2d 1114 (W.D. Wash. 2006) ...............................................................7

13

14

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
  751 F.3d 990 (9th Cir. 2014) ...................................................................................7

15

*Fernandes v. Bianco*,
  2006 WL 6862716 (W.D. Wash. June 22, 2006) ...................................................15

16

17

*Grassmueck v. Barnett*,
  281 F. Supp. 2d 1227 (W.D. Wash. 2003) ...............................................................9

18

*Kamen v. Kemper Fin. Servs., Inc.*,
  500 U.S. 90 (1991) ...................................................................................................7

19

20

*In re Pfizer Inc. S'holder Deriv. Litig.*,
  722 F. Supp. 2d 453 (S.D.N.Y. 2010) ...................................................................16

21

22

*Schwartzman v. McGavick*,
  2007 WL 1174697 (W.D. Wash. Apr. 19, 2007) .....................................................7

23

*Steckman v. Hart Brewing, Inc.*,
  143 F.3d 1293 (9th Cir. 1998) .................................................................................7

24

25

*Vivendi S.A. v T-Mobile USA, Inc.*,
  586 F.3d 689 (9th Cir. 2009) ...................................................................................7

26

27

INDIVIDUAL DEFENDANTS'
MOTION TO DISMISS (2:14-cv-00540-JCC) - ii

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

**State Cases**

*A.R. DeMarco Enters., Inc. v. Ocean Spray Cranberries, Inc.*,
    2002 WL 31820970 (Del. Ch. Nov. 26, 2002)....................................................15

*In re Caremark Int'l Inc. Deriv. Litig.*,
    698 A.2d 959 (Del. Ch. 1996) ................................................................. *passim*

*In re China Auto. Sys., Inc. Deriv. Litig.*,
    2013 WL 4672059 (Del. Ch. Aug. 30, 2013).............................................10, 11

*David B. Shaev Profit Sharing Account v. Armstrong*,
    2006 WL 391931 (Del. Ch. Feb. 13, 2006)...............................................12, 13

*Desimone v. Barrows*,
    924 A.2d 908 (Del. Ch. 2007) ...................................................................10, 12

*In re Dow Chem. Co. Deriv. Litig.*,
    2010 WL 66769 (Del. Ch. Jan. 11, 2010) ...........................................................12

*In re F5 Networks, Inc.*,
    166 Wn.2d 229, 207 P.3d 433 (2009) ..................................................................7

*Gagliardi v. TriFoods Int'l, Inc.*,
    683 A.2d 1049 (Del. Ch. 1996) ............................................................................8

*Guttman v. Huang*,
    823 A.2d 492 (Del. Ch. 2003) ............................................................................12

*In re Lear Corp. S'holder Litig.*,
    967 A.2d 640 (Del. 2008)......................................................................................9

*Lyondell Chem. Co. v. Ryan*,
    970 A.2d 235 (Del. 2009)......................................................................................8

*Malone v. Brincat*,
    722 A.2d 5 (Del. 1998)..................................................................................14, 15

*Metro Commc'n Corp. v. Advanced Mobilecomm Techs. Inc.*,
    854 A.2d 121 (Del. Ch. 2004) ............................................................................15

*Rodriguez v. Loudeye Corp.*,
    144 Wn. App. 709, 189 P.3d 168 (2008)...........................................................15

*Stone ex rel. AmSouth Bancorporation v. Ritter*,
    911 A.2d 362 (Del. 2006)..........................................................................8, 10, 12

INDIVIDUAL DEFENDANTS'
MOTION TO DISMISS (2:14-cv-00540-JCC) - iii
DWT 24607659v1 0025936-002100

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

*South v. Baker,*
   62 A.3d 1 (Del. Ch. 2012) ........................................................................8, 10, 12

*Taylor v. Kissner,*
   893 F. Supp. 2d 659 (D. Del. 2012) ...................................................................16

*Wood v. Baum,*
   953 A.2d 136 (Del. 2008) .....................................................................................9

*Young v. Young,*
   164 Wn.2d 477, 191 P.3d 1258 (2008) ...............................................................16

**Statutes**

RCW 23B.08.320 .........................................................................................................6

RCW 23B.08.500-.570 .................................................................................................6

RCW 24.03.025(4)(c) ...................................................................................................6

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6)......................................................................6

INDIVIDUAL DEFENDANTS'
MOTION TO DISMISS (2:14-cv-00540-JCC) - iv
DWT 24607659v1 0025936-002100

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

# I.   INTRODUCTION

In July 2012, Microsoft learned one of its software engineering teams had made a technical error, causing a European Windows update to omit a screen that offered users a choice of internet browsers in addition to Microsoft's Internet Explorer.  Because the inadvertent omission violated a 2009 agreement between Microsoft and the European Commission, Microsoft promptly acknowledged and corrected the mistake.  Nevertheless, the European Commission imposed a significant fine on Microsoft in 2012.

Now, two Microsoft shareholders, Kim Barovic and Stephen DePhilipo ("Plaintiffs"), bring this purported derivative action alleging various Microsoft officers and directors (the "Individual Defendants") bear legal responsibility for the error, and must reimburse the Company for the fine it paid to the European Commission, because the browser choice omission happened "on their watch."  (The Individual Defendants include Microsoft directors Steven A. Ballmer, Dina D. Dublon, William H. Gates III, Maria M. Klawe, David F. Marquardt, Charles H. Noski, Helmut Panke, and John W. Thompson, former director Stephen J. Luczo, current Microsoft officers B. Kevin Turner and Brad Smith, and former officer Peter S. Klein.)  Plaintiffs contend the Individual Defendants breached a fiduciary duty by failing to correct unspecified "obvious and pervasive problems" in Microsoft's internal controls.

The Microsoft Board of Directors, after a full investigation, declined Plaintiffs' demands to pursue the claims.  As the Company explains in its contemporaneous motion to dismiss, the business judgment rule protects the Board's decision, which cannot be disturbed.  Accordingly, the Court should dismiss the lawsuit on Microsoft's motion and need not reach this motion by the Individual Defendants.

But even if the Court denies the Company's motion, it should nevertheless dismiss Plaintiffs' claims against the Individual Defendants for the following reasons:

*First*, Plaintiffs' claims for breach of fiduciary duty (Counts II, III, V, and VI) do not come close to pleading viable derivative claims for inadequate oversight.  To state an oversight claim, Plaintiffs must allege particular facts showing the Individual Defendants engaged in

INDIVIDUAL DEFENDANTS'
MOTION TO DISMISS (2:14-cv-00540-JCC) - 1

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

*intentional* misconduct, ***knowingly caused or consciously permitted*** the Company to violate the law, or ***utterly failed to establish a reporting system*** to monitor the Company's legal compliance.  Although the case law emphasizes the difficulty of pleading and proving claims of this nature, Plaintiffs allege only conclusory oversight theories.  Rather than allege facts from which a breach of fiduciary duty might be inferred, Plaintiffs rest on broad assertions that a costly mistake was made and the Individual Defendants must bear the blame.  Because Plaintiffs offer ***no facts*** to suggest the Individual Defendants knew anything about the technical error before Microsoft released the European update, engaged in intentional misconduct, knowingly caused or permitted a legal violation, or failed to establish a reporting system, the Court should dismiss their claims for breach of fiduciary duty.

*Second*, the Court should dismiss Plaintiffs' claim that the Individual Defendants disseminated inaccurate information (Count I) because the Complaint identifies no inaccuracy in the targeted statement (i.e., an excerpt from Microsoft's 2011 Form 10-K) and no facts showing the Individual Defendants intentionally made any misstatement.

*Third*, the Court should dismiss Plaintiffs' unjust enrichment claim (Count IV) for failure to allege the technical error enriched the Individual Defendants in any way.  Further, the unjust enrichment claim relies entirely upon, and therefore cannot survive dismissal of, Plaintiffs' fatally flawed fiduciary duty claims.

## II.   FACTS

### A.   The December 16, 2009, Settlement.

On December 16, 2009, Microsoft entered into Commitments with the European Commission (which Plaintiffs call the "Settlement") through which Microsoft agreed to give Windows users in Europe a choice among eleven Internet browsers.[1]  ¶¶ 3, 47.[2]  During the

---

[1] Under the Commitments, Microsoft agreed to provide a "browser choice screen" to remind European users who had Microsoft's Internet Explorer as their default browser that they could select other browsers for use with Windows.  Plaintiffs make no allegation that the affected Windows users were ever restricted from downloading and using other browsers.

[2] Unless otherwise stated, all paragraph and exhibit citations refer to the Verified Consolidated Shareholder Derivative Complaint ("Complaint") [Dkt. 18].

INDIVIDUAL DEFENDANTS'
MOTION TO DISMISS (2:14-cv-00540-JCC) - 2
DWT 24607659v1 0025936-002100

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1    five-year term of the Settlement, Microsoft agreed to send browser choice screens to new

2    Windows purchasers and via software updates to 100 million European Windows users who

3    had set Internet Explorer as their main browser.  ¶ 47.

4    **B.    In July 2012, Microsoft Was Notified the Browser Choice Screen Was Not
           Fully Deployed.**

5        Plaintiffs allege that in July 2012 the European Union antitrust chief, Joaquín Almunia,

6    advised Microsoft that on some occasions its software was not providing Windows users full

7    access to competing browsers, because it failed to include the required browser choice screen.

8    ¶¶ 5, 53, 56.  Media reports stated the problem had begun over a year earlier.  ¶¶ 56-57.

9    **C.    The Browser Choice Screen Was Eliminated Due to a Technical Error.**

10       Plaintiffs repeatedly cite reports that a technical error caused the omission of the

11   browser choice screen.  ¶¶ 5-6, 53, 56-58.  Specifically, "the browser ballot was left out of

12   Windows 7 [Service Pack 1] when an engineering team forgot to update code that distributed

13   the choice screen."  ¶ 57 (quoting a *Computerworld.com* article dated March 6, 2013).

14       Plaintiffs allege no other reason why the browser choice screen was omitted.

15   Nevertheless, Plaintiffs assert the Individual Defendants "caused" Microsoft to eliminate the

16   ballot screen to further an "illicit scheme."  ¶¶ 4-5, 49, 52, 97.  But Plaintiffs allege ***no facts***

17   suggesting the Individual Defendants even knew, before July 2012, that the Windows update

18   had omitted the ballot screen.  Nor do Plaintiffs allege facts suggesting the Individual

19   Defendants caused the omission of the browser choice screen.  Instead, unable to allege facts

20   linking the Individual Defendants to the technical error, Plaintiffs resort to the logically flawed

21   insinuation that the Individual Defendants bear responsibility merely because the problem

22   happened "on their watch"—i.e., when the Individual Defendants happened to be serving as

23   Microsoft directors and/or officers.  ¶¶ 4, 49.

24   **D.    Microsoft Promptly Corrected the Error.**

25       Plaintiffs concede Microsoft promptly corrected the technical error when it was

26   identified in July 2012.  ¶ 57 (the browser choice screen was omitted only "until July 2012").

27

INDIVIDUAL DEFENDANTS'
MOTION TO DISMISS (2:14-cv-00540-JCC) - 3

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

They observe Microsoft promptly accepted responsibility for the omission, provided the European Commission "a complete and candid assessment," and took steps "to strengthen [its] software development and other processes" to help avoid similar mistakes in the future.  ¶¶ 56, 58.  In addition, Plaintiffs acknowledge the €561 million fine imposed on Microsoft, though large, was mitigated by the Company's swift, cooperative response.  ¶ 57 ("Microsoft's quick admission of the omission, multiple apologies, and cooperation with EU authorities, were factors Almunia took into consideration when deciding on a fine . . . .").[3]  In its Form 10-K report to the Securities Exchange Commission, dated July 26, 2012, Microsoft summarized the European Commission's notification of the Company's omission of the browser choice screen and the Company's explanation.  Rummage Decl., Ex. A at 8-9.[4]

E.      **Plaintiffs Identify No Flaws in Microsoft's Internal Controls.**

Plaintiffs do not allege Microsoft lacked internal controls.  Instead, they merely refer to the roles of the board of directors (and its Audit Committee) and the Chief Compliance Officer, as well as Microsoft's internal controls and "related Company compliance policies and programs."  ¶ 44.  Plaintiffs also point to the interdisciplinary nature of the internal controls, policies, and programs, by observing the Demand Review Committee interviewed members of the Board's Antitrust Compliance Committee, as well as dozens of employees in multiple departments.  ¶¶ 13, 67.  Further, Plaintiffs cite the Board's resolution declining the derivative demands, which confirms the Demand Review Committee and the full Board of Directors "[a]nalyzed the Company's internal controls and reporting structure relating to antitrust compliance, both before and after July 2012."  ¶¶ 64, 72 and Exs. B & E.

Rather than claim Microsoft failed to establish internal controls, Plaintiffs assert: "Defendants willfully ignored the obvious and pervasive problems with Microsoft's internal

---

[3] Further, as noted in the Board's resolution declining Plaintiffs' derivative demands (Exs. B & E), Microsoft commissioned Dechert LLP to investigate and prepare a September 4, 2012, Report on Microsoft's Failure to Deliver the Browser Choice Screen to Windows 7 Service Pack 1 Personal Computers in Europe.

[4] The Court may take judicial notice of Microsoft's 2012 Form 10-K, as an official record filed publicly with the SEC.  *In re Coinstar Inc. S'holder Deriv. Litig.*, 2011 WL 5553778, at *2 (W.D. Wash. Nov. 14, 2011).

INDIVIDUAL DEFENDANTS'
MOTION TO DISMISS (2:14-cv-00540-JCC) - 4

DWT 24607659v1 0025936-002100

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

controls and practices and procedures and failed to make a good faith effort to correct these problems or prevent their recurrence." ¶ 84.  Despite calling these alleged problems "obvious and pervasive," Plaintiffs make no effort to identify the allegedly problematic internal controls, describe their purported shortcomings, or explain how they might have been corrected.  Nor do they allege facts suggesting the Individual Defendants knew about problems with Microsoft's internal controls, much less problems connected in some way to development of software code for Windows updates in Europe.  In short, Plaintiffs allege *nothing* to show the browser choice screen was omitted for any reason other than the sole cause cited repeatedly in their Complaint: a technical mistake by a software engineering team.

Plaintiffs repeat their broad allegations about internal controls (Count II) in overlapping fashion under several labels.  In Count III, Plaintiffs allege the Individual Defendants breached fiduciary duties by "failing to properly manage the company" to ensure compliance with contract obligations and "correct the misconduct." ¶ 88.  In Count V, they allege the Individual Defendants committed an "abuse of . . . control" by "causing or allowing Microsoft to violate the Settlement." ¶ 97.  In Count VI, Plaintiffs accuse the Individual Defendants of "gross mismanagement," saying they "abandoned and abdicated" their responsibilities.  ¶ 103.  In each instance, Plaintiffs allege *no facts* about alleged defects in the Company's internal controls, Individual Defendants' supposed knowledge of or responsibility for those defects, or any connection between the alleged defects and the elimination of the browser choice screen.

Plaintiffs' failure to assert any facts showing alleged deficiencies in Microsoft's internal controls is telling, given the European Commission Decision on March 6, 2013, detailing the findings of its investigation and the reasoning behind the fine imposed on Microsoft.  In fact, Plaintiffs could not rely on the Commission Decision to support their theory:  the Commission Decision concluded the failure to deliver the browser choice screen to certain affected users was entirely "due to inadvertent technical and human errors."  Dunne Decl. in Supp. of Nominal Def. Microsoft's Mot. to Dismiss [Dkt. 20] Ex. A ¶ 52.  Although the Board's resolution declining Plaintiffs' derivative demand (*see* Exs. B & E) cited the European

INDIVIDUAL DEFENDANTS'
MOTION TO DISMISS (2:14-cv-00540-JCC) - 5

DWT 24607659v1 0025936-002100

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

Commission Decision, Plaintiffs' Complaint makes **no** reference to the most obvious source of information concerning the conduct underlying the European Commission's fine.

### F.   Microsoft's Articles of Incorporation Exculpate Directors and Indemnify Both Directors and Officers Against Liability for Unintentional Conduct.

Microsoft's Articles of Incorporation exculpate the Company's directors against all monetary liability other than for intentional misconduct and certain other conduct. (RCW 23B.08.320 and RCW 24.03.025(4)(c) authorize exculpatory clauses of this nature.) Article X states in relevant part:  "A director of the Corporation shall not be personally liable to the Corporation or its shareholders for monetary damages for conduct as a director, except for: (a) Acts or omissions involving intentional misconduct by the director or a knowing violation of law by the director; (b) Conduct violating Section 23B.08.310 . . . (which involves distributions by the Corporation); or (c) Any transaction from which the director will personally receive a benefit in money, property, or services to which the director is not legally entitled."  Rummage Decl., Ex. B, art. X.[5]  Although Article X exculpates only directors, Article 12.2 of the Articles of Incorporation provides broad indemnity to Microsoft directors **and** officers (again, as authorized by Washington's Business Corporation Act, RCW 23B.08.500-.570), except for the same types of conduct excluded from exculpation under Article X.  *See id.*, art. XII at 12.2.

## III.   ARGUMENT

### A.   The Court Should Dismiss Plaintiffs' Claims for Inadequate Oversight.

#### 1.   Plaintiffs Must Meet a Heightened Pleading Standard to State a Claim Based on Inadequate Corporate Oversight.

The Court should grant a Rule 12(b)(6) motion in any case where a plaintiff fails to allege facts stating a plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs must plead facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  The Court need not assume the truth of

---

[5] The Court may take judicial notice of Microsoft's Articles of Incorporation on a motion to dismiss.  *In re Coinstar*, 2011 WL 5553778, at *2.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

allegations that "simply recite the elements of a cause of action," and must identify and disregard allegations that are merely legal conclusions. *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) (citation omitted). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief," warranting dismissal. *Iqbal*, 556 U.S. at 678 (internal quotations and citations omitted). "[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citations omitted). In addition, courts are "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998). And allegations based upon "information and belief" must set forth specific plausible facts to support the belief. *See Vivendi S.A. v T-Mobile USA, Inc.*, 586 F.3d 689, 694 (9th Cir. 2009).

Here, Plaintiffs must ***also*** meet the more demanding requirements of a corporate oversight claim. Their Complaint rests on the core theory that the Individual Defendants caused or allowed the European Settlement to be violated by ignoring unspecified "obvious and pervasive problems with Microsoft's internal controls and practices and procedures." ¶ 84. Although Plaintiffs make this allegation in many ways, in essence they claim inadequate oversight, "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996).[6] For "good policy reasons," it is "difficult to charge directors with responsibility for

---

[6] Because Microsoft is a Washington corporation, its internal governance is subject to Washington law. *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 108-09 (1991). State and federal courts in Washington may look to the well-developed law of Delaware as persuasive with regard to corporate governance matters. *See, e.g.*, *In re F5 Networks, Inc.*, 166 Wn.2d 229, 239-40, 207 P.3d 433, 438-39 (2009); *Schwartzman v. McGavick*, 2007 WL 1174697, at *4 (W.D. Wash. Apr. 19, 2007); *In re Cray Inc. Deriv. Litig.*, 431 F. Supp. 2d 1114, 1119 (W.D. Wash. 2006).

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

corporate losses for an alleged breach of care, where there is no conflict of interest or no facts suggesting suspect motivation." *Id.* (citing *Gagliardi v. TriFoods Int'l, Inc.*, 683 A.2d 1049 (Del. Ch. 1996)).  If officers and directors could be personally liable for unintentional mistakes within the corporation—including even mistakes by rank-and-file employees, such as a software engineering team—few would ever be willing to serve in those roles.

For this reason, a plaintiff seeking to state a claim for inadequate oversight "must plead facts sufficient to establish board involvement in ***conscious wrongdoing***." *South v. Baker*, 62 A.3d 1, 6 (Del. Ch. 2012) (emphasis added).  Plaintiffs must make plausible, non-conclusory factual allegations showing the Individual Defendants are liable for "knowingly causing or consciously permitting the corporation to violate positive law, or failing utterly to attempt to establish a reporting system or other oversight mechanism to monitor the corporation's legal compliance." *Id.*  "[O]nly a sustained or systematic failure of the board to exercise oversight—such as an utter failure to attempt to assure a reasonable information and reporting system exists—will establish the lack of good faith that is a necessary condition to liability." *In re Caremark*, 698 A.2d at 971.  In the alternative, Plaintiffs must allege facts giving rise to a reasonable inference that the Individual Defendants, "having implemented such a system or controls, consciously failed to monitor or oversee its operations thus disabling themselves from being informed of the risks or problems requiring their attention." *Stone ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362, 370 (Del. 2006).  "In either case, imposition of liability requires a showing that the directors knew they were not discharging their fiduciary obligations." *Id.*  "[T]here is a vast difference between an inadequate or flawed effort to carry out fiduciary duties and a conscious disregard for those duties." *Lyondell Chem. Co. v. Ryan*, 970 A.2d 235, 243 (Del. 2009).  Plaintiffs must allege facts showing "the directors ***knew*** they were violating their fiduciary obligations, ***intended*** to cause harm or that they acted with a ***conscious disregard*** for their responsibilities." *In re Bank of Am. Corp. Sec., Deriv. & Emp. Ret. Income Sec. Act Litig.*, 2013 WL 1777766, at *13 (S.D.N.Y. Apr. 25, 2013) (emphases added) (citing *Lyondell*, 970 A.2d at 240).

INDIVIDUAL DEFENDANTS'
MOTION TO DISMISS (2:14-cv-00540-JCC) - 8
DWT 24607659v1 0025936-002100

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

Moreover, as noted above, Microsoft's Articles of Incorporation limit the directors' personal liability.  Rummage Decl., Ex. B, art. X.  As a result, Plaintiffs' claims against the director defendants must make plausible, non-conclusory allegations that ***non-exculpated*** conduct occurred, i.e., intentional misconduct, a knowing violation of law, or a transaction from which the directors personally benefited.  *Grassmueck v. Barnett* , 281 F. Supp. 2d 1227, 1233 (W.D. Wash. 2003) (quoting RCW 23B.08.320); *see also In re Coinstar*, 2011 WL 5553778, at *3 (due to an exculpation clause, directors could be liable only if they breached the duty of loyalty or acted in bad faith); *In re Lear Corp. S'holder Litig.*, 967 A.2d 640, 648 (Del. 2008) (where directors are exculpated, plaintiff must plead more than gross liability; "what is critical is that they plead facts suggesting that the Lear directors breached their duty of loyalty by somehow acting in bad faith for reasons inimical to the best interests of Lear stockholders"); *Wood v. Baum*, 953 A.2d 136, 141 (Del. 2008) (plaintiffs must plead claims against exculpated directors with "particularized facts" demonstrating the directors "acted with scienter, i.e., that they had 'actual or constructive knowledge' that their conduct was legally improper").

### 2. Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty Based on Allegedly Inadequate Corporate Oversight.

The Court should dismiss Plaintiffs' oversight claims (Counts II, III, V, and VI) because they allege no facts from which one could reasonably infer the Individual Defendants knowingly caused or consciously permitted Microsoft to violate the law, engaged in any intentional misconduct, personally benefited in any way, or utterly failed to establish a reporting system to monitor legal compliance.

### a. Plaintiffs allege no facts showing the Individual Defendants "caused" the browser choice screen to be eliminated.

Plaintiffs repeatedly allege the Individual Defendants "caused Microsoft to eliminate the choice screen" and violate the Settlement terms.  ¶¶ 4, 49, 52, 97.  But they allege no facts to substantiate the conclusory (and counterintuitive) allegation of causation.  Indeed, they assert no facts suggesting the Individual Defendants even ***knew*** an engineering team omitted the browser choice screen, much less that the Individual Defendants intentionally or consciously

INDIVIDUAL DEFENDANTS'
MOTION TO DISMISS (2:14-cv-00540-JCC) - 9

DWT 24607659v1 0025936-002100

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

did something causing the omission or benefiting them.  To the contrary, Plaintiffs repeatedly

cite reports that an engineering team's technical error caused omission of the browser choice

screen:  "the browser ballot was left out of Windows 7 [Service Pack 1] when an engineering

team forgot to update code that distributed the choice screen."  ¶ 57 (quoting a

*Computerworld.com* article dated March 6, 2013); *see also* ¶¶ 56, 58.  And Plaintiffs allege no

alternate reason why the European Windows update dropped the browser choice screen.

Plaintiffs make no allegation the Individual Defendants participated in engineering decisions

that led to the mistake, gave directions to the engineering team, or had any inkling the

European Windows update contained defective software code.  In fact, Plaintiffs do not even

allege the engineering team *itself* was aware of its mistake until the European Commission

notified Microsoft about the problem.

The bare assertion that the Individual Defendants "caused" the omission of the browser

choice screen is not a particularized fact allegation.  *See, e.g.*, *In re China Auto. Sys., Inc.

Deriv. Litig.*, 2013 WL 4672059, at *8 (Del. Ch. Aug. 30, 2013) ("A mere statement that the

Defendants 'caused' the filing of the allegedly misleading financial statements with the SEC is

not, without more, a particularized allegation of fact.").  The Court should dismiss the oversight

claims to the extent they rest on the unsupported notion the Individual Defendants "caused" the

omission of the browser choice screen in violation of the Settlement.

> **b.    Plaintiffs fail to allege facts showing pervasive internal
> controls problems, much less that Individual Defendants
> ignored pervasive problems.**

Plaintiffs may state a *Caremark* claim by alleging a complete failure to attempt to

establish a reporting system or other oversight mechanism to monitor the corporation's legal

compliance or alleging the Individual Defendants, having established a reporting system,

abdicated their duties by ***consciously*** failing to monitor or oversee operations.  *South*, 62 A.3d

at 6; *Stone*, 911 A.2d at 370.  But "Delaware courts routinely reject the conclusory allegation

that because illegal behavior occurred, internal controls must have been deficient, and the board

must have known so."  *Desimone v. Barrows*, 924 A.2d 908, 940 (Del. Ch. 2007).

INDIVIDUAL DEFENDANTS'
MOTION TO DISMISS (2:14-cv-00540-JCC) - 10

DWT 24607659v1 0025936-002100

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

Here, Plaintiffs **concede** the Individual Defendants established oversight mechanisms. Plaintiffs identify the roles of the Board of Directors (and its Audit Committee) and the Chief Compliance Officer, as well as Microsoft's internal controls and "related Company compliance policies and programs." ¶ 44.  Further, they cite the Board's resolution declining the Plaintiffs' derivative demands, which confirms the Demand Review Committee and the Board of Directors "[a]nalyzed the Company's internal controls and reporting structure relating to antitrust compliance, both before and after July 2012." ¶¶ 64, 72, Exs. B & E.  By citing the Company's "internal controls and practice and procedures," ¶ 84, Plaintiffs concede internal controls existed and the Individual Defendants did not "utterly fail" to establish them.

Having acknowledged Microsoft adopted internal controls, Plaintiffs resort to alleging "Defendants willfully ignored the obvious and pervasive problems with Microsoft's internal controls and practices and procedures and failed to make a good faith effort to correct these problems or prevent their recurrence." *Id.*  But that conclusory burst of rhetoric comes unaccompanied by **any** supporting facts.  Plaintiffs allege no facts identifying the internal controls at issue or the purported problems with them, explaining how those alleged problems contributed to omission of the browser choice screen, or saying how the Individual Defendants learned about the supposed problems.  And Plaintiffs cite no facts suggesting any reason for the omission of the browser choice screen other than the single cause cited repeatedly in their Complaint:  a technical mistake by a software engineering team.

Plaintiffs' failure to allege facts showing the Individual Defendants "consciously disregarded" their oversight responsibilities requires dismissal.  For example, in *In re Bank of America*, 2013 WL 1777766, at *13, the court dismissed derivative claims alleging a failure to monitor subprime mortgage holdings because plaintiffs did **not** allege where a breakdown in oversight mechanisms occurred or what controls should have been implemented.  Similarly, in *China Automotive Systems*, 2013 WL 4672059, at *8, the court dismissed derivative oversight claims where plaintiffs alleged defendants "caused" the company to issue misleading financial statements but failed to identify any internal control deficiencies or set forth particularized facts

INDIVIDUAL DEFENDANTS'
MOTION TO DISMISS (2:14-cv-00540-JCC) - 11

DWT 24607659v1 0025936-002100

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

showing defendants consciously disregarded their duties.  Other courts reach the same conclusion on similar allegations.  *See, e.g.*, *South*, 62 A.3d at 17-18 (plaintiffs failed to state a *Caremark* claim based on a series of safety incidents at the company's mines, as they failed to allege facts showing a sustained or systematic failure to assure reasonable reporting of safety information); *In re Dow Chem. Co. Deriv. Litig.*, 2010 WL 66769, at *12-13 (Del. Ch. Jan. 11, 2010) (plaintiffs failed to allege facts showing the defendants knew or had reason to suspect company employees had bribed a foreign government and therefore could not show defendants consciously disregarded their oversight responsibility); *Desimone*, 924 A.2d at 940 (plaintiff failed to plead a *Caremark* claim because he alleged no facts suggesting the company's internal controls were deficient or showing the defendants had reason to suspect options backdating); *Guttman v. Huang*, 823 A.2d 492, 507 (Del. Ch. 2003) (derivative complaint was "empty of the kind of fact pleading that is critical to a *Caremark* claim," such as that the company "lacked an audit committee," or that the committee "devoted patently inadequate time to its work," or that it "had clear notice of serious accounting irregularities and simply chose to ignore them").

Plaintiffs imply the size of the penalty alone gives rise to a reasonable inference the Individual Defendants must have breached their duties.  ¶¶ 6, 55, 58 (referring to penalty as "extraordinary," "disastrous," and "unprecedented").  But courts have repeatedly held that significant liability incurred by a corporation does not establish a viable claim, absent allegations of ***particular facts*** showing a sustained failure to exercise oversight.  *See, e.g.*, *Stone*, 911 A.2d at 364, 373 (affirming dismissal of *Caremark* claim seeking to hold directors liable for large fine resulting from employees' failure to comply with anti-money laundering regulations); *In re Caremark*, 698 A.2d at 972 (the company's "huge" monetary liability for criminal violations of a kick-back statute did not establish directors' breach of fiduciary duty, absent facts showing they lacked good faith in exercising their monitoring responsibilities or consciously permitted violations); *David B. Shaev Profit Sharing Account v. Armstrong*, 2006 WL 391931, at *5-6 (Del. Ch. Feb. 13, 2006) (conclusory assertion that, due to alleged

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

1    fiduciary breaches, directors of Citigroup were ignorant of fraudulent dealings with WorldCom

2    and Enron was insufficient to state a *Caremark* claim, even though liability was "huge").

3              **c.      Plaintiffs' allegations belie the contention that the Individual
                           Defendants failed to act quickly to remedy the technical
4                          error.**

5              In their final effort to plead conscious wrongdoing, Plaintiffs allege "defendants did

6    nothing to halt the illicit scheme" when it was called to their attention in "the summer of 2012."

7    ¶¶ 5, 53.  But the Court should reject that conclusory allegation because Plaintiffs themselves

8    allege with particularity that Microsoft ***promptly*** corrected the mistake, accepted responsibility,

9    and gave the European Commission a complete assessment of the situation.

10             Plaintiffs admit the browser choice screen was omitted from Windows 7 Service Pack 1

11   "from May 2011 until ***July 2012***," the same month in which the mistake was brought to

12   Microsoft's attention.  ¶¶ 56 at 19:7-9, 57 at 20:16-18 (emphasis added).  They make no

13   allegation the problem persisted after July 2012.  Moreover, according to the Complaint, the

14   EU's antitrust chief, Joaquín Almunia, credited "Microsoft's ***quick admission of the omission***,

15   multiple apologies, and cooperation with the EU authorities" as factors the European

16   Commission considered in determining the fine.  ¶ 57 at 21:7-9 (emphasis added).  Thus, by

17   Plaintiffs' own account, Microsoft did not simply do "nothing"; to the contrary, it fixed the

18   mistake promptly after it was identified, quickly took responsibility, and gave the EU a full,

19   candid assessment.  *Id*. & ¶ 58.

20             Despite this, Plaintiffs repeatedly imply the Company's acceptance of responsibility for

21   the mistake shows the Individual Defendants breached their duties as officers and directors.

22   ¶ 11 (calling it "astounding" that the Demand Review Committee concluded otherwise); *see*

23   *also* ¶¶ 6, 18, 58, 65, 73.  But the fact that a mistake occurred and that Microsoft accepted

24   responsibility does not give rise to a reasonable inference that any breach of duty occurred.  To

25   the contrary, as the Complaint, ¶ 57, makes clear, the acceptance of responsibility amounted to

26   responsible corporate stewardship that mitigated the misstep in European regulators' eyes.

27

INDIVIDUAL DEFENDANTS'
MOTION TO DISMISS (2:14-cv-00540-JCC) - 13

DWT 24607659v1 0025936-002100

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

**B.     The Individual Defendants Breached No Fiduciary Duties by Filing and Signing Microsoft's 2011 10-K.**

In Count I, Plaintiffs claim the Individual Defendants breached fiduciary duties by allegedly "causing or allowing the Company to disseminate to Microsoft shareholders materially misleading and inaccurate information" about the omission of the browser choice screen.  ¶ 80.  Washington has not recognized a cause of action for alleged corporate misstatements unrelated to requests for shareholder action.  But even assuming such a claim exists under Washington law, the Court should dismiss it for three independent reasons.

*First*, the Complaint fails to identify an inaccurate statement.  The only statement Plaintiffs characterize as "misleading" is a portion of Microsoft's annual report to the Securities Exchange Commission on Form 10-K, dated July 28, 2011.  ¶¶ 50-52.  They quote the Form 10-K excerpt and summarily state it was "false and misleading," *id.*, but do not identify *any* aspect of it that was incorrect.  The quoted portion refers to the 2009 Settlement Agreement with the European Commission and its potential impact on Microsoft's ability to innovate.  ¶ 51.  Plaintiffs allege nothing to suggest that statement was misleading or inaccurate.

The quoted portion of the 2011 Form 10-K also includes certifications about Microsoft's "internal control over financial reporting."  ¶ 50.  But to the extent Plaintiffs assert the certification was false or misleading because Microsoft supposedly failed to maintain adequate internal controls, their claim fails for the reasons cited above (*supra* § III.A.2(b)): Plaintiffs allege no facts identifying the internal controls at issue, the purported problems, or the relationship between those alleged problems and omission of the browser choice screen.

*Second*, even if Plaintiffs were to identify an inaccuracy in the quoted excerpt from Microsoft's 2011 Form 10-K, to state a viable claim they must allege facts showing the Individual Defendants "deliberately misinform[ed] shareholders about the business of the corporation, either directly or by a public statement."  *Malone v. Brincat*, 722 A.2d 5, 14 (Del. 1998) (stating standard for breach of fiduciary duty when directors and officers make a

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

disclosure and no shareholder action is required).[7]  This means "a plaintiff [must] prove that the directors 'knowingly disseminate[d] false information.'"  *Metro Commc'n Corp. v. Advanced Mobilecomm Techs. Inc.*, 854 A.2d 121, 157-58 (Del. Ch. 2004) (quoting *Malone*, 722 A.2d at 9).  "This level of proof is similar to, but ***even more stringent than***, the level of scienter required for common law fraud."  *Id.* at 158 (emphasis added).  Delaware courts have "logically read *Malone* as also contemplating a requirement of reasonable reliance in the non-vote and non-tender context."  *Id.* (citing *A.R. DeMarco Enters., Inc. v. Ocean Spray Cranberries, Inc.*, 2002 WL 31820970, at *4 n.10 (Del. Ch. Nov. 26, 2002) ("When shareholder action is absent, plaintiff must show reliance, causation, and damages [to state a claim under *Malone*].") (alteration in original)).

Plaintiffs cannot come close to meeting this standard.  They allege no facts showing the Individual Defendants knew, as of July 28, 2011 (when Microsoft filed the Form 10-K), that a software engineering team had made a technical error jeopardizing Microsoft's compliance with the Settlement.  Plaintiffs allege the browser choice screen was omitted for certain European users starting in May 2011 and the error was brought to Microsoft's attention in "the summer of 2012"—a year ***after*** the 2011 Form 10-K.  ¶¶ 53, 56-57.  Microsoft disclosed the error in its 2012 Form 10-K dated July 26, 2012, and described associated potential risks.  *See* Rummage Decl., Ex. A at 8-9.[8]  Further, the Consolidated Complaint contains no allegations of any reliance on the allegedly inaccurate statements, as *Malone* requires.

***Third***, even indulging the fiction that the Individual Defendants acted with scienter by including allegedly misleading information in the 2011 Form 10-K, Plaintiffs cannot state a

---

[7] Because Washington courts have not recognized a claim for alleged corporate misstatements unrelated to requests for shareholder action, they have had no occasion to consider whether the *Malone* standard applies to officers and directors of Washington corporations.  But *Malone* has been cited once by this court and once by the Washington Court of Appeals to describe the duties of directors of Delaware corporations:  due care, loyalty, and good faith.  *See Fernandes v. Bianco*, 2006 WL 6862716, at *4 (W.D. Wash. June 22, 2006); *Rodriguez v. Loudeye Corp.*, 144 Wn. App. 709, 719 n.13, 189 P.3d 168, 172 n.13 (2008).

[8] The Court may take judicial notice of Microsoft's 2012 10-K.  *See supra* note 3.

INDIVIDUAL DEFENDANTS'
MOTION TO DISMISS (2:14-cv-00540-JCC) - 15

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

1    viable derivative claim **on Microsoft's behalf**.  Plaintiffs do not, and logically cannot, allege a

2    misstatement in Microsoft's own 2011 Form 10-K misled or damaged **Microsoft**.

3              **C.      Plaintiffs Fail to Allege a Viable Unjust Enrichment Claim.**

4          Because Plaintiffs base their unjust enrichment claim (Count IV) on their claims for

5    breach of fiduciary duties, and because the Court should dismiss those claims, the Court should

6    dismiss the unjust enrichment claim as well.  *See In re Bank of Am.*, 2013 WL 1777766, at *15

7    (S.D.N.Y. Apr. 25, 2013) ("Because [plaintiff's] unjust enrichment claim is premised on

8    defendants' violation of their fiduciary duties, and the breach of fiduciary duty claim is

9    dismissed, [plaintiff's] unjust enrichment claim is dismissed as well.").  Moreover, Plaintiffs

10   fail to allege **any** of the required elements for unjust enrichment:  (1) that the Individual

11   Defendants received a benefit, (2) at the expense of Microsoft (as the purported claimant), and

12   (3) the circumstances make it unjust for them to retain the benefit.  *Young v. Young*, 164 Wn.2d

13   477, 484-85, 191 P.3d 1258, 1262 (2008).

14         Plaintiffs fail to identify any benefit received by the Individual Defendants at

15   Microsoft's expense "as a result of their wrongful conduct and fiduciary breaches."  ¶ 95.

16   (Indeed, one cannot envision how omission of the browser choice screen could possibly enrich

17   these Individual Defendants.)  If the Individual Defendants' compensation is the "enrichment"

18   on which Plaintiffs rely, their claim fails because there is no "authority . . . that the mere

19   retention of directors' and officers' ordinary compensation can sustain an unjust enrichment

20   claim predicated on allegations that these defendants breached their fiduciary duties."  *In re*

21   *Pfizer Inc. S'holder Deriv. Litig.*, 722 F. Supp. 2d 453, 465-66 (S.D.N.Y. 2010).  And even if

22   ordinary compensation **could** be the basis for an unjust enrichment claim, Plaintiffs have not

23   stated a cognizable claim because, as shown above, they fail to plead any breach of fiduciary

24   duty.  *Taylor v. Kissner*, 893 F. Supp. 2d 659, 374 (D. Del. 2012) (dismissing derivative claim

25   for unjust enrichment claim based on "the salaries and standard fees of officers and directors").

26

27

INDIVIDUAL DEFENDANTS'
MOTION TO DISMISS (2:14-cv-00540-JCC) - 16

DWT 24607659v1 0025936-002100

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

1

## IV.    CONCLUSION

2

For the foregoing reasons, the Individual Defendants request that the Court dismiss

3

Plaintiffs' claims with prejudice.

4

DATED this 11th day of August, 2014.

5

Davis Wright Tremaine LLP
Attorneys for the Individual Defendants

6

7

By  *s/ Stephen M. Rummage*

8

Stephen M. Rummage, WSBA #11168
Brendan T. Mangan, WSBA # 17231

9

Candice M. Tewell, WSBA #41131
1201 Third Avenue, Suite 2200

10

Seattle, WA  98101-3045
Tel: 206-622-3150; Fax: 206-757-7700

11

Email:  stephenrummage@dwt.com
Email:  brendanmangan@dwt.com

12

Email:  candicetewell@dwt.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

INDIVIDUAL DEFENDANTS'
MOTION TO DISMISS (2:14-cv-00540-JCC) - 17

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1

## <u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that on August 11, 2014, I electronically filed the foregoing with the

3

Clerk of the Court using the CM/ECF system, which will send notification of such filing to

4

those attorneys of record registered on the CM/ECF system.  All other parties (if any) shall be

5

served in accordance with the Federal Rules of Civil Procedure.

6

DATED this 11th day of August, 2014.

7

*s/Stephen M. Rummage*_____

8

Stephen M. Rummage

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

INDIVIDUAL DEFENDANTS'
MOTION TO DISMISS (2:14-cv-00540-JCC) - 18

DWT 24607659v1 0025936-002100

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax