The Honorable John C. Coughenour

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| BAROVIC v. BALLMER, et al. | )<br>)<br>) | Lead Case No. 14-cv-00540 |
| This Document Relates To: | )<br>)<br>) | (Consolidated with Case No. 14-cv-00586) |
| ALL ACTIONS | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | PLAINTIFFS' COMBINED OPPOSITION BRIEF TO: (1) NOMINAL DEFENDANT MICROSOFT CORPORATION'S MOTION TO DISMISS COMPLAINT; AND (2) INDIVIDUAL DEFENDANTS' MOTION TO DISMISS |

PLAINTIFFS' COMBINED OPPOSITION BRIEF TO:
(1) NOMINAL DEFENDANT MICROSOFT
CORPORATION'S MOTION TO DISMISS
COMPLAINT; AND (2) INDIVIDUAL
DEFENDANTS' MOTION TO DISMISS
LEAD CASE NO: 2:14-CV-00540-JCC

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Shoreline, WA 98155
TEL 206.621.6566
FAX 206.621.9686

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ..................................................................................................2

FACTUAL BACKGROUND ..................................................................................8

    A.    Background of the Company and its Antitrust Violations.......................8

    B.    For Violating the 2009 Settlement, Microsoft Was Fined Approximately $732.2 Million...................................................................................9

    C.    Plaintiffs Issue Their Respective Demands Which Are Both Improperly Refused .........................................................................................10

        1.    The Barovic Demand ...............................................................10

        2.    The DiPhilipo Demand ............................................................13

ARGUMENT ........................................................................................................14

    A.    Applicable Standards Governing Demand Refusal .............................14

    B.    The Board's Refusals Are Not Entitled to Protection Under the Business Judgment Rule ............................................................................17

        1.    The DRC's Conspicuous Failure to Interview Almunia or Anyone From the European Commission Demonstrates That the Investigation Was Unreasonable and That the Refusals Are Improper.......................................................................................18

        2.    The DRC's Finding That the Demands Did Not Contain Facts To Support Any Viable Claim For Breach of Fiduciary Duty Is Belied By The Company's Prior Admissions of Wrongdoing.............................20

    C.    Plaintiff States Causes of Action Upon Which Relief May Be Granted .............22

        1.    Plaintiffs Adequately Plead Their Breach of Fiduciary Claims................24

            a.    Plaintiffs Have Sufficiently Alleged a Breach of Fiduciary Duty Based Upon the Failure to Disclose Accurate Information .................................................................................24

            b.    Plaintiffs Have Properly Asserted a Fiduciary Claim for the Failure to Maintain Adequate Internal Controls at the Company....................................................................................27

        2.    Plaintiff's Complaint Adequately Pleads an Unjust Enrichment Claim.................................................................................................28

PLAINTIFFS' COMBINED OPPOSITION BRIEF TO:
(1) NOMINAL DEFENDANT MICROSOFT
CORPORATION'S MOTION TO DISMISS
COMPLAINT; AND (2) INDIVIDUAL
DEFENDANTS' MOTION TO DISMISS  - i -

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Shoreline, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

## <u>TABLE OF CONTENTS</u>
### <u>(continued)</u>

D.    Defendants' Reliance on the Company's Exculpatory Provision Is
      Inappropriate at This Juncture and Inapplicable in Any Regard ..........................29

CONCLUSION....................................................................................................................................31

PLAINTIFFS' COMBINED OPPOSITION BRIEF TO:
(1) NOMINAL DEFENDANT MICROSOFT
CORPORATION'S MOTION TO DISMISS
COMPLAINT; AND (2) INDIVIDUAL
DEFENDANTS' MOTION TO DISMISS  - ii -

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Shoreline, WA 98155
TEL 206.621.6566
FAX 206.621.9686

1

2

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

3 **CASES**

4
*Ad Hoc Comm. of Equity Holders of Tectonic Network, Inc. v. Wolford,*
5
    554 F. Supp. 2d 538 (D. Del. 2008) ........................................................29

6
*Alidina v. Internet.com Corp.,*
    Civ. A. 17235-NC, 2002 WL 31584292 (Del. Ch. Nov. 6, 2002) ...........................29

7

8
*Allen v. Beverly Hills,*
    911 F.2d 367 (9th Cir. 1990) ........................................................31

9
*Allison on Behalf of Gen. Motors Corp. v. Gen. Motors Corp.,*
10
    604 F. Supp. 1106 (D. Del. 1985) ........................................................16

11
*Aronson v. Lewis,*
    473 A.2d 805 (Del. 1984) ........................................................15, 16, 18

12

13
*Broz v. Cellular Info. Sys., Inc.,*
    673 A.2d 148 (Del. 1996) ........................................................26

14
*City of Orlando Police Pension Fund v. Page,*
    970 F. Supp. 2d 1022 (N.D. Cal. 2013) ........................................................ *passim*

15

16
*Daily Income Fund, Inc. v. Fox,*
    464 U.S. 523 (1984) ........................................................15

17
*Daly v. Unitrin, Inc.,*
18
    No. CV-07-0384-EFS, 2008 WL 2403706 (Jun. 11, 2008) ...........................22, 23

19
*DePinto v. Provident Sec. Life Ins. Co.,*
    374 F.2d 37 (9th Cir 1967) ........................................................25

20

21
*Emerald Partners v. Berlin,*
    726 A.2d 1215 (Del. 1999) ........................................................29, 30

22
*First Corp. v. Jenkens,*
    644 F. Supp. 1152 (W.D. Wash. 1986) ........................................................23

23

24
*Fleischman v. Huang,*
    Civ. A. No. 2497-CC, 2007 WL 2410386 (Del. Ch. Aug. 22, 2007) ...........................2

25

26

PLAINTIFFS' COMBINED OPPOSITION BRIEF TO:
(1) NOMINAL DEFENDANT MICROSOFT
CORPORATION'S MOTION TO DISMISS
COMPLAINT; AND (2) INDIVIDUAL
DEFENDANTS' MOTION TO DISMISS  - iii -

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Shoreline, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

CASES

*Gilligan v. Jamco Dev. Corp.*,
   108 F.3d 246 (9th Cir. 1997) ................................................................22

*Grimes v. Donald*,
   673 A.2d 1207 (Del. 1996) ..............................................7, 15, 16, 20

*Guth v. Loft*,
   5 A.2d 503 (Del. 1939) ................................................................23

*Hall v. City of Santa Barbara*,
   833 F.2d 1270 (9th Cir. 1986) ................................................................23

*Halpert Enters., Inc. v. Harrison*,
   No. 06 Civ. 2331 (HB), 2007 WL 486561 (S.D.N.Y. Feb. 14, 2007) *aff'd*, 07-1144-CV,
   2008 WL 4585466 (2d Cir. Oct. 15, 2008) ................................................15

*In re Abbott Labs. Derivative S'holders Litig.*,
   325 F.3d 795 (7th Cir. 2003) ................................................................30

*In re Autobacs Strauss, Inc.*,
   473 B.R. 525 (Bankr. D. Del. 2012) ................................................................29

*In re Biopure Corp. Derivative Litig.*,
   424 F. Supp. 2d 305 (D. Mass. 2006) ................................................................26

*In re The Brown Schools*,
   368 B.R. 394 (Bankr. D. Del. 2007) ................................................................29

*In re Cendant Derivative Action Litig.*,
   189 F.R.D. 117 (D.N.J. 1999) ................................................................26

*In re Countrywide Fin. Corp. Derivative Litig.*,
   554 F. Supp. 2d 1044 (C.D. Cal. 2008) ................................................................26

*In re Cray Inc. Derivative Litig.*,
   431 F. Supp. 2d 1114 (W.D. Wash. 2006) ................................................................3

*In re Direct Response Media, Inc.*,
   466 B.R. 626 (Bankr. D. Del. 2012) ................................................................30

PLAINTIFFS' COMBINED OPPOSITION BRIEF TO:
(1) NOMINAL DEFENDANT MICROSOFT
CORPORATION'S MOTION TO DISMISS
COMPLAINT; AND (2) INDIVIDUAL
DEFENDANTS' MOTION TO DISMISS  - iv -

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Shoreline, WA 98155
TEL 206.621.6566
FAX 206.621.9686

**TABLE OF AUTHORITIES**
(continued)

Page(s)

CASES

*In re F5 Networks, Inc. Derivative Litig.*,
  166 Wash. 2d 229 (2009)...........................................................................................3

*In re HealthSouth Corp. S'holders Litig.*,
  845 A.2d 1096 (Del. Ch. 2003), *aff'd*, A.2d 1121 (Del. 2004)................................28

*In re Jackpot Enters. Sec. Litig.*,
  No. CV-S-89-805-LDG(RJJ), 1991 U.S. Dist. LEXIS 16353 (D. Nev. Mar. 28, 1991).........25

*In re Keyspan Corp. Sec. Litig.*,
  383 F. Supp. 2d 358 (E.D.N.Y. 2003) .................................................................26

*In re PSE&G S'holders Litig.*,
  173 N.J. 258 (2002) .................................................................. *passim*

*In re TASER Int'l S'holder Derivative Litig.*,
  No. CV-05-123-PHX-SRB, 2006 WL 687033 (D. Ariz. Mar. 17, 2006)..............................29

*In re Tower Air, Inc.*,
  416 F.3d 229 (3d Cir. 2005)..................................................................................29

*In re W. World Funding, Inc.*,
  52 B.R. 743 (Bankr. D. Nev. 1985) *aff'd in part, rev'd in part sub nom. Buchanan v.
  Henderson*, 131 B.R. 859 (D. Nev. 1990) *rev'd*, 985 F.2d 1021 (9th Cir. 1993)...................25

*In re Walt Disney Co. Derivative Litig.*,
  907 A.2d 693 (Del. Ch. 2005) *aff'd*, 906 A.2d 27 (Del. 2006) ................................29

*Jackson Nat'l Life Ins. Co. v. Kennedy*,
  741 A.2d 377 (Del. Ch. 1999)................................................................................28

*Janssen v. Best & Flanagan*,
  662 N.W.2d 876 (Minn. 2003)................................................................................15

*Levine v. Smith*,
  591 A.2d 194 (Del. 1993) *overruled on other grounds,
  Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) ........................................7, 15, 16, 17

*Litton Indus., Inc. by Wildflower P'ship v. Hoch*,
  No. 91-56528, 1993 WL 241549 (9th Cir. 1993) ................................................17

PLAINTIFFS' COMBINED OPPOSITION BRIEF TO:
(1) NOMINAL DEFENDANT MICROSOFT
CORPORATION'S MOTION TO DISMISS
COMPLAINT; AND (2) INDIVIDUAL
DEFENDANTS' MOTION TO DISMISS  - v -

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Shoreline, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

CASES

*Lopez v. Smith*,
    203 F.3d 1122 (9th Cir. 2000) ...............................................................31

*Malone v. Brincat*,
    722 A.2d 5 (Del. 1998) ...................................................................24, 25

*McCall v. Scott*,
    250 F.3d 997 (6th Cir. 2001) .................................................................30

*Mervyn's Holdings, LLC v. Lubert-Adler Group IV, LLC*,
    426 B.R. 488 (Bankr. D. Del. 2010) ........................................................29

*Metro Comm. Corp. BVI v. Advanced MobileComm Techs Inc.*,
    854 A.2d 121 (Del. Ch. 2004)................................................................25

*Mt. Moriah Cemetary on Behalf of Dun & Bradstreet Corp. v. Moritz*,
    Civ. A. 11431, 1991 WL 50149 (Del. Ch. Apr. 4, 1991) *aff'd*, 599 A.2d 413
    (Del. 1991) ................................................................................16, 18

*Orman v. Cullman*,
    794 A.2d 5 (Del. Ch. 2002)...................................................................31

*Paramount Commc'ns Inc. v. QVC Network, Inc.*,
    637 A.2d 34 (Del. 1994) ......................................................................23

*Ryan v. Gifford*,
    918 A.2d 341 (Del. Ch. 2007)...........................................................26, 28

*Ryan v. Lyondell Chem. Co.*,
    Civ. A. 3176-VCN, 2008 WL 4174038 (Del. Ch. Aug. 29, 2008).........................30

*Scattered Corp. v. Chicago Stock Exch., Inc.*,
    701 A.2d 70 (Del. 1997) ......................................................................15

*Schwartzman v. McGavick*,
    No. C06-1080P, 2007 WL 1174697 (W.D. Wash. Apr. 19, 2007).........................3

*Senn v. Nw. Underwriters, Inc.*,
    74 Wash. App. 408 (1994)...............................................................23, 24

PLAINTIFFS' COMBINED OPPOSITION BRIEF TO:
(1) NOMINAL DEFENDANT MICROSOFT
CORPORATION'S MOTION TO DISMISS
COMPLAINT; AND (2) INDIVIDUAL
DEFENDANTS' MOTION TO DISMISS  - vi -

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Shoreline, WA 98155
TEL 206.621.6566
FAX 206.621.9686

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

CASES

*Smith v. Van Gorkom,*
    488 A.2d 858 (Del. 1985) ........................................................................16, 18

*South Ferry LP v. Killinger,*
    542 F.3d 776 (9th Cir. 2008) ...........................................................................26

*Spiegel v. Buntrock,*
    571 A.2d 767 (Del. 1990) ..........................................................................14, 16

*Stepak v. Addison,*
    20 F.3d 398 (11th Cir. 1994) ..........................................................4, 15, 16, 18

*Stoner v. Walsh,*
    772 F. Supp. 790 (S.D.N.Y. 1991) ................................................................7, 17

*Syracuse Television, Inc. v. Channel 9, Syracuse, Inc.,*
    194, 273 N.Y.S.2d 16 (Sup. Ct. 1966) ..............................................................17

*Toombs v. Leone,*
    777 F.2d 465 (9th Cir. 1985) ...........................................................................25

*Zapata Corp. v. Maldonado,*
    430 A.2d 779 (Del. 1981) ................................................................................15

STATUTES

Wash. Rev. Code Ann. § 23B.08.300 ..........................................................................23

Fed. R. Civ. P. 15(a) ...................................................................................................31

PLAINTIFFS' COMBINED OPPOSITION BRIEF TO:
(1) NOMINAL DEFENDANT MICROSOFT
CORPORATION'S MOTION TO DISMISS
COMPLAINT; AND (2) INDIVIDUAL
DEFENDANTS' MOTION TO DISMISS  - vii -

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Shoreline, WA 98155
TEL 206.621.6566
FAX 206.621.9686

Plaintiffs Kim Barovic ("Barovic") and Stephen DiPhilipo ("DiPhilipo") (collectively, "Plaintiffs") respectfully submit this memorandum of law in opposition to: (1) Nominal Defendant Microsoft Corporation's Motion to Dismiss Complaint (the "Microsoft Motion"); and (2) Individual Defendants' Motion to Dismiss (the "Defendants'[1] Motion").[2]   As discussed herein, Plaintiffs' Verified Consolidated Shareholder Derivative Complaint (the "Complaint"),[3] asserted on behalf of Microsoft Corporation ("Microsoft" or the "Company"), raises a reasonable doubt as to the good faith and/or the reasonableness of Microsoft's Board of Directors (the "Board") and/or the Board's Demand Review Committee (the "DRC") in connection with its purported "investigation" conducted in response to both plaintiff Barovic's pre-suit stockholder demand issued pursuant to Washington law on March 22, 2013 (the "Barovic Demand")[4] and plaintiff DiPhilipo's pre-suit stockholder demand issued pursuant to Washington law on March 21, 2013 (the "DiPhilipo Demand")[5] (collectively, the "Demands").  Additionally, the Complaint adequately states claims upon which relief can be granted.  Accordingly, the Motions should be denied in their entirety.

---

[1] "Defendants" include: Steven A. Ballmer ("Ballmer"), Dina D. Dublon ("Dublon"), William H. Gates III ("Gates"), Maria M. Klawe ("Klawe"), Stephen J. Luczo ("Luczo"), David F. Marquardt ("Marquardt"), Charles H. Noski ("Noski"), Helmut Panke ("Panke"), John W. Thompson ("Thompson"), Peter S. Klein ("Klein"), Brad Smith ("Smith"), and B. Kevin Turner ("Turner").

[2] In the interests of brevity, Plaintiffs respectfully submit one combined opposition to the Microsoft Motion and Defendants' Motion. Citations to the Microsoft Motion shall appear in the following format: "Microsoft Mem. at ___." Citations to the Defendants' Motion shall appear in the following format: "Defs. Mem. at ___." Collectively, the Microsoft Motion and Defendants' Motion are referred to herein as the "Motions."

[3] References herein to the Complaint appear in the following format: "¶ or ¶¶ ."

[4] A true and correct copy of the Barovic Demand is attached hereto as Exhibit A.

[5] A true and correct copy of the DiPhilipo Demand is attached hereto as Exhibit B.

PLAINTIFFS' COMBINED OPPOSITION BRIEF TO:
(1) NOMINAL DEFENDANT MICROSOFT
CORPORATION'S MOTION TO DISMISS
COMPLAINT; AND (2) INDIVIDUAL
DEFENDANTS' MOTION TO DISMISS   - 1 -

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Shoreline, WA 98155
TEL 206.621.6566
FAX 206.621.9686

## <u>INTRODUCTION</u>

When a stockholder issues a pre-suit demand, he places his trust in the hands of a board of directors that it will subsequently perform an independent investigation in good faith into the allegations and claims raised in the demand.  Typically, a board will then on its own, or through the formation of a purportedly independent committee, investigate the allegations contained in the demand and provide the stockholder with a thorough, meaningful response detailing the merits (or lack thereof) of the allegations and claims and the board's and/or committee's decision as to whether to pursue the claims.  In doing so, a board will inform the stockholder as to what its (or its committee's) substantive findings were as they relate to the claims set forth in the demand.

In order to inspire confidence in the stockholder who made the demand (and, just as importantly, in courts) regarding a board's investigation, conclusions, and decision, a refusal should provide a detailed description of the investigatory efforts undertaken, including a description of the documents that were reviewed and what such documents revealed, and the witnesses interviewed and what such interviews revealed.  When this occurs, it naturally inspires confidence that the board's investigation and its decision to refuse the demand was *bona fide* rather than a "litigation-inspired whitewash,"[6] and accordingly, the board of directors is entitled to the considerable protections afforded by the business judgment rule.

When the converse occurs, however, and the board of directors fails to set forth the substantive reasons for its purported basis to refuse to prosecute the claims contained in the demand or adequately describe the documents and interviews it based its purported findings on, those protections cannot be invoked and the stockholder is left with control of the claims.  This is

---

[6] *See, e.g., Fleischman v. Huang*, Civ. A. No. 2497-CC, 2007 WL 2410386, at *2 (Del. Ch. Aug. 22, 2007).

PLAINTIFFS' COMBINED OPPOSITION BRIEF TO:
(1) NOMINAL DEFENDANT MICROSOFT
CORPORATION'S MOTION TO DISMISS
COMPLAINT; AND (2) INDIVIDUAL
DEFENDANTS' MOTION TO DISMISS   - 2 -

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Shoreline, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

precisely what occurred in the above-captioned action (the "Action") -- the Board and the DRC failed to disclose the basis for any of the substantive findings reached during the DRC's so-called "investigation," which was severely lacking in any regard because the DRC failed to interview the individual(s) most knowledgeable about the misconduct giving rise to the Demands.  The Board's demand refusals in such circumstances inspire no confidence whatsoever and constitute "wrongful refusals" under Washington law, particularly in light of the fact that the Board previously admitted liability in connection with the exact same issues complained of in the Demands.[7]  Simply, this Board is not entitled to and should not receive business judgment protection at the pleading stage, and this Action should proceed.

The Action stems from the DRC's "investigation" and the Board's subsequent improper and deficient refusals of the Demands, which sought to remedy breaches of fiduciary duty and other misconduct which ultimately resulted in the Company paying a fine of approximately **$732.2 million**.  Specifically, beginning in 2007, the European Union ("EU") began probing the Company regarding antitrust violations arising from the inclusion of Internet Explorer (and only Internet Explorer) with the Windows Operating System ("Windows").  Ultimately, in 2009, EU regulators agreed to drop the antitrust case against Microsoft after Defendants caused the Company to agree to offer consumers a choice of rival Web browsers with Windows (the "2009 Settlement").  Significantly, pursuant to the terms of the 2009 Settlement, Microsoft (and, in turn, Defendants) was responsible for monitoring its own compliance with the 2009 Settlement.

---

[7] As Microsoft admits (Microsoft Mem. at 8): "Washington courts look to Delaware courts for authority on some matters of corporate governance."  *In re F5 Networks, Inc. Derivative Litig.*, 166 Wash. 2d 229, 239 (2009); *Schwartzman v. McGavick*, No. C06-1080P, 2007 WL 1174697, at *4 (W.D. Wash. Apr. 19, 2007); *In re Cray Inc. Derivative Litig.*, 431 F. Supp. 2d 1114, 1119 (W.D. Wash. 2006).  Accordingly, Plaintiffs rely on both Delaware and Washington law herein.

PLAINTIFFS' COMBINED OPPOSITION BRIEF TO:
(1) NOMINAL DEFENDANT MICROSOFT
CORPORATION'S MOTION TO DISMISS
COMPLAINT; AND (2) INDIVIDUAL
DEFENDANTS' MOTION TO DISMISS   - 3 -

Despite this critical responsibility, beginning in February 2011, the Company blatantly and continuously violated the 2009 Settlement.  In the summer of 2012, the EU antitrust chief, Joaquin Almunia ("Almunia"), warned Defendants that notwithstanding the 2009 Settlement terms, in certain instances Microsoft software was not providing users the full access to competing Web browsers.  Defendants apologized to Almunia and "accepted full responsibility" for the Company's violations of the 2009 Settlement; however, on March 6, 2013, it was announced that European regulators fined Microsoft approximately *$732 million* for violating the 2009 Settlement.

As a result of Defendants' obvious (and admitted) breaches of fiduciary duties, Plaintiffs issued their respective Demands.  Over ten months later, Plaintiffs' respective counsel received letters informing them that each of their respective Demands had been refused.  The refusals indicated that the Board formed the purportedly independent DRC, which consisted of two directors.  The refusals merely stated that the DRC "conducted relevant witness interviews," without indicating who the witnesses interviewed were or what the basis was for selecting those individuals for interviews, and stated that according to the DRC, the Demands did not contain facts "to support any viable claim for breach of fiduciary duty."   When prompted via subsequent correspondence from Plaintiffs' counsel as to which witnesses were interviewed, counsel for the DRC declined to provide any specific names,[8] but confirmed that Almunia nor anyone else from the European Commission were among the witnesses – in other words, DRC counsel admitted

---

[8] It is both curious and telling that the DRC's counsel declined to share this basic information with Plaintiffs' counsel, and this adversarial approach by the DRC should, at minimum, raise doubt as to whether the Demands were refused in good faith.  *See Stepak v. Addison*, 20 F.3d 398, 410 (11th Cir. 1994) ("an adversarial approach to the investigation and evaluation of a shareholder demand…is in and of itself incompatible with the directors' fiduciary obligations and strips any resultant decision of the protection of the business judgment rule.").

PLAINTIFFS' COMBINED OPPOSITION BRIEF TO:
(1) NOMINAL DEFENDANT MICROSOFT
CORPORATION'S MOTION TO DISMISS
COMPLAINT; AND (2) INDIVIDUAL
DEFENDANTS' MOTION TO DISMISS   - 4 -

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Shoreline, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

that the individuals most knowledgeable regarding the Company's violations of the 2009 Settlement were not interviewed.

The DRC's admitted failure to interview the most knowledgeable individual(s) regarding the Company's violations of the 2009 Settlement, and its apparent decision to instead confine its interviews only to those individuals that would corroborate Defendants' claims of innocence flies in the face of the recent decision from the U.S. District Court for the Northern District of California captioned *City of Orlando Police Pension Fund v. Page*, 970 F. Supp. 2d 1022 (N.D. Cal. 2013) ("*Google*"). There, very similar to this Action, Google Inc. ("Google") came under fire for violating numerous laws, which ultimately resulted in the company entering into a non-prosecution agreement and paying a $500 million fine. *Id.* at 1026. The shareholder plaintiff in *Google*, like Plaintiffs here, issued a pre-suit demand to Google's board of directors, which Google's board ultimately refused. *Id.* In the subsequently-filed derivative action, the plaintiff alleged that the demand refusal was improper because the purportedly independent committee charged with investigating the matters set forth in the demand failed to interview certain key witnesses, such as the lead investigator whose investigation led to the $500 million fine. *Id.* at 1032. The Northern District of California specifically held that "plaintiff has identified witnesses who should have been interviewed but were not, and the court does find that any reasonable investigation of plaintiff's demand should have included an interview of [the lead investigator], or someone with comparable knowledge of the [] investigation." *Id.* The same should be true in this Action, as the DRC and Defendants admit that neither Almunia nor anyone else from the European Commission was ever interviewed by the DRC.

Confronted with the DRC's obvious and inexcusable failure to interview Almunia or any individual(s) from the European Commission and the consequences of this glaring omission, the

PLAINTIFFS' COMBINED OPPOSITION BRIEF TO:
(1) NOMINAL DEFENDANT MICROSOFT
CORPORATION'S MOTION TO DISMISS
COMPLAINT; AND (2) INDIVIDUAL
DEFENDANTS' MOTION TO DISMISS   - 5 -

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Shoreline, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

Board now goes on the offensive, openly questioning whether "Mr. Almunia or any other EC official had personal knowledge or unique information about possible breaches of duties by Microsoft's officers or directors" and suggesting that **Plaintiffs** should have requested their own interviews with those individuals.  Microsoft Mem. at 15.  These arguments are outrageous. Respectfully, Defendants have done nothing short of attempting to turn the entire pre-suit demand requirement and process on its head.  It was **the Board's duty** and the Board's duty alone – not Plaintiffs' or any other shareholders' duty – to interview the individual(s) most knowledgeable about the misconduct set forth in the Demands, and had the Board and/or DRC done so, the question of what information Almunia or any other EC official could have contributed to the DRC's investigation would not be an open one.  The fact that this question is unanswered is precisely why this Court should reasonably doubt the DRC's investigation and conclusions, and does not inspire confidence.

The *Google* court likewise found "it especially notable that the [demand refusal letter] states that the committee 'found no wrongdoing or culpability by Google directors or officers,' even though the [non-prosecution agreement] includes an 'acceptance of responsibility.'"  *Id.* at 1031.  The court went onto state that the committee's "sweeping conclusion that 'no wrongdoing or culpability occurred,' when coupled with the [non-prosecution agreement's] express 'acceptance of responsibility,' does create reasonable doubt that the investigation was conducted reasonably and in good faith."  *Id.*  Again, the result should be no different in this Action. Although Defendants publicly and affirmatively "apologized" and "accepted full responsibility" for the Company's violations of the 2009 Settlement, the DRC purportedly found no wrongdoing in its investigation, and has completely failed to make even a cursory attempt at explaining this discrepancy.

PLAINTIFFS' COMBINED OPPOSITION BRIEF TO:
(1) NOMINAL DEFENDANT MICROSOFT
CORPORATION'S MOTION TO DISMISS
COMPLAINT; AND (2) INDIVIDUAL
DEFENDANTS' MOTION TO DISMISS   - 6 -

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Shoreline, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

Simply put, the Court's inquiry here is not focused on the substantive **decision** of the Board -- rather, what is at issue is the **procedure** employed by the Board in making its determination to reject the Demands. *Levine v. Smith*, 591 A.2d 194, 214 (Del. 1993) *overruled on other grounds, Brehm v. Eisner*, 746 A.2d 244 (Del. 2000). As the Delaware Supreme Court has recognized, "it is important that the demand process be meaningful," so that it inspires confidence in stockholders and courts. *Grimes v. Donald,* 673 A.2d 1207, 1218 (Del. 1996). A demand refusal inspires no confidence, and, therefore, is not entitled to the protections of the business judgment rule, where the investigation the refusal is based on is so restricted in scope as to constitute a pretext. *Id*., *citing Stoner v. Walsh,* 772 F. Supp. 790, 806 (S.D.N.Y. 1991). Defendants are absolutely correct when they argue that "the Board was not obligated by law to interview Mr. Almunia or another EC official" (Microsoft Mem. at 15), but that argument completely misses the mark – the issue is not whether the DRC was "legally obligated" to conduct such interviews; rather, the issue is whether the DRC's failure to try to interview those individuals would reasonably shake a shareholder's confidence, or this Court's confidence, in the investigation and refusals of the Demands. Plaintiffs agree with Defendants that there is no prescribed procedure that a board of directors must follow in response to a stockholder demand, but "the process must be such that a reviewing court can look to it and conclude confidently that it reflects a corporation's earnest attempt to investigate a shareholder's complaint." *In re PSE&G S'holders Litig*., 173 N.J. 258, 292 (2002).

Here, very similar to *Google*, the DRC's failure to interview Almunia or anyone else from the European Commission is an omission that, quite frankly, sticks out like a sore thumb. It inspires no confidence, and Plaintiffs therefore allege sufficient facts to cast doubt upon the presumption of business judgment protection for the Board, especially in light of the highly

PLAINTIFFS' COMBINED OPPOSITION BRIEF TO:
(1) NOMINAL DEFENDANT MICROSOFT
CORPORATION'S MOTION TO DISMISS
COMPLAINT; AND (2) INDIVIDUAL
DEFENDANTS' MOTION TO DISMISS   - 7 -

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Shoreline, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

serious nature of the long-term[9] wrong-doing set forth in the Demand.  Additionally, Plaintiffs have adequately set forth all claims for relief in the Complaint.  Accordingly, the Motions should be denied in their entirety.

## FACTUAL BACKGROUND

**A.**      **Background of the Company and its Antitrust Violations**

According to its public filings, Microsoft is the worldwide leader in software, services and solutions that help people and businesses realize their full potential.  ¶2.  Beginning around 2007, the EU began probing the Company regarding antitrust violations with respect to the inclusion of Internet Explorer (and only Internet Explorer) with Windows.   ¶3.  In December 2009, EU regulators dropped an antitrust case against Microsoft after the Defendants caused the Company to agree to offer consumers a choice of rival Web browsers with Windows pursuant to the 2009 Settlement.  *Id.*   The 2009 Settlement was a five-year deal, whereby European Windows users would be given a choice of 11 competing web browsers, including those made by Apple, Google and Mozilla.  *Id.*  By stipulating to the 2009 Settlement, under the Defendants' direction, Microsoft avoided paying a fine to EU officials at that time.  *Id.*  Critically, pursuant to the terms of the 2009 Settlement, Microsoft became directly responsible for monitoring its own compliance with the 2009 Settlement over the next five years.  *Id.*

Beginning in February 2011, however, under the Defendants' direction and on their watch, the Company blatantly and continuously violated the terms of the 2009 Settlement.  ¶4. At that time, in direct violation of the 2009 Settlement, the Defendants caused Microsoft to

---

[9] *See, e.g., PSE&G,* 173 N.J. at 258 (holding that when determining whether a board of directors' decision to reject a shareholder demand was reasonable, a court should consider the "seriousness" and "weight" of the shareholder's allegations).

PLAINTIFFS' COMBINED OPPOSITION BRIEF TO:
(1) NOMINAL DEFENDANT MICROSOFT
CORPORATION'S MOTION TO DISMISS
COMPLAINT; AND (2) INDIVIDUAL
DEFENDANTS' MOTION TO DISMISS   - 8 -

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Shoreline, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

eliminate the choice screen from **at least 15 million** installations of Windows 7 in Europe, making Internet Explorer the only Web browser available on these installations.  *Id.*

In the summer of 2012, although Microsoft was responsible for monitoring its own compliance with the Settlement, Almunia, the EU antitrust chief of the European Commission, warned the Defendants that on certain occasions Microsoft software was not providing users the full access to competing Web browsers, violating the terms of the 2009 Settlement.  ¶5.  The Defendants "apologized" to Almunia, characterizing the violations of the 2009 Settlement as a "technical problem."  *Id.*  Yet, despite the apology, the Defendants did nothing to halt the illicit scheme.  *Id.*

**B.     For Violating the 2009 Settlement, Microsoft Was Fined Approximately $732.2 Million**

On March 6, 2013, it was announced that European regulators had fined Microsoft an extraordinary **€561 million, or approximately $732.2 million**, for violating the 2009 Settlement.  ¶6.  Not only was this fine staggering based on its sheer size -- it was **historic**, in that it was **the first time** that the EU had ever punished any company for violating the terms of an antitrust settlement.  *Id.*  Defendants, of course, needed to publicly address this enormous and unprecedented fine, and, accordingly, they issued a short statement accepting responsibility, but maintaining that the violation of the 2009 Settlement was purportedly nothing more than a "technical error."  *Id.*  This statement was perhaps more notable for what it lacked rather than its contents -- Defendants offered no explanation as to how the 2009 Settlement was or could have been violated despite Microsoft's own responsibility for monitoring its compliance with the 2009 Settlement.  *Id.*

PLAINTIFFS' COMBINED OPPOSITION BRIEF TO:
(1) NOMINAL DEFENDANT MICROSOFT
CORPORATION'S MOTION TO DISMISS
COMPLAINT; AND (2) INDIVIDUAL
DEFENDANTS' MOTION TO DISMISS   - 9 -

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Shoreline, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

**C.**   **Plaintiffs Issue Their Respective Demands Which Are Both Improperly Refused**

**1.**   **The Barovic Demand**

As a result of the above events, on March 22, 2013, Barovic issued the Barovic Demand on the Board to investigate and commence an action against certain current and/or former directors and executive officers of the Company.  *See* ¶8; Exhibit A.  Over ten months later, on January 28, 2014, Barovic's counsel received a letter from attorney Susan S. Muck, Esq. ("Muck") of the law firm Fenwick & West LLP ("Fenwick"), informing Barovic's counsel that the Demand was being refused in its entirety (the "Barovic Refusal").[10]  ¶9.  The Barovic Refusal informed Barovic's counsel that Fenwick served as counsel to the DRC, consisting of two directors (defendants Luczo and Dublin), who were purportedly appointed by the Board to investigate the allegations in the Demand.  *Id.*

The Barovic Refusal included a purported "Resolution of the Board of Directors Adopting the Conclusions and Recommendations of the Demand Review Committee" (hereinafter referred to as the "Resolution"), which totaled less than three pages.  ¶10.  The Resolution stated that, *inter alia*, the DRC reviewed thousands of documents and "conducted relevant witness interviews."  *Id.*  The Resolution concluded that the Barovic Demand did not contain facts "to support any viable claim for breach of fiduciary duty," that the allegations in the Barovic Demand did "not give rise to legally viable claims against any of the Company's current or former officers or directors," and that "the Company undertook and adopted significant remedial measures" before receiving the Barovic Demand.  *Id.*

---

[10] A true and correct copy of the Barovic Refusal is attached hereto as Exhibit C.

PLAINTIFFS' COMBINED OPPOSITION BRIEF TO:
(1) NOMINAL DEFENDANT MICROSOFT
CORPORATION'S MOTION TO DISMISS
COMPLAINT; AND (2) INDIVIDUAL
DEFENDANTS' MOTION TO DISMISS   - 10 -

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Shoreline, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

The Barovic Refusal (that is, Muck's one page letter and the accompanying two and a half page Resolution) is wholly improper.  ¶11.  By issuing the conclusory Resolution and cover letter, the Board and DRC have attempted to insulate the DRC's investigation from any scrutiny, which is unreasonable.  *Id.*  Barovic has received no report whatsoever from the DRC, other than the Resolution described above.  *Id.*  Astoundingly, the Resolution states that the Barovic Demand did not contain facts to support any viable claim for breach of fiduciary duty [against the Defendants], even though the Defendants caused the Company ***to admit to the wrongdoing and accept responsibility***.  *Id.*  The DRC's sweeping conclusion that no breach of fiduciary duty occurred, when coupled with the Defendants taking "full responsibility," creates reasonable doubt that the DRC's investigation was conducted reasonably and in good faith.  *Id.*  The DRC has merely recited the conclusion that refusing the Barovic Demand was proper, without sufficiently explaining ***how*** the DRC reached that conclusion, especially in light of the self-compliance obligations undertaken as part of the 2009 Settlement.  *Id.*  The Defendants and the DRC have essentially asked Barovic to "take their word for it" regarding the thoroughness of the investigation, even though they have made no record.  *Id.*

Moreover, there is the critical issue of witness interviews.  ¶12.  The Resolution claims that the DRC "conducted relevant witness interviews," but is silent regarding who was interviewed and why, what questions were asked, and what the answers were.  *Id.*  As a result, Barovic's counsel engaged in extensive correspondence with Muck regarding the issue of which witnesses were interviewed.  *Id.*  On March 26, 2014, Barovic's counsel received a letter from

PLAINTIFFS' COMBINED OPPOSITION BRIEF TO:
(1) NOMINAL DEFENDANT MICROSOFT
CORPORATION'S MOTION TO DISMISS
COMPLAINT; AND (2) INDIVIDUAL
DEFENDANTS' MOTION TO DISMISS   - 11 -

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Shoreline, WA 98155
TEL 206.621.6566
FAX 206.621.9686

Muck (the "March 26, 2014 Letter"), which purported to answer Barovic's questions regarding the DRC's witness interviews.[11]  *Id.*

First, the March 26, 2014 Letter informed Barovic's counsel that the DRC declined to identify the names of the specific witnesses interviewed.  ¶13.  The March 26, 2014 Letter further stated that thirty-six individuals were interviewed by the DRC, including members of the Board and the Board's Antitrust Compliance Committee, a former president of Microsoft's Windows division, members of Microsoft's Legal and Corporate Affairs department, members of the Windows Sustained Engineering team, employees in Advertising and Consumer Support, an executive in Windows Marketing, an employee in Windows Testing, and an employee in Original Equipment Manufacturer Sales.  *Id.*

The most notable aspect of the list of interviewees, however, was the rather glaring omissions.  ¶14.  Specifically, it is readily apparent that ***the DRC never interviewed Almunia or any member of the European Commission*** – the individual(s) most knowledgeable about the misconduct giving rise to the Demands.  *Id.*  Defendants now try to argue that "reasonable minds could differ as to whether attempting to interview Mr. Almunia [or another European Commission official] would be helpful" (Microsoft Mem. at 15), but the DRC's failure to try to speak to those individuals speaks volumes.  Contrary to Defendants' assertions, any reasonable investigation of the Barovic Demand should have, at minimum, included an interview of Almunia, or some other member of the European Commission with comparable knowledge of the European Commission Investigation.  *Id.*

---

[11] A true and correct copy of the March 26, 2014 Letter is attached hereto as Exhibit D.

PLAINTIFFS' COMBINED OPPOSITION BRIEF TO:
(1) NOMINAL DEFENDANT MICROSOFT
CORPORATION'S MOTION TO DISMISS
COMPLAINT; AND (2) INDIVIDUAL
DEFENDANTS' MOTION TO DISMISS   - 12 -

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Shoreline, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## 2.  **The DiPhilipo Demand**

Also as a result of the above, on March 21, 2013, DiPhilipo issued the DiPhilipo Demand on the Board to investigate and commence an action against certain current and/or former directors and executive officers of the Company.  ¶15; *See* Exhibit B.  Over ten months later, on January 28, 2014, DiPhilipo's counsel received a letter from attorney Muck of the law firm Fenwick, informing DiPhilipo's counsel that the DiPhilipo Demand was being refused in its entirety (the "DiPhilipo Refusal").[12]  ¶16.  The DiPhilipo Refusal informed DiPhilipo's counsel that Fenwick was counsel to a purported DRC, consisting of two directors (defendants Luczo and Dublin), who were purportedly appointed to investigate the allegations in the DiPhilipo Demand.

The DiPhilipo Refusal included a copy of the Resolution (the same Resolution issued in response to the Barovic Demand), which totaled less than three pages.  ¶17.  The Resolution contended that, among other things, the DRC reviewed thousands of documents and "conducted relevant witness interviews." *Id.*  The Resolution concluded that the DiPhilipo Demand did not contain facts "to support any viable claim for breach of fiduciary duty," that the allegations in the DiPhilipo Demand did "not give rise to legally viable claims against any of the Company's current or former officers or directors," and that "the Company undertook and adopted significant remedial measures" before receiving the DiPhilipo Demand.  *Id.*

For the same reasons that the Barovic Refusal is wholly improper, the DiPhilipo Refusal is likewise improper.[13]  ¶18.  By issuing the conclusory Resolution and cover letter, the Board and DRC have attempted to insulate the DRC's investigation from any scrutiny, which is unreasonable.  *Id.*  DiPhilipo has received no report whatsoever from the DRC, other than the

---

[12] A true and correct copy of the DiPhilipo Refusal is attached hereto as Exhibit E.

[13] Collectively, the Barovic Refusal and the DiPhilipo Refusal are referred to herein as the "Refusals."

PLAINTIFFS' COMBINED OPPOSITION BRIEF TO:
(1) NOMINAL DEFENDANT MICROSOFT
CORPORATION'S MOTION TO DISMISS
COMPLAINT; AND (2) INDIVIDUAL
DEFENDANTS' MOTION TO DISMISS   - 13 -

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Shoreline, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

Resolution described above.  *Id.*  Astoundingly, the Resolution found that the DiPhilipo Demand did not contain facts to support any viable claim for breach of fiduciary duty [against the defendants], even though the Defendants caused the Company ***to admit to the wrongdoing and accept responsibility***.  *Id.*  The DRC's sweeping conclusion that no breach of fiduciary duty occurred, when coupled with the Defendants taking "full responsibility," creates reasonable doubt that the DRC's investigation was conducted reasonably and in good faith.  *Id.*  The DRC has merely recited the conclusion that refusing the DiPhilipo Demand was proper, without sufficiently explaining how the DRC reached that conclusion.  *Id.*  The Defendants and the DRC have essentially asked DiPhilipo to "take their word for it" regarding the thoroughness of the investigation, even though they have made no record.  *Id.*

Moreover, as with the Barovic Refusal, there is the critical issue of witness interviews. ¶19.  The Resolution simply states that the DRC "conducted relevant witness interviews," but provides absolutely no detail whatsoever regarding who was interviewed or what questions were asked.  *Id.*  As a result, DiPhilipo and his counsel have no idea if the individuals with the most knowledge of the facts were even interviewed.  *Id.*  Clearly, the Board's  and the DRC's complete disregard of the actual merits of the claims set forth in the Barovic Demand and the DiPhilipo Demand is improper and demonstrates the Board's lack of diligence and good faith. ¶20.  Thus, this shareholder derivative action should be allowed to proceed.  ¶21.

## ARGUMENT

### A.   Applicable Standards Governing Demand Refusal

The effect of making a stockholder demand "is to place control of the derivative litigation in the hands of the board of directors."  *Spiegel v. Buntrock*, 571 A.2d 767, 773 (Del. 1990). After a demand is issued, a board can decide whether to pursue litigation, resolve the grievance

PLAINTIFFS' COMBINED OPPOSITION BRIEF TO:
(1) NOMINAL DEFENDANT MICROSOFT
CORPORATION'S MOTION TO DISMISS
COMPLAINT; AND (2) INDIVIDUAL
DEFENDANTS' MOTION TO DISMISS   - 14 -

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Shoreline, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

short of litigation, or reject the demand.  *Zapata Corp. v. Maldonado,* 430 A.2d 779, 783 (Del. 1981).  Importantly, directors served with a demand cannot remain "neutral."  *Grimes,* 673 A.2d at 1207.  Notably, when a demand has been made, "the stockholder has spent one – but only one – 'arrow' in the 'quiver.'  The spent 'arrow' is the right to claim that demand is excused.  The stockholder does not, by making a demand, waive the right to claim that demand has been wrongfully refused."  *Id.* at 1218; *see also Scattered Corp. v. Chicago Stock Exch., Inc.*, 701 A.2d 70, 74 (Del. 1997).

If the board accepts the demand, it assumes control of the derivative claims.  *See Daily Income Fund, Inc. v. Fox,* 464 U.S. 523, 533 (1984).  Far more frequently, however, the board of directors will reject a shareholder demand as not being in the best interests of the corporation.  If after a board's rejection of a demand a shareholder decides to proceed with suit, the shareholder must demonstrate that the board's decision to reject the demand was not protected by the business judgment rule.  *Grimes,* 773 A.2d at 1207; *Stepak,* 20 F.3d 398.[14]

The business judgment rule creates a "presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was taken in the best interests of the company."  *Aronson v. Lewis,* 473 A.2d 805, 812 (Del. 1984).  Thus, a board's refusal of a demand is presumptively protected by the business judgment rule unless a plaintiff alleges facts which support the inference that the board's investigation was unreasonable or if its decision-making process was not undertaken in good faith.  *Halpert Enters., Inc. v. Harrison,* No. 06 Civ. 2331 (HB), 2007 WL 486561, at *5

---

[14] Generally, the directors on a board who consider a litigation demand are afforded the presumption of business judgment protection.  *Janssen v. Best & Flanagan,* 662 N.W.2d 876, 883 (Minn. 2003); *Levine,* 591 A.2d at 212.

PLAINTIFFS' COMBINED OPPOSITION BRIEF TO:
(1) NOMINAL DEFENDANT MICROSOFT
CORPORATION'S MOTION TO DISMISS
COMPLAINT; AND (2) INDIVIDUAL
DEFENDANTS' MOTION TO DISMISS   - 15 -

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Shoreline, WA 98155
TEL 206.621.6566
FAX 206.621.9686

1   (S.D.N.Y. Feb. 14, 2007) *aff'd,* 07-1144-CV, 2008 WL 4585466 (2d Cir. Oct. 15, 2008); *Levine,*

2   591 A.2d at 213.

3          By issuing a demand, a stockholder tacitly concedes that demand was not futile, and,

4   therefore, concedes that a majority of the directors upon whom demand was made were

5   independent or disinterested.  *Mt. Moriah Cemetary on Behalf of Dun & Bradstreet Corp. v.*

6   *Moritz,* Civ. A. 11431, 1991 WL 50149, at *3 (Del. Ch. Apr. 4, 1991) *aff'd,* 599 A.2d 413 (Del.

7   1991).  Significantly, however, a board that appears independent *ex ante* may not necessarily act

8   independently *ex post* in rejecting a demand.  Failure of an otherwise independent-appearing

9   board or committee to act independently is a failure to carry out its fiduciary duties in good faith

10  or to conduct a reasonable investigation.  *Grimes,* 673 A.2d at 1218.  Thus, when a board refuses

11  a demand, "the only issues to be examined are the good faith and reasonableness of its

12  investigation."  *Spiegel,* 571 A.2d at 777.  Stated another way, "***the court's inquiry is not into***

13  ***the substantive decision of the board, but rather is into the procedures employed by the board***

14  ***in making its determination***."  *PSE&G,* 173 N.J. at 291.

15         Corporate directors are fiduciaries, and as such they owe the corporation a duty of care to

16  inform themselves properly before making a business decision.  *Stepak,* 20 F.3d at 403; *Smith v.*

17  *Van Gorkom,* 488 A.2d 858, 872-73 (Del. 1985).  In the context of a shareholder demand, this

18  means that (as in all other business decisions), the directors are duty-bound to inform themselves

19  of ***all material information reasonably available to them***.  *Mt. Moriah,* 1991 WL 50149, at *4;

20  *see also Aronson,* 473 A.2d at 812.  As such, a board must, ***upon receipt of a demand,***

21  "investigate and evaluate the charges in order to discharge its duty to the shareholders and

22  manage corporate affairs responsibly."  *Allison on Behalf of Gen. Motors Corp. v. Gen. Motors*

23  *Corp.*, 604 F. Supp. 1106, 1117 (D. Del. 1985).  While there is "no prescribed procedure that a

PLAINTIFFS' COMBINED OPPOSITION BRIEF TO:
(1) NOMINAL DEFENDANT MICROSOFT
CORPORATION'S MOTION TO DISMISS
COMPLAINT; AND (2) INDIVIDUAL
DEFENDANTS' MOTION TO DISMISS   - 16 -

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Shoreline, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

board must follow" (*Levine,* 591 A.2d at 199), and while "the directors need not show that they performed a perfect investigation" (*see  Litton Indus., Inc. by Wildflower P'ship v. Hoch*, No. 91-56528, 1993 WL 241549, at *3 (9th Cir. 1993)), a board's ***process must be such that a court can look to it and conclude confidently that it reflects an "earnest attempt to investigate a shareholder's complaint***."  *PSE&G,* 173 N.J. at 292.

A refusal of a stockholder demand is not entitled to the protections of the business judgment rule where "the investigation has been so restricted in scope, so shallow in execution, or otherwise so *pro forma* or half-hearted as to constitute a pretext or sham."  *Id.*; *quoting Stoner*, 772 F. Supp. at 806; *see also  Syracuse Television, Inc. v. Channel 9, Syracuse, Inc.*, 194, 273 N.Y.S.2d 16, 25 (Sup. Ct. 1966).  Importantly, where (as here) a stockholder identifies a witness or set of witnesses "who should have been interviewed but were not," in connection with a board's investigation of matters set forth in a pre-suit demand, then that investigation may be unreasonable.  *Google*, 970 F. Supp. 2d at 1032.  Based on the only record before the Court, as created by Defendants' conclusory Refusals, it is apparent that the Board and DRC made no real effort to inform themselves of all material information reasonably available to it, because they made no attempt to interview essential witnesses.  Accordingly, the Board's Refusals were wrongful and are not entitled to the protection of the business judgment rule.

**B.**    **The Board's Refusals Are Not Entitled to Protection Under the Business Judgment Rule**

As the Board has failed to provide any substantive justification for the Refusals or create any record of the DRC's investigation, the Board's Refusals of the Demands are not entitled to the protections afforded by the business judgment rule.  Specifically, the Board has provided literally no support for why it refused the claims in the Demands, which incredibly were based,

PLAINTIFFS' COMBINED OPPOSITION BRIEF TO:
(1) NOMINAL DEFENDANT MICROSOFT
CORPORATION'S MOTION TO DISMISS
COMPLAINT; AND (2) INDIVIDUAL
DEFENDANTS' MOTION TO DISMISS   - 17 -

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Shoreline, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

in part, on Defendants' own admissions that the Company, under their direction, violated the 2009 Settlement (despite the self-compliance obligations contained therein), causing approximately ***$732.2 million*** in damages to the Company.  Accordingly, because the Refusals were improper when issued, the Board is not entitled to the protections of the business judgment rule and this Action should be allowed to proceed.

1.   **The DRC's Conspicuous Failure to Interview Almunia or Anyone From the European Commission Demonstrates That the Investigation Was Unreasonable and That the Refusals Are Improper**

As stated above, corporate directors are fiduciaries and as such they are duty-bound to inform themselves properly before making a business decision.  *Stepak,* 20 F.3d at 403; *Smith,* 488 A.2d at 872-73.  In the context of responding to a shareholder demand, this means that (as in every other business decision), the directors have a duty to inform themselves of ***all material information reasonably available to them***.  *Mt. Moriah,* 1991 WL 50149, at *4; *see also Aronson,* 473 A.2d at 812.  Here, despite the fact that the DRC claimed that it "conducted relevant witness interviews," the Refusals provided no details whatsoever as to who was interviewed or what questions were asked.  ¶66.  Thus, Barovic's counsel engaged in extensive correspondence with Muck regarding the issue of the witness interviews, through which Barovic's counsel was ultimately provided only generic descriptions (and not the identities) of the witnesses interviewed.  ¶67.  What these vague descriptions made apparent (and what Defendants now are forced to admit), however, is that ***the DRC never interviewed Almunia or any member of the European Commission*** and, instead, only interviewed members from within Microsoft.  ¶68.  The DRC's failure to interview those witnesses that could potentially contradict Defendants' claims of innocence is not only telling, but also is unreasonable and seriously calls into question the good faith of the Refusals.

PLAINTIFFS' COMBINED OPPOSITION BRIEF TO:
(1) NOMINAL DEFENDANT MICROSOFT
CORPORATION'S MOTION TO DISMISS
COMPLAINT; AND (2) INDIVIDUAL
DEFENDANTS' MOTION TO DISMISS   - 18 -

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Shoreline, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

As discussed above, the Northern District of California's ruling in *Google* is particularly instructive on this issue.  In *Google*, the plaintiff "made a demand on the board to take steps to investigate and hold the senior executives and directors responsible for Google's alleged violations of federal law."  *Google*, 970 F. Supp. 2d at 1025-26.  The "alleged violations of federal law" in *Google* related to that company's allowance of "certain Canadian pharmacies to advertise via Google's search engine for the sale of prescription medications to be imported into the United States," which "resulted in the entry of a non-prosecution agreement ("NPA") between Google and the United States Department of Justice ("DOJ"), and the payment by Google of a $500 million fine."  *Id.* at 1024.  In response to the shareholder demand, Google's board created a purportedly independent two-person committee to investigate the allegations contained therein.  *Id.* at 1026.  Ultimately, the committee refused the demand "in a six page letter to plaintiff."  *Id.*  The plaintiff in *Google* then filed a "demand refused" action and argued that the committee's decision to refuse the demand was improper because, *inter alia*, the committee failed to interview key witnesses.  *Id.* at 1032.  Specifically, the plaintiff alleged that the committee "did not interview the DOJ's lead investigator," and the court ultimately agreed, holding that "plaintiff has identified witnesses who should have been interviewed but were not, and the court does find that any reasonable investigation of plaintiff's demand should have included an interview of Mr. Neronha, or someone with comparable knowledge of the DOJ's investigation."  *Id.*

The allegations raised by Plaintiffs in this Action are every bit as strong, if not stronger, than those advanced in *Google*.  As in *Google*, here Defendants admit that no individual from the governmental agency that fined the Company ***over*** three quarters of a billion dollars (in this case, the European Commission) and, in particular, the head investigator (Almunia), were ever

PLAINTIFFS' COMBINED OPPOSITION BRIEF TO:
(1) NOMINAL DEFENDANT MICROSOFT
CORPORATION'S MOTION TO DISMISS
COMPLAINT; AND (2) INDIVIDUAL
DEFENDANTS' MOTION TO DISMISS   - 19 -

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Shoreline, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

interviewed by the DRC.  Thus, as in *Google* and as alleged in the Complaint, "the DRC did not interview a single individual who would corroborate Barovic's claims of wrongful conduct." ¶68.  Accordingly, there can be no doubt that any reasonable investigation of the Demands should have, at minimum, included an interview of Almunia, or some other member of the European Commission with comparable knowledge of the investigation.  The motivation behind the Board's and DRC's failure to take these very basic steps to adequately inform themselves of material information available to them is obvious – the DRC had no interest in interviewing any witness that could potentially corroborate Plaintiffs' allegations.  This is wholly improper and the Action should therefore be allowed to proceed.

> ### 2. The DRC's Finding That the Demands Did Not Contain Facts To Support Any Viable Claim For Breach of Fiduciary Duty Is Belied By The Company's Prior Admissions of Wrongdoing

As the Delaware Supreme Court has recognized, "it is important that the demand process be meaningful…"  *Grimes,* 673 A.2d at 1218.  While there is no prescribed procedure that a board of directors must follow in response to a stockholder demand, "***the process should be such that a reviewing court can look to it and conclude confidently that it reflects a corporation's earnest attempt to investigate a shareholder's complaint***."  *PSE&G,* 173 N.J. at 292.  Even assuming, *arguendo*, that the DRC's failure to interview Almunia or any member of the European Commission was a reasonable omission (and it most certainly was not), under no set of circumstances can this Court "conclude confidently" that the DRC's investigation "reflects [the DRC's] earnest attempt to investigate" the Demands in light of the admissions that the Defendants previously caused the Company to make, which Defendants make no attempt to reconcile.

PLAINTIFFS' COMBINED OPPOSITION BRIEF TO:
(1) NOMINAL DEFENDANT MICROSOFT
CORPORATION'S MOTION TO DISMISS
COMPLAINT; AND (2) INDIVIDUAL
DEFENDANTS' MOTION TO DISMISS   - 20 -

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Shoreline, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

In particular, as discussed in the Complaint, in response to the Company's violation of the 2009 Settlement, Defendants caused the Company to issue a statement in response, which "apologized" and subsequently accepted "full responsibility" for violations of the 2009 Settlement.   ¶58.   Despite publicly admitting "full responsibility" for violations of the Settlement, the DRC somehow concluded in the Refusals that the allegations in the Demands (specifically related to violations of the Settlement) did "not give rise to legally viable claims against any of the Company's current or former officers or directors," and that "the Company undertook and adopted significant remedial measures."   ¶64.   Nor did the DRC explain how legally viable claims against any of the Company's current or former officers or directors could not be brought despite the self-compliance obligations imposed on Microsoft in the 2009 Settlement.

The Northern District of California's ruling in *Google* is likewise instructive on this point.   As discussed above, in *Google*, the committee charged with investigating the demand "'found no wrongdoing or culpability by Google directors or officers,' even though the NPA includes an 'acceptance of responsibility,' admitting that Google 'improperly assisted Canadian online pharmacy advertisers to run these advertisements that geo-targeted the United States.'" *Google*, 970 F. Supp. 2d at 1031.   The court found that the committee's "sweeping conclusion that 'no wrongdoing or culpability occurred,' when coupled with the NPA's express 'acceptance of responsibility,' does create reasonable doubt that the investigation was conducted reasonably and in good faith."   *Id.*   The court went onto state that while "[i]t may be true that pursuing litigation was not in Google's best interests, and that demand was properly refused...the [demand refusal letter] merely recites the conclusion that refusal was proper without explaining how the committee reached that conclusion.   Presumably, the committee report itself does

PLAINTIFFS' COMBINED OPPOSITION BRIEF TO:
(1) NOMINAL DEFENDANT MICROSOFT
CORPORATION'S MOTION TO DISMISS
COMPLAINT; AND (2) INDIVIDUAL
DEFENDANTS' MOTION TO DISMISS   - 21 -

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Shoreline, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

contain a fuller level of detail.  But in the absence of the court's or plaintiff's own review of the report itself, the court cannot find that the investigation was conducted reasonably and in good faith."  *Id.*  Stated simply, the court found that defendants in *Google* "ask[ed] plaintiff and the court…to 'take their word for it.'"  *Id.* at 1032.

Here, just as in *Google*, Defendants have "accepted full responsibility" for violations of the 2009 Settlement publicly – a settlement which included self-compliance obligations – yet have also completely denied culpability in the Refusals without any justification.  Further, just as in *Google,* while Defendants may have an adequate explanation in a report as to how to reconcile these clearly contradictory positions and why taking actions pursuant to the Demands is not in the Company's best interests, neither Plaintiffs nor the Court have seen such a report or even know whether one exists.  As succinctly put in *Google*, Defendants here are asking Plaintiffs and the Court to "take their word for it," which is improper and constitutes wrongful refusals of the Demands.

## C.   Plaintiff States Causes of Action Upon Which Relief May Be Granted

The issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims asserted.  *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  "A complaint may not be dismissed for failure to state a claim where the allegations plausibly show that the pleader is entitled to relief."  *Daly v. Unitrin, Inc.*, No. CV-07-0384-EFS, 2008 WL 2403706, at *1 (Jun. 11, 2008).   Additionally, "a court must construe the pleadings in the light most favorable to the plaintiff and must accept all material allegations in the complaint, as well as any reasonable inferences drawn therefrom."  *Id.*  Accordingly, "[m]otions to dismiss are viewed with disfavor

PLAINTIFFS' COMBINED OPPOSITION BRIEF TO:
(1) NOMINAL DEFENDANT MICROSOFT
CORPORATION'S MOTION TO DISMISS
COMPLAINT; AND (2) INDIVIDUAL
DEFENDANTS' MOTION TO DISMISS   - 22 -

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Shoreline, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

and are rarely granted." *Id.*; *see also, Hall v. City of Santa Barbara*, 833 F.2d 1270 (9th Cir. 1986).

It is well-established that corporate officers and directors have a fiduciary relationship with their corporation. Among those duties which officers and directors owe their corporation are undivided loyalty, good faith, honesty, and full disclosure. *See Paramount Commc'ns Inc. v. QVC Network, Inc.*, 637 A.2d 34, 43 (Del. 1994);[15] *Guth v. Loft*, 5 A.2d 503, 510 (Del. 1939). The standards for directors are set forth in Chapter 23B.08.300 of the Washington Business Corporations Act, RCW 23B.08.300. Chapter 23B.08.300 provides in pertinent part:

> (1) a director shall discharge the duties of a director, including duties as a member of a committee:
>
> (a) in good faith;
>
> (b) with the care an ordinarily prudent person in a like position would exercise under similar circumstances; and
>
> (c) in a manner the director reasonably believes to be in the best interests of the corporation.[16]

Proof of good faith alone is not sufficient to satisfy the business judgment rule. *First Corp.*, 644 F. Supp. at 1159. When officers and directors fail to exercise ordinary care, the business judgment rule does not apply. *Id.* Moreover, officers and directors have an affirmative duty to be aware of the affairs of the companies they serve and they can be held liable for activities of other officers and directors which they reasonably should know about. *Senn v. Nw. Underwriters, Inc.*, 74 Wash. App. 408, 415-16 (1994). Because directors are bound to exercise

---

[15] Again, Plaintiffs respectfully submit (and Defendants' concede) that courts in Washington may look to the law of Delaware with regard to corporate governance matters. Defs. Mem. at 7, n. 6.

[16] Further, the duties of officers are measured by the same standard as directors. *First Corp. v. Jenkens*, 644 F. Supp. 1152, 1158 n.3 (W.D. Wash. 1986).

PLAINTIFFS' COMBINED OPPOSITION BRIEF TO:
(1) NOMINAL DEFENDANT MICROSOFT
CORPORATION'S MOTION TO DISMISS
COMPLAINT; AND (2) INDIVIDUAL
DEFENDANTS' MOTION TO DISMISS   - 23 -

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Shoreline, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

ordinary care they cannot set up as a defense lack of a knowledge needed to exercise their requisite degree of care.  *Id*. at 416.  If one "feels that he has not had sufficient business experience to qualify him to perform the duties of a director, he should either acquire the knowledge by inquiry, or refuse to act."  One cannot discharge a duty by remaining ignorant of what that duty entails.  *Id*.  Just as ignorance of the law is no excuse for the violation of a law, ignorance of the affairs of a business to which one owes a duty of diligence, care and skill does not excuse a director from liability for their colleagues' malfeasance.  *Id*.  As set forth below, Plaintiffs have sufficiently alleged that each of the Defendants have breached one or more of these duties owed to Microsoft.  Thus, for the reasons stated herein, the Motions should be denied in their entirety.

1.  **Plaintiffs Adequately Plead Their Breach of Fiduciary Claims**

  a.  **Plaintiffs Have Sufficiently Alleged a Breach of Fiduciary Duty Based Upon the Failure to Disclose Accurate Information**

Plaintiffs adequately allege that Defendants breached their fiduciary duty of candor by disseminating false and misleading information.  It is axiomatic that "[w]henever directors communicate publicly or directly with shareholders about the corporation's affairs . . . directors have a fiduciary duty to shareholders to exercise due care, good faith and loyalty."  *Malone v. Brincat*, 722 A.2d 5, 10 (Del. 1998).  It follows that "the *sine qua non* of directors' fiduciary duty to shareholders is honesty."  *Id.*  When directors are "deliberately misinforming shareholders about the business of the corporation, either directly or by a public statement, there is a violation of fiduciary duty."  *Id*. at 14.  In fact, a fiduciary may be held liable for making a "material misdisclosure" or if he "authorizes without fault or knowledge a misleading disclosure, later comes into knowledge of the misleading nature of the previous communication, and

PLAINTIFFS' COMBINED OPPOSITION BRIEF TO:
(1) NOMINAL DEFENDANT MICROSOFT
CORPORATION'S MOTION TO DISMISS
COMPLAINT; AND (2) INDIVIDUAL
DEFENDANTS' MOTION TO DISMISS   - 24 -

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Shoreline, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

knowingly and in bad faith (in other words, 'dishonestly') fails to correct the misleading impression created by the earlier communication." *Metro Comm. Corp. BVI v. Advanced MobileComm Techs Inc.*, 854 A.2d 121, 159 (Del. Ch. 2004).  Further, "a corporate fiduciary has an affirmative duty to know the affairs of his corporation and to attempt to prevent the defalcations of his co-fiduciaries."   *In re W. World Funding, Inc.*, 52 B.R. 743, 764 (Bankr. D. Nev. 1985) *aff'd in part, rev'd in part sub nom. Buchanan v. Henderson*, 131 B.R. 859 (D. Nev. 1990) *rev'd,* 985 F.2d 1021 (9th Cir. 1993) (citing *DePinto v. Provident Sec. Life Ins. Co.*, 374 F.2d 37 (9th Cir 1967)); *Malone*, 722 A.2d at 9.

    In the Complaint, Plaintiffs specifically allege *what* the duty is: the duty to ensure that Microsoft disseminates truthful information to its shareholders; *who* breached this duty: each of the Defendants and, specifically the members of the Audit Committee; *how* the duty was breached: dissemination of certified public releases and filings; and *why* the information was inaccurate: Defendants' failed to disclose that under their direction, the Company was violating the terms of the Settlement, which could expose the Company to hundreds of millions of dollars in fines.[17]

    Critically, despite Defendants' implications to the contrary, courts have repeatedly inferred knowledge on the part of officers and directors where the allegations in the complaint concern false statements regarding a company's "core business."  Certainly, Internet Explorer, which at its peak commanded 95% of the web browser market and which Microsoft has been

---

[17] Whether the misstatements were material and sufficient is a question of fact and "this issue is unsuitable for resolution on a motion to dismiss or judgment on the pleadings, which only looks to the sufficiency of the allegations in the complaint."   *In re Jackpot Enters. Sec. Litig.*, No. CV-S-89-805-LDG(RJJ), 1991 U.S. Dist. LEXIS 16353, at *4 (D. Nev. Mar. 28, 1991) (citing *Toombs v. Leone*, 777 F.2d 465, 469 (9th Cir. 1985)).

PLAINTIFFS' COMBINED OPPOSITION BRIEF TO:
(1) NOMINAL DEFENDANT MICROSOFT
CORPORATION'S MOTION TO DISMISS
COMPLAINT; AND (2) INDIVIDUAL
DEFENDANTS' MOTION TO DISMISS   - 25 -

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Shoreline, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

promoting for almost 20 years, constitutes a "core operation" of the Company.[18]   Recent

decisions from this circuit have held that knowledge of facts critical to the core operations of a

company may be inferred to its directors and officers.   *See In re Countrywide Fin. Corp.*

*Derivative Litig.*, 554 F. Supp. 2d 1044, 1057-71 (C.D. Cal. 2008) (finding that it was "absurd to

suggest" that key insider defendants lacked knowledge about Countrywide's core mortgage-

related operations); *South Ferry LP v. Killinger*, 542 F.3d 776, 781, 784 (9th Cir. 2008) (holding

that a strong inference of *scienter* on the part of officers is raised when the alleged wrongdoing

involves the core operations of the company).   Other courts have held the same.   *See, e.g.*, *Ryan*

*v. Gifford,* 918 A.2d 341, 355 (Del. Ch. 2007); *In re Biopure Corp. Derivative Litig.*, 424 F.

Supp. 2d 305, 308 (D. Mass. 2006); *In re Keyspan Corp. Sec. Litig.*, 383 F. Supp. 2d 358, 387-88

(E.D.N.Y. 2003) (listing cases in which courts inferred defendants' knowledge of problems with

a company's core product or most significant contract); *Broz v. Cellular Info. Sys., Inc.*, 673 A.2d

148, 153 (Del. 1996).[19]   In the Action, the false and misleading statements all relate to the core of

the Company's business, which resulted in the Company being damaged to the turn of over *$732*

*million.*   Accordingly, Plaintiffs have clearly stated a breach of fiduciary claim for false and

misleading statements.

---

[18] *See, e.g.,* http://www.bbc.co.uk/news/10095730.

[19] This pleading inference is simply one permutation of the well-established principle that in ruling on a motion to dismiss, the court must accept all of the complaint's factual allegations as true, and must draw all reasonable inferences in favor of a plaintiff as the nonmoving party.   *See In re Cendant Derivative Action Litig.*, 189 F.R.D. 117, 127 (D.N.J. 1999).   Moreover, as the court in *Biopure* stated, "[a]rgument over whether the particular officer and director defendants in this case were sufficiently 'inside' to be deemed to have had knowledge is factual, and can be made at a later stage of this litigation."   424 F. Supp. 2d at 308.

### b.  Plaintiffs Have Properly Asserted a Fiduciary Claim for the Failure to Maintain Adequate Internal Controls at the  Company

In addition to adequately alleging breaches of fiduciary duties in connection with the issuance of false and misleading statements, Plaintiffs likewise allege that Defendants breached their fiduciary duties by failing to adequately maintain internal controls, which (despite Defendants' contentions otherwise) caused the Company to file the false and misleading statements outlined in the Complaint, which were not filed in accordance with GAAP and caused the Company to violate the terms of the Settlement, which resulted in over *$732 million* worth of damages.  Defendants' Motion fails to acknowledge that Plaintiffs have set forth precisely what needs to be set forth at this stage of the proceedings.  In particular, Plaintiffs have alleged *what* Microsoft's internal controls standards are (¶¶41-44); *who* is responsible for implementing, maintaining, and overseeing such controls (*e.g.* Microsoft's officers and directors (¶¶41-44) and the Audit Committee (¶44)); and *why* the controls were inadequate (*e.g.*, because they permitted the false and misleading statements, in violation of GAAP, to be made in the Company's public filings and caused the Company to violate the terms of the Settlement).  (¶¶58, 82-85).  This is particularly egregious because, as Plaintiffs have alleged, "Microsoft itself was responsible for monitoring its own compliance with the Settlement."  ¶58.  Accordingly, Plaintiffs have adequately alleged a claim for breach of fiduciary duty in connection with Defendants' failures to maintain adequate internal controls at the Company.  Thus, the Motions should be denied in their entirety.[20]

---

[20] Additionally, Plaintiffs have adequately stated a claim for breach of fiduciary duty in connection with the oversight and management of the Company.  This is a breach of fiduciary duty claim similar to the prior claim of failing to maintain internal controls.  Plaintiffs allege in the Complaint who failed to engage in the corporate oversight: officers, directors, and the Audit Committee (¶¶86-92) and what they did wrong: caused the Company to

PLAINTIFFS' COMBINED OPPOSITION BRIEF TO:
(1) NOMINAL DEFENDANT MICROSOFT
CORPORATION'S MOTION TO DISMISS
COMPLAINT; AND (2) INDIVIDUAL
DEFENDANTS' MOTION TO DISMISS   - 27 -

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Shoreline, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

### 2.    Plaintiff's Complaint Adequately Pleads an Unjust Enrichment Claim

Plaintiffs allege that Defendants were unjustly enriched by their wrongdoing.  ¶¶93-95. Unjust enrichment is the "unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience."  *In re HealthSouth Corp. S'holders Litig.*, 845 A.2d 1096, 1105 (Del. Ch. 2003), *aff'd*, A.2d 1121 (Del. 2004).  As the *HealthSouth* court stated:

> To obtain restitution, the Plaintiffs were required to show that the Defendants were unjustly enriched, that the Defendants secured a benefit, and that it would be unconscionable to allow them to retain that benefit.  Restitution is permitted even when the Defendant retaining the benefit is not a wrongdoer.  Restitution serves to deprive the Defendant of benefits that in equity and good conscience he ought not to keep, even though he may have received those benefits honestly in the first instance, and even though the Plaintiff may have suffered no demonstrable losses.

*Id.*; *see also Jackson Nat'l Life Ins. Co. v. Kennedy*, 741 A.2d 377, 394 (Del. Ch. 1999) ("Having pleaded sufficiently the allegations [of] breach of fiduciary duty . . . it is axiomatic that Plaintiffs have likewise pleaded sufficiently the allegations that Defendants were enriched by their actions [and it is therefore] likely they will also be able to prove that neither [defendant] can retain any benefit resulting from the disputed transaction.").

Here, Plaintiffs amply assert a claim for unjust enrichment by alleging that, as a result of their wrongdoing, the Defendants unjustly received compensation as a result of their false portrayal of Microsoft's true financial health.  ¶¶93-95.  Moreover, such restitution is an appropriate remedy regardless of Defendants' roles in the scheme.  *See Ryan*, 918 A.2d at 355.[21]

---

violate the express terms of the Settlement, which they were expressly charged with overseeing compliance with (¶58).  Nothing more is required at this stage of the proceedings to state a claim for breach of fiduciary duty.

[21] For essentially the same reasons that Plaintiffs have adequately alleged breach of fiduciary duty claims, Plaintiffs have likewise alleged claims for abuse of control (¶¶96-100) and gross mismanagement (¶¶101-104).

PLAINTIFFS' COMBINED OPPOSITION BRIEF TO:
(1) NOMINAL DEFENDANT MICROSOFT
CORPORATION'S MOTION TO DISMISS
COMPLAINT; AND (2) INDIVIDUAL
DEFENDANTS' MOTION TO DISMISS   - 28 -

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Shoreline, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

1

**D.      Defendants' Reliance on the Company's Exculpatory Provision Is Inappropriate at This Juncture and Inapplicable in Any Regard**

2

Defendants' attempt to rely on the "exculpatory provision" in Microsoft's Articles of

3

Incorporation, both for demand futility purposes and in connection with Plaintiffs' breach of

4

fiduciary duty claims, is unavailing.  Defs. Mem. at 6; Microsoft Mem. at 7.  First, Plaintiffs

5

cannot be dismissed at the pleading stage based on the "exculpatory provision" of Microsoft's

6

charter, because such a clause cannot even be considered by a Court at the pleading stage (or

7

even the summary judgment stage), unless the ***sole conceivable basis of liability*** is a violation of

8

the duty of care.  *Emerald Partners v. Berlin*, 726 A.2d 1215, 1223 (Del. 1999); *Alidina v.*

9

*Internet.com Corp.*, Civ. A. 17235-NC, 2002 WL 31584292, at **8-9 (Del. Ch. Nov. 6, 2002).

10

Accordingly, dismissal of a derivative action on the basis of an exculpatory provision at the

11

pleading stage is an extreme application of the rule and a strongly disfavored approach to

12

resolving a pleading motion.  *See Ad Hoc Comm. of Equity Holders of Tectonic Network, Inc. v.*

13

*Wolford,* 554 F. Supp. 2d 538, 561 (D. Del. 2008); *Mervyn's Holdings, LLC v. Lubert-Adler*

14

*Group IV, LLC*, 426 B.R. 488, 502 (Bankr. D. Del. 2010).[22]

15

16

17

Second, even assuming, *arguendo*, that Defendants could properly raise this defense at

18

the pleading stage – which they cannot – the protections afforded by exculpatory provisions do

19

---

20

[22] Because "the protection of an exculpatory charter provision appears to be in the nature of an affirmative defense," such "defenses generally will not form the basis for dismissal under Rule 12(b)(6)."  *In re Tower Air, Inc.*, 416 F.3d

21

229, 242 (3d Cir. 2005); *see also In re Autobacs Strauss, Inc.*, 473 B.R. 525, 561 n.112 (Bankr. D. Del. 2012) (denying dismissal of claims based upon an exculpatory provision because it constitutes an affirmative defense that

22

is inappropriate for consideration on a motion to dismiss); *In re The Brown Schools*, 368 B.R. 394, 401 (Bankr. D. Del. 2007) ("The exculpation clause is an affirmative defense and the determination of the viability of that defense is

23

not proper at this stage"); *In re TASER Int'l S'holder Derivative Litig.*, No. CV-05-123-PHX-SRB, 2006 WL 687033, at *19 (D. Ariz. Mar. 17, 2006) (declining to consider an exculpatory charter provision in the context of

24

defendants' motion to dismiss because it constituted an affirmative defense that was inappropriate for consideration).  Additionally, "it is the burden of the director defendants to demonstrate that they are entitled to the

25

protections of the relevant charter provision." *In re Walt Disney Co. Derivative Litig.*, 907 A.2d 693, 752 (Del. Ch. 2005) *aff'd*, 906 A.2d 27 (Del. 2006).  Defendants have provided the Court with ***no evidence*** to satisfy their burden

26

of demonstrating that they are entitled to the protections of the Company's exculpatory provision as a matter of law.

PLAINTIFFS' COMBINED OPPOSITION BRIEF TO:
(1) NOMINAL DEFENDANT MICROSOFT
CORPORATION'S MOTION TO DISMISS
COMPLAINT; AND (2) INDIVIDUAL
DEFENDANTS' MOTION TO DISMISS   - 29 -

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Shoreline, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

not extend to "acts or omissions not in good faith" or which "involve intentional misconduct or a knowing violation of law."  *See In re Abbott Labs. Derivative S'holders Litig.*, 325 F.3d 795, 810 (7th Cir. 2003) ("breaches other than duty of care may not exempt the directors from liability and would disable the directors from considering a demand fairly").   Indeed, an exculpatory provision cannot shield directors from "duty of loyalty violations, good faith violations and certain other conduct."  *Emerald Partners*, 787 A.2d at 90.  As the Sixth Circuit aptly noted in *McCall v. Scott*:

> Here, Plaintiffs accuse the directors not merely of "sustained inattention" to their management obligations, but rather of "intentional ignorance of" and "willful blindness" to "red flags" signaling fraudulent practices throughout [the company]. Accordingly, regardless of how plaintiffs style their duty of care claims, we find that they have alleged a conscious disregard of known risks, which conduct, if proven, cannot have been undertaken in good faith. Thus, we hold that plaintiffs' claims are not precluded by [the company's] § 102(b)(7) waiver provision.

250 F.3d 997, 1001 (6th Cir. 2001); *see also Ryan v. Lyondell Chem. Co.*, Civ. A. 3176-VCN, 2008 WL 4174038, at *3 (Del. Ch. Aug. 29, 2008) (holding that a "intentional dereliction of duty or a conscious disregard of one's responsibilities" constitutes misconduct that amounts to a "non-exculpable, non-indemnifiable violation of the fiduciary duty to act in good faith).  Plaintiffs here adequately allege that the Company, under Defendants' direction and on their watch, repeatedly violated the clear and unambiguous terms of the Settlement, which they themselves were in charge of ensuring compliance with.

 "Where the complaint sufficiently alleges a breach of fiduciary duties based on a failure of the directors to act in good faith, bad faith actions present a question of fact that cannot be determined at the pleading stage."  *Abbott Labs*, 325 F.3d at 811; *see also In re Direct Response Media, Inc.*, 466 B.R. 626, 651 (Bankr. D. Del. 2012) (holding that a defense based upon an exculpation clause "cannot be raised at the 12(b)(6) motion to dismiss stage, because the

PLAINTIFFS' COMBINED OPPOSITION BRIEF TO:
(1) NOMINAL DEFENDANT MICROSOFT
CORPORATION'S MOTION TO DISMISS
COMPLAINT; AND (2) INDIVIDUAL
DEFENDANTS' MOTION TO DISMISS   - 30 -

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Shoreline, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

Amended Complaint has stated sufficient facts supporting a claim that directors acted in bad faith or conscious disregard of their responsibilities")   "Put simply, if a complaint **properly** pleads a non-exculpated claim, that claim at least survives a motion to dismiss."   *Orman v. Cullman*, 794 A.2d 5, 41 (Del. Ch. 2002) (emphasis in original).   Because Plaintiffs have adequately alleged a conscious disregard of known risks that cannot have been undertaken in good faith, Defendants' argument fails.

## CONCLUSION

For these reasons, Plaintiffs respectfully submit that the Motions should be denied in their entirety.[23]

DATED this 30th day of September, 2014.

/s/ Duncan C. Turner
DUNCAN C. TURNER, WSBA No. 20597
**BADGLEY MULLINS TURNER PLLC**
701 Fifth Avenue, Suite 4750
Seattle, Washington, 98104
Telephone:  (206) 621-6566
Facsimile:  (206) 621-9686
Email: duncanturner@badgleymullins.com
**Liaison Counsel for Plaintiffs**

**THE WEISER LAW FIRM, P.C.**
ROBERT B. WEISER
BRETT D. STECKER (admitted *Pro Hac Vice*)
JEFFREY J. CIARLANTO (admitted *Pro Hac Vice*)
22 Cassatt Avenue, First Floor
Berwyn, PA 19312
Telephone:  (610) 225-2677
Facsimile:  (610) 408-8062
Email:  rw@weiserlawfirm.com
           bds@weiserlawfirm.com

---

[23] If the Court is inclined to grant either of the Motions, Plaintiffs respectfully request leave to amend the Complaint. Leave to amend should be freely granted unless the Court "determines that the pleading could not possibly be cured by the allegation of other facts."  *See* Fed. R. Civ. P. 15(a); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000); *Allen v. Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990).

PLAINTIFFS' COMBINED OPPOSITION BRIEF TO:
(1) NOMINAL DEFENDANT MICROSOFT
CORPORATION'S MOTION TO DISMISS
COMPLAINT; AND (2) INDIVIDUAL
DEFENDANTS' MOTION TO DISMISS   - 31 -

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Shoreline, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

jjc@weiserlawfirm.com

**THE WEISER LAW FIRM, P.C.**
KATHLEEN A. HERKENHOFF
12707 High Bluff Drive, Suite 200
San Diego, CA 92130
Phone:  (858) 794-1441
Facsimile:  (858) 794-1450
Email:  kah@weiserlawfirm.com

**RYAN & MANISKAS, LLP**
KATHARINE M. RYAN
RICHARD A. MANISKAS
995 Old Eagle School Road, Suite 311
Wayne, PA 19087
Telephone: 484-588-5516
Facsimile: 484-450-2582
Email:  kryan@rmclasslaw.com
        rmaniskas@rmclasslaw.com

**Co-Lead Counsel for Plaintiffs**

**LAW OFFICE OF ALFRED G. YATES, JR., P.C.**
ALFRED G. YATES, JR.
GERALD L. RUTLEDGE
519 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA 15219
Telephone: (412) 391-5164
Email:  yateslaw@aol.com

**Additional Counsel for Plaintiff Barovic**

PLAINTIFFS' COMBINED OPPOSITION BRIEF TO:
(1) NOMINAL DEFENDANT MICROSOFT
CORPORATION'S MOTION TO DISMISS
COMPLAINT; AND (2) INDIVIDUAL
DEFENDANTS' MOTION TO DISMISS   - 32 -

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Shoreline, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on September 30, 2014 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

**DAVIS WRIGHT TREMAINE LLP**
Stephen Rummage
Brendan Mangan
1201 Third Avenue, Suite 2200
Seattle, WA 98101
Telephone: (206) 757-8260
Facsimile: (206) 757-7260
*Counsel for the Individual Defendants*

**ORRICK, HERRINGTON & SUTCLIFFE LLP**
Daniel J. Dunne
George E. Greer
Charles J. Ha
701 Fifth Avenue, Suite 5600
Seattle, WA 98104-7097
Telephone: (206) 839-4395
Facsimile: (206) 839-4301
*Counsel for Nominal Defendant Microsoft*

*/s/Duncan C. Turner*
Duncan C. Turner, WSBA No. 20597
Badgley Mullins Turner, PLLC
19929 Ballinger Way NE, Suite 200
Shoreline, WA 98155
Telephone: 206-621-6566
Facsimile: 206-621-9686
Email: duncanturner@badgleymullins.com

PLAINTIFFS' COMBINED OPPOSITION BRIEF TO:
(1) NOMINAL DEFENDANT MICROSOFT
CORPORATION'S MOTION TO DISMISS
COMPLAINT; AND (2) INDIVIDUAL
DEFENDANTS' MOTION TO DISMISS   - 33 -

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Shoreline, WA 98155
TEL 206.621.6566
FAX 206.621.9686