The Honorable John C. Coughenour

1

2

3

4

5

6

7

8          **UNITED STATES DISTRICT COURT**
         **WESTERN DISTRICT OF WASHINGTON**
9                    **AT SEATTLE**

10   BAROVIC v. BALLMER, et al.              )    Lead Case No. 14-cv-00540
                                            )
11                                          )
                                            )    (Consolidated with Case No. 14-cv-00586)
12   This Document Relates To:              )
                                            )
13                                          )    PLAINTIFFS' MOTION FOR
                                            )    PRELIMINARY APPROVAL OF
14   ALL ACTIONS                            )    DERIVATIVE SETTLEMENT
                                            )
15                                          )
                                            )
16   _____ )

17

18

19

20

21

22

23

24

25

26

PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF DERIVATIVE SETTLEMENT
LEAD CASE NO: 2:14-CV-00540-JCC

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    HISTORY OF THE LITIGATION ..................................................................... 5

       A.     Events Leading to the Initiation of the Action ...................................... 5

       B.     Plaintiffs' Pre-Suit Litigation Demands ................................................. 5

       C.     Plaintiffs' Complaint .............................................................................. 6

       D.     Defendants' Motions to Dismiss and the Court's Order ........................ 6

       E.     Defendants Vigorously Contest Discovery and File a Motion for
              Summary Judgment ................................................................................ 7

       F.     Settlement Negotiations .......................................................................... 8

III.   THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL ................ 9

       A.     The Standard for Preliminary Approval of a Settlement ....................... 9

       B.     The Proposed Settlement Serves the Interests of Microsoft and Current
              Microsoft Shareholders ........................................................................ 10

       C.     The Proposed Settlement Is the Result of Intense, Arms-Length
              Negotiations by Experienced Counsel .................................................. 12

IV.    THE SEPARATELY NEGOTIATED AGREED FEE IS FAIR AND
       REASONABLE .................................................................................................. 13

V.     THE PROPOSED NOTICE IS ADEQUATE AND REASONABLE ............................ 14

VI.    CONCLUSION ................................................................................................. 15

PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF DERIVATIVE SETTLEMENT
LEAD CASE NO: 2:14-CV-00540-JCC - i -

i

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bell Atlantic Corp. v. Bolger*,
2 F.3d 1310 (3d. Cir. 1993).............................................................................. 4, 6

*City of Pontiac Gen. Emps.'. Ret. Sys. v. Langone, derivatively on behalf of the
Home Depot, Inc.*, 2006 Civ. 122302, slip op. (Ga. Super. Ct. June 10, 2008)
(Order)................................................................................................................ 14

*Cohn v. Nelson*,
375 F. Supp. 2d 844 (E.D. Mo. 2005)................................................................. 9

*In re Comverse Tech., Inc. Derivative Litig.*,
06-cv-1849, slip op. (E.D.N.Y. Apr. 2, 2010) (Order) ...................................... 14

*Ellis v. Naval Air Rework Facilitity*,
87 F.R.D. 15 (N.D. Cal. 1980), *aff'd* 661 F.2d 939 (9th Cir. 1981) ................. 2, 10

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995).................................................................................. 9

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ............................................................................................ 13

*Ingram v. Coca-Cola Co.*,
200 F.R.D. 685 (N.D. Ga. 2001).......................................................................... 14

*In re Marvell Tech. Grp. Ltd. Derivative Litig.*,
No. C-06-3894-RMW, slip op. (N.D. Cal. May 21, 2009) (Order)..................... 14

*Mills v. Elec. Auto-Lite Co.*,
396 U.S. 375 (1970) ............................................................................................ 13

*In re MoneyGram Int'l, Inc. Derivative Litig.*,
09 Civ. 3208 (DSD) (D. Minn. Apr. 1, 2010)..................................................... 14

*In re NVIDIA Corp. Derivative Litig.*,
No. C-06-06110-SBA(JCS), 2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) .......... 2, 9, 10, 13

*Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*,
688 F.2d 615 (9th Cir. 1982) ............................................................................... 10

*In re Pacific Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) ................................................................................. 10

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Sinegal, et al.*,
No. 2:08-cv-01450-TSZ, slip op. (W.D. Wash. June 10, 2011) (Order) ............. 13

PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF DERIVATIVE SETTLEMENT
LEAD CASE NO: 2:14-CV-00540-JCC - ii -

ii

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

*In re Rambus Inc. Derivative Litig.*
    No. C 06-3513, 2009 WL 166689 (N.D. Cal. Jan. 20, 2009) ................................................. 14

*Wiener v. Roth,*
    791 F.2d 661 (8th Cir. 1986) ........................................................................................................ 9

**Statutes, Rules, and Regulations**

Fed. R. Civ. P. 12(b)(6) .................................................................................................................. 6

Fed. R. Civ. P. 23.1 ............................................................................................................... *passim*

Fed. R. Civ. P. 23.1(c) ................................................................................................................... 9

**Other Authorities**

*Manual for Complex Litigation* § 30.41 (3d ed. 1995) ................................................................ 10

PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF DERIVATIVE SETTLEMENT
LEAD CASE NO: 2:14-CV-00540-JCC - iii -

iii

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

Plaintiffs Kim Barovic ("Barovic") and Stephen DiPhilipo ("DiPhilipo" and, together with Barovic, "Plaintiffs") respectfully submit this motion for preliminary approval of the proposed settlement (the "Proposed Settlement") of the above-captioned consolidated shareholder derivative action (the "Action") set forth in the Stipulation of Settlement, dated October 28, 2015 (the "Stipulation"), resolving the derivative claims brought on behalf of Microsoft Corporation ("Microsoft" or the "Company") against the Individual Defendants.[1]

## I.    INTRODUCTION

The Proposed Settlement of this Action provides substantial benefits to Microsoft and Current Microsoft Shareholders, was achieved after litigating the Action through summary judgment briefing, and is the product of tough and protracted arm's-length negotiations. As set forth below, the Proposed Settlement provides for substantial corporate governance improvements concerning Microsoft's antitrust compliance, including the establishment of an Antitrust Compliance Office responsible for monitoring Microsoft's compliance with any future European Union ("EU") or United States (U.S.) regulatory decisions, consent decrees, commitments and undertakings and existing Microsoft commitments or undertakings with the EU. The Antitrust Compliance Office shall report to the Regulatory and Public Policy Committee ("RPPC") of Microsoft's Board of Directors (the "Board") at every scheduled meeting of the RPPC and to the full Board at least annually. Moreover, the Antitrust Compliance Office will be operative for at least five (5) years from its implementation and Microsoft will dedicate **$42.5 million** to fund the Antitrust Compliance Office and its activities.

After negotiating the principal terms of the Proposed Settlement, counsel for Plaintiffs and Microsoft negotiated the amount of attorneys' fees and expenses to be paid to Plaintiffs' Counsel. *See* Stipulation, §5.1. As a result of those arm's-length negotiations, Microsoft has

---

[1]    Capitalized terms have the same meaning ascribed to them as in the Stipulation, attached to the Declaration of Duncan C. Turner in Support of Preliminary Approval of Derivative Settlment ("Turner Decl.") as Exhibit 1.

PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF DERIVATIVE SETTLEMENT
LEAD CASE NO: 2:14-CV-00540-JCC

1

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

agreed that Plaintiffs' Counsel is to be paid $7.3 million (the "Agreed Fee") in recognition of the substantial benefits conferred upon the Company and Current Microsoft Shareholders, subject to Court approval. Because the Proposed Settlement is certainly within "the range of possible approval,"[2] it easily meets the standard for preliminary approval. Thus, the Proposed Preliminary Approval Order should be entered, notifying Current Microsoft Shareholders of the Proposed Settlement and scheduling a final approval hearing.

In December 2009, Microsoft agreed to certain commitments to the European Commission ("EC") to resolve the EC's antitrust concerns regarding Microsoft's inclusion of Internet Explorer (and only Internet Explorer) with Microsoft's Windows operating system (the "Commitments"). Pursuant to the Commitments, Microsoft was solely responsible for monitoring its own compliance with the Commitments and to deliver a Browser Choice Screen ("BCS") to personal computers operating Windows in Europe. Despite being responsible for its own compliance, Microsoft was informed by the EC in June 2012 that the BCS was not being displayed on certain computers in Europe and on March 6, 2013, the EC announced that it had fined Microsoft €561 million, or approximately $7322 million, for violating the Commitments.

This Action arose from Plaintiffs' allegations that the Individual Defendants breached their fiduciary duties by disregarding the Company's Commitments with the EC, causing the Company to ultimately pay the €561 million fine. One of Plaintiffs' core objectives in initiating, prosecuting, and resolving this Action was to ensure that the Individual Defendants (as well as future Microsoft directors and officers) would never consider Microsoft's payment one of the largest fine in EC history as a mere "cost of doing business" but, instead, would take appropriate measures to prevent similar antitrust violations and their consequences from

---

[2] *In re NVIDIA Corp. Derivative Litig.*, No. C-06-06110-SBA(JCS), 2008 WL 5382544, at *2 (N.D. Cal. Dec. 22, 2008) citing *Manual for Complex Litigation* § 30.41, at 237 (3d ed. 1995); *see also Ellis v. Naval Air Rework Facitity*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd* 661 F.2d 939 (9th Cir. 1981).

PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF DERIVATIVE SETTLEMENT
LEAD CASE NO: 2:14-CV-00540-JCC

2

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

occurring. The Proposed Settlement is designed to address this core concern by, *inter alia,* creating the Antitrust Compliance Office to oversee and monitor the Company's antitrust compliance and to then report its findings to the RPPC and the full Board.

The Proposed Settlement was intensely negotiated amongst counsel for the Plaintiffs, Microsoft, and the Individual Defendants (the "Settling Parties"), and Plaintiffs' counsel consulted during the negotiations with Professor Einer R. Elhauge ("Professor Elhauge"), one of the world's leading antitrust expert's, Petrie Professor of Law at Harvard Law School, and former Chairman of the Antitrust Advisory Committee to the Obama Campaign. The Antitrust Compliance Office will be headed by the Antitrust Compliance Officer who may hire additional staff as needed to help execute his or her duties. In order to ensure that the Antitrust Compliance office is active, engaged and takes responsibility over Microsoft's antitrust compliance, the Proposed Settlement requires Microsoft to create a $42.5 million fund that will be used for the **sole purpose** of funding the Antitrust Compliance Office's activities. This includes hiring outside technical experts in software design and programming, antitrust economics experts to assist with the evaluation of antitrust compliance issues, and independent outside counsel. Should the Antitrust Compliance Office continue to operate beyond the 5-year minimum term, the RPPC will establish a budget that it deems reasonable to fund the continuance of the Antitrust Compliance Office.

The Proposed Settlement also provides that the Antitrust Compliance Office shall monitor Microsoft's training for employees regarding the Company's policies to ensure compliance with antitrust law and commitment to behavior and practices that comply with antitrust laws and promote a compliant culture within the Company. Moreover, the Antitrust Compliance Office will ensure that the Microsoft's compliance policies and procedures provided in the Proposed Settlement will be implemented at any company acquired by Microsoft within 12 months. Like the Antitrust Compliance Office's monitoring and reporting responsibilities, these features of the Proposed Settlement closely correlate to Plaintiffs'

PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF DERIVATIVE SETTLEMENT
LEAD CASE NO: 2:14-CV-00540-JCC

3

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

underlying allegations and concerns regarding preventing systemic unlawful anticompetitive activities.

Plaintiffs and Plaintiffs' counsel believe that the substantial benefits arising from the creation of the Antitrust Compliance Office and its expanding authority and responsibility could *only* be achieved in the context of a settlement. A post-trial jury verdict most likely could not impose affirmative obligations to create specific corporate governance structures that would enhance Microsoft's compliance efforts going forward. Clearly, these benefits are highly valuable, and, perhaps, more valuable to a Company like Microsoft than monetary relief. *See, e.g., Bell Atlantic Corp. v. Bolger*, 2 F.3d 1310 (3d. Cir. 1993) (non-monetary derivative relief is particularly valuable when it is intended to prevent future harm).[3]

Plaintiffs achieved the Proposed Settlement only after fully and aggressively litigating this Action through full summary judgment briefing. After the Court fully denied Defendants' motions to dismiss in December 2014, Plaintiffs' counsel reviewed over 8,500 documents and engaged in contested discovery and summary judgment briefing. Plaintiffs and Plaintiffs' counsel zealously prosecuted this action to build the leverage necessary to extract this Proposed Settlement.

The question before the Court on this Motion is discrete – is the Proposed Settlement within the range of what might be found to be fair, reasonable and adequate to warrant preliminary approval, the dissemination of notice to Current Microsoft Shareholders, and scheduling a final approval hearing? The Proposed Settlement, which includes the creation of a new, fully funded Antitrust Compliance Office with expanded authority and responsibility to improve the Company's antitrust compliance efforts, conveys immediate and long-lasting structural benefits to Microsoft and its shareholders. As such, Plaintiffs respectfully submit that

---

[3] Which is to say, the goal for Microsoft shareholders (and the Board) should be preventing future large regulatory fines, as opposed to securing a modest indemnified judgment against the Individual Defendants at trial.

PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF DERIVATIVE SETTLEMENT
LEAD CASE NO: 2:14-CV-00540-JCC

4

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

the answer to this simple question posed by this Motion is unequivocally "yes."  Accordingly, the Preliminary Approval Order should be entered and Notice disseminated in accord with that Order.

## II.     HISTORY OF THE LITIGATION

### A.     Events Leading to the Initiation of the Action

Beginning around 2007, the EC began probing Microsoft regarding potential antitrust violations with respect to the inclusion of Internet Explorer (and not other internet web browsers) with Microsoft's Windows operating system.  In December 2009, Microsoft resolved these antitrust concerns by agreeing to the Commitments, under which Microsoft agreed to deliver a BCS to personal computers operating Windows in the European Economic Area (the "EEA") for a period of five years.  By agreeing to the Commitments, under the Individual Defendants' direction, Microsoft avoided paying a fine to the EC at that time.  Under the terms of the Commitments, Microsoft became directly responsible for monitoring its own compliance with the Commitments and to report to the EC annually on the implementation of the Commitments over the next five years.

Despite being directly responsible for monitoring its own compliance, Microsoft violated the Commitments when in connection with its release of Windows 7 Service Pack 1 ("SP1") in February 2011, a technical error and miscommunication resulted in a failure to install the BCS on approximately 15.3 million computers in the EEA.  In June 2012, the EC staff warned Microsoft that it had received reports from a third-party that the BCS was not being displayed on certain new Windows computers purchased in the EEA.  Microsoft quickly remedied the failure.  On March 6, 2013, the EC announced that it had fined Microsoft €561 million, or approximately $732.2 million, for violating the Commitments.

### B.     Plaintiffs' Pre-Suit Litigation Demands

As a result of the above events, on March 21, 2013 and March 22, 2013, respectively, DiPhilipo and Barovic issued separate pre-suit demands under Washington law on the Board to

PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF DERIVATIVE SETTLEMENT
LEAD CASE NO: 2:14-CV-00540-JCC

5

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

investigate and commence an action against certain current and/or former directors and executive officers of the Company. Plaintiffs' demands were substantially identical and were reviewed by a Demand Review Committee (the "DRC") consisting of Individual Defendants Luczo and Dublon. Based on the recommendation of the DRC, assisted by independent counsel, the Board of Directors refused Plaintiffs' respective demands by letters dated January 28, 2014.

### C.     Plaintiffs' Complaint

This Action was initiated in this Court on behalf of Microsoft on April 11, 2014, and the Plaintiffs subsequently filed the Verified Consolidated Shareholder Derivative Complaint (the "Complaint") on June 26, 2014. (Dkt. Nos. 1; 18). In the Complaint, Plaintiffs alleged that the Demands were wrongfully refused by the Board and that the Individual Defendants caused the Company to violate the Commitments and to pay the €561 million fine to the EC. (Dkt. No. 18 at 15-22). The Complaint asserted claims under Washington law on behalf of the Company against the Individual Defendants for breach of fiduciary duty for: (a) failing to maintain adequate internal controls, (b) failing to properly manage the Company, and (c) disseminating inaccurate information. *Id.* at 26-31. The Complaint also asserted claims against the Individual Defendants for unjust enrichment, abuse of control, and gross mismanagement. *Id.*

### D.     Defendants' Motions to Dismiss and the Court's Order

On August 11, 2014, the Company and the Individual Defendants subsequently moved to dismiss the Action, both under Fed. R. Civ. P. 23.1 ("Rule 23.1") and under Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)"). (Dkt. Nos. 19; 23). Plaintiffs opposed the motions on September 30, 2014, and Defendants replied on October 30, 2014. (Dkt. Nos. 28-30). Without hearing oral argument, the Court issued an Order on December 10, 2014, denying Defendants' motions to dismiss in full. The Court held that Plaintiffs adequately alleged that the Demands were wrongfully refused because the "DRC's investigation was 'restricted in scope,' 'shallow in execution,' '*pro forma*,' and 'half-hearted.'" (Dkt. No. 31 at 8). The Court also sustained each

PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF DERIVATIVE SETTLEMENT
LEAD CASE NO: 2:14-CV-00540-JCC

6

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

of the claims for relief against the Individual Defendants set forth in the Complaint.

### E. Defendants Vigorously Contest Discovery and File a Motion for Summary Judgment

Following the Court's denial of Defendants' motions to dismiss the Complaint, Plaintiffs' counsel served targeted document requests on Defendants' counsel. Defendants objected to the production of all documents related to the merits of Plaintiffs' claims and positioned that they would only engage in discovery concerning the review and the refusal of the Demands. Between April and May 2015, the Settling Parties engaged in extensive "meet-and-confer" conferences to determine the proper scope of discovery. Defendants asserted that, despite the Court's Order denying the motions to dismiss, Plaintiffs did not have standing to take merits discovery and prosecute their substantive claims for relief on behalf of Microsoft, because Plaintiffs had yet to prove beyond the pleading stage that the Demands were wrongfully refused. Plaintiffs disagreed, stressing that the Court's Order on the motion to dismiss, the Federal Rules of Civil Procedure, Washington legislation, and legal precedent clearly hold that Rule 23.1 is strictly a pleading threshold that Plaintiffs satisfied.

Without the Settling Parties reaching an agreement on the scope of discovery, Microsoft filed a Motion for Summary Judgment (the "SJ Motion") on May 1, 2015. (Dkt. No. 49). In the SJ Motion, Microsoft asserted that Plaintiffs did not have standing to pursue their claims because the Board's refusal of the Demands was reasonable as a matter of law and fact. In support of the SJ Motion, Microsoft presented the Court with the DRC's report and a declaration of Susan Muck, the DRC's independent counsel. Additionally, between March and June 2015, Microsoft produced over 1,200 pages of documents concerning the DRC's review of the Demands as the evidentiary basis of the SJ Motion. Microsoft also filed a motion for phased discovery and to stay merits discovery pending the SJ Motion on June 16, 2015. (Dkt. No. 65).

On June 25, 2015, Plaintiffs opposed the SJ Motion. First, Plaintiffs submitted a Rule 56(d) declaration opposing the SJ Motion on the grounds that the motion was premature and

PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF DERIVATIVE SETTLEMENT
LEAD CASE NO: 2:14-CV-00540-JCC

7

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

should be denied or continued to provide Plaintiffs with the reasonable time and opportunity to conduct merits related discovery. (Dkt. No. 68). Second, Plaintiffs fully opposed the merits of the SJ Motion asserting that: (i) the motion is procedurally improper and stricken because Rule 23.1 standing is a pleading, not an evidentiary standard; (ii) the available evidence demonstrates that Defendants' review of the Demands was a sham and unreasonable; and (3) there are disputes as to genuine issues of material fact with respect to Plaintiffs' claims. (Dkt. No. 67). Also on June 25, 2015, Plaintiffs opposed the motion for phased discovery and cross-motioned to compel the production of merits related discovery. (Dkt. No. 70). The SJ Motion, motion for phased discovery and cross-motion to compel discovery were fully briefed on July 13, 2015.

Microsoft's counsel contacted Plaintiffs' counsel later in July 2015 requesting that Plaintiffs prepare a formal settlement demand. Plaintiffs believe that Defendants' willingness to engage in settlement negotiations was motivated by the significant risk that the Court would deny the SJ Motion, and Plaintiffs' willingness to zealously prosecute the Action through trial.

### F. Settlement Negotiations

On August 14, 2015, Plaintiffs' Counsel, after consultation with Professor Elhauge, sent a settlement demand to Defendants in an effort to resolve the Action (the "Settlement Demand"). To facilitate the negotiations, the Settling Parties engaged in additional discovery. The Settling Parties also reached a compromised concerning Plaintiffs' cross-motion to compel discovery and on September 30, 2015 and October 6, 2015, Microsoft produced over 7,600 additional documents for Plaintiffs' Counsel to review to confirm that the settlement negotiations would lead to a fair, reasonable, and adequate settlement. Plaintiffs' Counsel completed the review of the additional discovery over the first two weeks of October 2015. After two months of negotiating, the Settling Parties were able to reach an agreement and executed the Stipulation on October 28, 2015.

PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF DERIVATIVE SETTLEMENT
LEAD CASE NO: 2:14-CV-00540-JCC

8

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

## III. THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

With the assistance of Professor Elhauge, Plaintiffs' counsel designed the corporate governance enhancements to specifically address Plaintiffs' core allegations and concerns. The Proposed Settlement creates significant benefits for Microsoft and Current Microsoft Shareholders, is the result of intense, arms'-length negotiations by experienced counsel, and merits preliminary approval. *See* Stipulation. If finally approved by the Court, Plaintiffs will voluntarily dismiss with prejudice their claims against the Individual Defendants in return for the significant structural and reporting corporate governance changes achieved for the benefit of Microsoft and Current Microsoft Shareholders.

### A. The Standard for Preliminary Approval of a Settlement

There is a strong policy favoring compromises that resolve litigation, "particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995). The "'[s]ettlements of shareholder derivative actions are particularly favored because such litigation "is notoriously difficult and unpredicatable.'" *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) (citations omitted).

Rule 23.1 governs a district court's analysis of the fairness of a settlement of a shareholder derivative action. *Wiener v. Roth*, 791 F.2d 661 (8th Cir. 1986). Pursuant to Rule 23.1, a derivative action "may be settled, voluntarily dismissed, or compromised only with the court's approval. Notice of a proposed settlement, voluntary dismissal, or compromise must be given to shareholders or members in the manner the court orders." Fed. R. Civ. P. 23.1(c).

Further, under Ninth Circuit precedent, courts grant preliminary approval of settlement, including approval of the notice to shareholders and the proposed method of notice, before having the final settlement hearing. *See, e.g.*, *NVIDIA Corp.*, 2008 WL 5382544, at *2. In order to grant preliminary approval, the Court need only conclude that the settlement of the

PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF DERIVATIVE SETTLEMENT
LEAD CASE NO: 2:14-CV-00540-JCC

9

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

claims on the agreed upon terms is "within the range of possible approval." *Id.* As the *Manual for Complex Litigation* explains:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorney and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, as which arguments and evidence may be presented in support of an in opposition of the settlement.

*Manual for Complex Litigation* § 30.41, at 237 (3d ed. 1995); *see also Ellis v. Naval Air Rework Facilitity*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd* 661 F.2d 939 (9th Cir. 1981).

To determine whether the Proposed Settlement is "within the range of possible approval," the Court must evaluate whether the Proposed Settlement is "fair, reasonable, and adequate" and ensure that the agreement is "not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 615 (9th Cir. 1982); *see also In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 377 (9th Cir. 1995) (citation omitted). As discussed below, the Proposed Settlement is "fair, reasonable, and adequate" and was reached after intense, arms-length negotiations.

### B. The Proposed Settlement Serves the Interests of Microsoft and Current Microsoft Shareholders

The substantive factors that courts in this Circuit consider to determine whether to grant approval of a proposed derivative action settlement all support a finding that this Proposed Settlement merits preliminary approval. *NVIDIA Corp.*, 2008 WL 5382544, at *2. Specifically, the Proposed Settlement merits approval by the Court because it fairly and adequately serves the interests of shareholders and the Company on whose behalf the Action was instituted. *Id.* at *4.

If the Proposed Settlement is approved, Defendants will create a new Antitrust Compliance Office that will operate for a term of at least five years – and to be continued thereafter with the Board's discretion – with a broad mandate to oversee and monitor

PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF DERIVATIVE SETTLEMENT
LEAD CASE NO: 2:14-CV-00540-JCC

10

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

Microsoft's antitrust compliance practice concerning existing EC commitments and mandates and any future EU and U.S. regulatory decisions, consent decrees, commitments and undertakings entered into during the five-year term of the Antitrust Compliance Office by Microsoft relating to any antitrust issues including, but not limited to, tying, bundling and exclusive dealing. Stipulation at Exhibit A. Microsoft will establish a fund of $42.5 million to provide for the first five years of the Antitrust Compliance Office budget. *Id.*

The Antitrust Compliance Office will be led by Microsoft's Antitrust Compliance Officer who will have the authority and ability to: (i) hire additional staff for the Antitrust Compliance Office as needed; and (ii) retain independent outside counsel, experts and/or consultants with appropriate expertise in the discharge of his or her responsibilities. *Id.* The Antitrust Compliance Officer may also – with the approval of the RPPC – retained technical experts in software design and programming and antitrust economics experts to assist the evaluation of antirust compliance issues. *Id.*

The Antitrust Compliance Officer shall also have expanded reporting responsibilities to the Board. *Id.* Specifically, the Antitrust Compliance Officer shall report to the RPPC at every regularly scheduled meeting of the Committee and report to the Board at least annually concerning the monitoring of the Company's antitrust compliance and commitments. *Id.* The RPPC will also have independent, outside antitrust counsel. *Id.* The Antitrust Compliance Officer will also prepare a yearly overview of the general activities of the Antitrust Compliance Office for inclusion in Microsoft's Annual Report on Form 10-K or its annual Proxy Statement. *Id.*

The Antitrust Compliance Officer will also be responsible for ensuring that the Microsoft compliance policies and procedures described in the Proposed Settlement will be implemented in any company acquired by Microsoft within twelve months and that all complaints and monitor Microsoft's training for employees to ensure compliance with antitrust law. *Id.* Additionally, Microsoft has agreed to forward all complaints it receives concerning: (i)

PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF DERIVATIVE SETTLEMENT
LEAD CASE NO: 2:14-CV-00540-JCC

11

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

existing EC commitments; (ii) any future EU or U.S. decision, consent decree, commitment or undertaking that may arise during the Antitrust Compliance Officer's term; or (iii) other EU or U.S. antitrust laws or regulations concerning tying, bundling, and exclusive dealing to the Antitrust Compliance Office. *Id.* The Antitrust Compliance Officer will further keep records of all complaints and conduct a review of the complaints at least biannually in order to identify any trends or commonality amongst the complains and will then deliver a report on these reviews to the RPPC. *Id.* In its discretion, the RPPC can then direct the Antitrust Compliance Officer to further investigate or evaluate the issues that are the source of the complaints and the Antitrust Compliance Officer will report the results of the further investigation to the RPPC. *Id.*

Plaintiffs submit that creating the fully funded Antitrust Compliance Office significantly benefits Microsoft and its shareholders by addressing the gravamen of Plaintiffs' allegations giving rise to the Action. Importantly, it is not clear that the Court or a jury could order the creation and funding of the Antitrust Compliance Office even following a full trial on the merits (assuming Plaintiffs would have prevailed).

### C. The Proposed Settlement Is the Result of Intense, Arms-Length Negotiations by Experienced Counsel

The Proposed Settlement resulted from intense (*i.e.* professional and mutually respectful, while at the same time zealous and appropriately hostile) arms-length negotiations by experienced and sophisticated counsel, following discovery in a vigorously litigated Action. At the time the Proposed Settlement was reached, the motions to dismiss the Complaint had been decided, over 8,500 documents had been produced by Defendants and reviewed by Plaintiffs' counsel, and summary judgment had been fully briefed. The Settling Parties' counsel thoroughly tested each other's factual and legal positions during every stage of the litigation. There was certainly no collusion here.

Based upon their investigation into the claims and the underlying events alleged in this Action, legal research, and extensive consultations with Professor Elhauge, Plaintiffs and their

PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF DERIVATIVE SETTLEMENT
LEAD CASE NO: 2:14-CV-00540-JCC

12

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

counsel have concluded that the terms and conditions of the Proposed Settlement are fair, reasonable and adequate and in the best interests of the Company and Current Microsoft Shareholders. In this regard, Plaintiffs and their counsel have taken into account the risks and uncertainties of proceeding with litigation of the Action, including risks of prevailing on the merits. This is consistent with the policy of Courts in this Circuit to favor settlement of shareholder derivative actions in recognition of the fact that such suits are "notoriously difficult and unpredictable." *NVIDIA Corp.*, 2008 WL 5382544, at *2 (quoting *In re AOL Time Warner S'holder Derivative Litig.*, No. 02 CIV. 6302(SWK), 2006 WL 2572114, at *3 (S.D.N.Y. Sept. 6, 2006)).

## IV. THE SEPARATELY NEGOTIATED AGREED FEE IS FAIR AND REASONABLE

After negotiating the principal terms of the Proposed Settlement, counsel for Plaintiffs and Microsoft negotiated the amount of attorneys' fees and expenses to be paid to Plaintiffs' Counsel. As a result of those arm's-length negotiations, Microsoft has agreed that Plaintiffs' Counsel be paid the Agreed Fee in recognition of the substantial benefits conferred upon the Company. The United States Supreme Court has endorsed this type of consensual resolution of attorneys' fees issues in these kinds of cases as the ideal toward which litigants should strive. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee."); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970) (holding that, under the "substantial benefit" doctrine, counsel who prosecute a shareholders' derivative case which confers benefits on the corporation are entitled to an award of attorneys' fees and costs). The decisions of courts within this District are in accord. *See, e.g., In re F5 Networks, Inc. Derivative Litigation* ("*F5 Networks*"), *Final Judgment at ¶8* (Turner Decl. at Ex. 2); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Sinegal, et al.*, No. 2:08-cv-01450-TSZ, slip op. at 1110 (W.D. Wash. June 10, 2011) ("*Costco*"). Moreover, where, as here, there is no evidence of collusion and no

PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF DERIVATIVE SETTLEMENT
LEAD CASE NO: 2:14-CV-00540-JCC

13

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

detriment to the parties, the court should give "substantial weight to a negotiated fee amount." *Ingram v. Coca-Cola Co.,* 200 F.R.D. 685, 695 (N.D. Ga. 2001). Accordingly, Plaintiffs respectfully submit that the separately negotiated attorneys' fee is fair and reasonable given the substantial benefits conferred by the litigation.

## V. THE PROPOSED NOTICE IS ADEQUATE AND REASONABLE

If the Court grants preliminary approval, Microsoft will notify Current Microsoft Shareholders pursuant to the Preliminary Approval Order of the Settlement by: (1) issuing a Form 8-K enclosing the full Notice of Pendency and Proposed Settlement of Shareholder Derivative Litigation (the "Notice") and the Stipulation; (2) posting the Notice and a copy of the Stipulation on its website; and (3) arranging for publications of a Summary notice to be published one time in *Investors' Business Daily*.

The Form 8-K and publication notice will advise Current Microsoft Shareholders of the essential terms of the Proposed Settlement and the Agreed Fee.[4] It also will set forth the procedure for objecting to the Proposed Settlement or the Agreed Fee, and will provide specifics on the date, time and place of the Settlement Hearing, thereby satisfying the requirements of Rule 23.1.

## VI. PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Proposed Settlement, Plaintiffs also respectfully request that the Court set dates by which notice of the Proposed Settlement will be

---

[4] Use of a Form 8-K to advise shareholders of the terms of the Proposed Settlement, together with publication notice, has become common practice in derivative actions. *See, e.g., In re Rambus Inc. Derivative Litig.* No. C 06-3513, 2009 WL 166689, at *2 (N.D. Cal. Jan. 20, 2009) (discussing notice by Form 8-K, Business Wire press release and publication on the company website); *In re Comverse Tech., Inc. Derivative Litig.*, 06-cv-1849, slip op. at 3 (E.D.N.Y. Apr. 2, 2010); *In re MoneyGram Int'l, Inc. Derivative Litig.*, 09 Civ. 3208 (DSD) (D. Minn. Apr. 1, 2010); *In re Marvell Tech. Grp. Ltd. Derivative Litig.*, No. C-06-3894-RMW, slip op. at 2 (N.D. Cal. May 21, 2009); *City of Pontiac Gen. Emps.'. Ret. Sys. v. Langone, derivatively on behalf of the Home Depot, Inc.*, 2006 Civ. 122302, slip op. at 4 (Ga. Super. Ct. June 10, 2008).

PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF DERIVATIVE SETTLEMENT
LEAD CASE NO: 2:14-CV-00540-JCC

14

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

distributed to Current Microsoft Shareholders, dates by which Current Microsoft Shareholders may comment on the Proposed Settlement, and a hearing to consider final approval of the Proposed Settlement. As set forth in the Notice Order, the Settling Parties propose the following:

| Summary Notice of Settlement published in *Investor's Business Daily* | Five (5) business days after Court enters Preliminary Approval Order (the "Notice Date") |
|---|---|
| Filing of Notice of Proposed Settlement and Stipulation via a Form 8-K with the SEC | On the Notice Date |
| Posting of Notice of Proposed Settlement on Microsoft's website | On the Notice Date |
| Last day for Current Microsoft Shareholders to comment on the Settlement | Fourteen (14) calendar days prior to the Settlement Hearing |

In addition, Plaintiffs propose that the Settlement Hearing be scheduled for January 5, 2016. This time period will provide Current Microsoft Shareholders adequate time to consider the proposed Settlement. The Settlement Hearing date can be inserted in paragraph 2 of the Notice Order by the Court. This schedule is similar to those used in other derivative settlements in case pending in the Western District of Washington, and provides due process to Current Microsoft Shareholders with respect to their rights concerning the Settlement. *See, e.g., F5 Networks Preliminary Approval Order* at ¶¶3-6 (approving three-part notice regiment for settlement in shareholder derivative action); *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Sinegal, et al.*, 2:08-cv-01450-TSZ Preliminary Approval Order at ¶¶3-6 (same) Turner Decl. at Exs. 3-4.

## VII.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request preliminary approval of the proposed Settlement.

DATED this 29th day of October, 2015.

s/ Duncan C. Turner
DUNCAN C. TURNER, WSBA No. 20597
**BADGLEY MULLINS TURNER PLLC**

PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF DERIVATIVE SETTLEMENT
LEAD CASE NO: 2:14-CV-00540-JCC

15

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

19929 Ballinger Way NE, Suite 200
Shoreline, Washington, 98155
Telephone:  (206) 621-6566
Facsimile:  (206) 621-9686
Email:  dturner@badgleymullins.com

**Liaison Counsel for Plaintiffs**

**THE WEISER LAW FIRM, P.C.**
ROBERT B. WEISER (admitted *Pro Hac Vice*)
BRETT D. STECKER (admitted *Pro Hac Vice*)
JAMES M. FICARO (admitted *Pro Hac Vice*)
22 Cassatt Avenue, First Floor
Berwyn, PA 19312
Telephone:  (610) 225-2677
Facsimile:  (610) 408-8062
Email:  rw@weiserlawfirm.com
         bds@weiserlawfirm.com
         jmf@weiserlawfirm.com

**THE WEISER LAW FIRM, P.C.**
KATHLEEN A. HERKENHOFF
12707 High Bluff Drive, Suite 200
San Diego, CA 92130
Telephone:  (858) 794-1441
Facsimile:  (858) 794-1450
Email:  kah@weiserlawfirm.com

**BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP**
MARK LEBOVITCH
DAVID WALES
CHRISTOPHER J. ORRICO
1285 Avenue of the Americas, 38th Floor
New York, NY 10019
Telephone:  (212) 554-1400
Facsimile:  (212) 554-1444
Email:  markl@blbglaw.com
         DWales@blbglaw.com
         christopher.orrico@blbglaw.com

**RYAN & MANISKAS, LLP**
KATHARINE M. RYAN
RICHARD A. MANISKAS

PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF DERIVATIVE SETTLEMENT
LEAD CASE NO: 2:14-CV-00540-JCC

16

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

995 Old Eagle School Road, Suite 311
Wayne, PA 19087
Telephone: 484-588-5516
Facsimile: 484-450-2582
Email:   kryan@rmclasslaw.com
          rmaniskas@rmclasslaw.com

**Co-Lead Counsel for Plaintiffs**


**LAW OFFICE OF ALFRED G. YATES, JR., P.C.**
ALFRED G. YATES, JR.
GERALD L. RUTLEDGE
519 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA 15219
Telephone: (412) 391-5164
Email:   yateslaw@aol.com

**Additional Counsel for Plaintiffs**

PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF DERIVATIVE SETTLEMENT
LEAD CASE NO: 2:14-CV-00540-JCC

17

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

## CERTIFICATE OF SERVICE

I, hereby certify that on October 29, 2015, I caused a true and correct copy of Plaintiff's

Motion for Preliminary Approval of Derivative Settlement to be served on the following counsel

for Nominal Defendant and Individual Defendants by electronic mail:

George E. Greer
Daniel J. Dunne
Charles J. Ha
ORRICK, HERRINGTON & SUTCLIFFE LLP
701 5th Avenue, Suite 5600
Seattle, WA 08104
ggreer@orrick.com
ddunne@orrick.com
charlesha@orrick.com

Stephen M. Rummage
Brendan T. Mangan
Candice M. Tewell
DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
stephenrummage@dwt.com
brendanmangan@dwt.com
candicetewell@dwt.com

*s/ Duncan C. Turner*
Duncan C. Turner

PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF DERIVATIVE SETTLEMENT
LEAD CASE NO: 2:14-CV-00540-JCC

18

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686