THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KIM BAROVIC, et al., | CASE NO. C14-0540 JCC |
| Plaintiffs, | (Consolidated with Case No. 2:14-cv-00586-JCC) |
| v. | |
| STEVEN A. BALLMER, et al., | FINAL ORDER AND JUDGMENT |
| Defendants. | |

This matter comes before the Court on Plaintiffs' motion for final approval of derivative litigation settlement and agreed-to attorney fees (Dkt. No. 103), and the January 12, 2016 hearing pursuant to Federal Rule of Civil Procedure 23(e) (the "Final Approval Hearing") as to the fairness, reasonableness, and adequacy of the Parties' proposed settlement set forth in the Stipulation and Agreement of Settlement dated October 28, 2015 (the "Stipulation") (Dkt. No. 96-1), which was preliminarily approved by the Court on November 24, 2015 (the "Preliminary Approval Order") (Dkt. No. 98).

A.  **Final Approval of Class Settlement**

Due and adequate notice having been given to Current Microsoft Shareholders as required in the Preliminary Approval Order, and the Court having considered all papers filed and

1  proceedings had herein and otherwise being fully informed in the premises and good cause

2  appearing therefore, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

3      1.      This Final Order and Judgment incorporates by reference the definitions in the

4  Stipulation, and unless otherwise defined herein, all capitalized terms used herein shall have the

5  same meanings as set forth in the Stipulation.

6      2.      The Court has jurisdiction to enter this Final Order and Judgment. The Court has

7  jurisdiction over the subject matter of the Action, including all matters necessary to effectuate

8  the Settlement, and over all Parties and Current Microsoft Shareholders.

9

10     3.      The Court finds that the Settlement set forth in the Stipulation is fair, reasonable,

11 and adequate, and in the best interests of Microsoft and Current Microsoft Shareholders, and

12 pursuant to Fed. R. Civ. P. 23.1 the Court hereby finally approves the Settlement in all respects,

13 finds that the Settlement set forth in the Stipulation provides material benefits to Microsoft and

14 Current Microsoft Shareholders, and orders the Parties to perform its terms to the extent the

15 Parties have not already done so.

16

17     4.      The Action and all claims asserted therein are hereby ordered as compromised,

18 settled, released, discharged and dismissed with prejudice by virtue of the proceedings herein

19 and this Final Order and Judgment.  As among Plaintiffs, Microsoft, and the Individual

20 Defendants, the Parties are to bear their own costs, except as otherwise provided in the

21 Stipulation, the Preliminary Approval Order, and this Final Order and Judgment.

22

23     5.      Upon the Effective Date of the Settlement, (i) Plaintiffs and all other Current

24 Microsoft Shareholders shall be deemed to have, and by operation of the law and of the

25 Judgment shall have, fully, finally and forever released, relinquished and discharged their right to

26 assert derivatively on behalf of the Company any and all of the Plaintiffs' Released Claims

against the Defendants' Released Persons, and shall forever be barred and enjoined from instituting, commencing, or prosecuting derivatively on behalf of the Company any and all of the Plaintiffs' Released Claims against the Defendants' Released Persons; and (ii) Microsoft shall be deemed to have, and by operation of the law and of the Judgment shall have, fully, finally, and forever released, relinquished and discharged its right to assert directly any and all of the Plaintiffs' Released Claims against the Defendants' Released Persons, and shall forever be barred and enjoined from instituting, commencing, or prosecuting directly any and all of the Plaintiffs' Released Claims against the Defendants' Released Persons.

6.      Upon the Effective Date of the Settlement, Defendants shall be deemed to have, and by operation of the law and of the Judgment shall have, fully, finally and forever released, relinquished and discharged any and all of the Defendants' Released Claims against the Plaintiffs' Released Persons, and shall forever be barred and enjoined from instituting, commencing, or prosecuting any and all of the Defendants' Released Claims against the Plaintiffs' Released Persons.

7.      Notwithstanding paragraphs 5 and 6 above, nothing in this Final Order and Judgment shall in any way impair or restrict the rights of any Party to enforce the terms of the Stipulation or this Final Order and Judgment.

8.      The Court finds that the notice to Current Microsoft Shareholders posted on the website of Microsoft, filed by Microsoft with the SEC via a Current Report on Form 8-K, and published in *Investor's Business Daily*:  (a) was provided pursuant to and in the form and manner directed by the Preliminary Approval Order; (b) meets the requirements of Fed. R. Civ. P. 23.1 and due process; and (c) constitutes due and sufficient notice of all matters relating to the Settlement to all Persons entitled to such notice.

FINAL ORDER AND JUDGMENT
PAGE - 3

9.      Pursuant to and in compliance with Fed. R. Civ. P. 23.1 and due process, the Court hereby finds that the notice provided advised Persons in interest of the terms of the Settlement and the Agreed Fee and of their right to object thereto, and a full and fair opportunity was accorded to all Persons entitled to be heard with respect to the foregoing matters.

10.      This Court finds that the Action has been properly maintained as a derivative action according to the provisions of Fed. R. Civ. P. 23.1, and the Court finds that throughout the course of the Action, the Parties and their counsel at all times complied with the requirements of Fed. R. Civ. P. 11.

11.      Neither the Stipulation (whether or not consummated), including the exhibits thereto, the negotiations leading to the execution of the Stipulation, nor any proceedings taken pursuant to or in connection with the Stipulation and/or approval of the Settlement (including any arguments proffered in connection therewith): (i) shall be offered against any of the Defendants' Released Persons as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Defendants' Released Persons with respect to the truth of any fact alleged by Plaintiffs or the validity of any claim that was or could have been asserted or the deficiency of any defense that has been or could have been asserted in the Action or in any other litigation, or of any liability, negligence, fault, or other wrongdoing of any kind of any of the Defendants' Released Persons or in any way referred to for any other reason as against any of the Defendants' Released Persons, in any civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the Settlement; or (ii) shall be offered against any of the Plaintiffs' Released Persons as evidence of, or construed as, or deemed to be evidence of any presumption, concession or admission by any of the Plaintiffs' Released Persons that any of Plaintiffs' claims are without merit, that any of the

Defendants had meritorious defenses, or that damages recoverable under the Complaint would not have exceeded the Settlement consideration or with respect to any liability, negligence, fault or wrongdoing of any kind, or in any way referred to for any other reason as against any of the Plaintiffs' Released Persons, in any civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the Settlement; provided, however, that the Parties, the Released Persons, and their respective counsel may file the Stipulation and/or this Final Order and Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good-faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

12.   Without affecting the finality of this Final Order and Judgment in any way, the Court hereby retains continuing jurisdiction over: (a) implementation of the Settlement; (b) the Parties for the purpose of construing, enforcing, and administering the Stipulation and this Final Order and Judgment; and (c) any other matters related to the foregoing.

13.   Without further approval from the Court, the Parties are hereby authorized to agree to and adopt such amendments or modifications of the Stipulation to effectuate the Settlement that: (a) are not materially inconsistent with this Final Order Judgment; and (b) do not materially limit the rights of Current Microsoft Shareholders in connection with the Settlement. Without further order of the Court, the Parties may agree to reasonable extensions of time to carry out any provisions of the Settlement.

14.   This Final Order and Judgment is a final, appealable judgment and should be entered by the Clerk of the Court forthwith in accordance with Fed. R. Civ. P. 58.

### B.  Attorney Fees and Incentive Awards

Plaintiffs move the Court to approve an attorney fee award of $7.3 million. Under federal law, "a court may grant fees and expenses to derivative counsel when the derivative suit creates a common fund or confers a substantial corporate benefit." *In re Oracle Sec. Litig.*, 852 F. Supp. 1437, 1445 (N.D. Cal. 1994). The Parties stipulate that Plaintiffs' counsel's requested fee was negotiated with Defendants separately from the rest of the settlement, and was approved by Microsoft's Board of Directors. (Dkt. No. 96-1 at 15.) Nonetheless, it remains the Court's responsibility to approve this fee only if it is reasonable. *See In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) ("While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." (internal citation omitted)).  The Court finds that the creation—and guaranteed funding of $42.5 million over five years—of an Antitrust Compliance Office (ACO) at Microsoft confers a substantial corporate benefit, and that Plaintiffs' counsel have earned a fee award. (Dkt. No. 96-1 at 30-34.) However, the $7.3 million award they have requested is unreasonably high, regardless of whether Defendants have agreed to pay it. *See Staton v. Boeing Co.*, 327 F.3d 938, 966 (9th Cir. 2003) ("Absent some unusual explanation, a defendant would not agree in a class action settlement to pay out of its own pocket fees measurably higher than it could conceivably have to pay were the fee amount litigated, unless there was some non-fee benefit the defendant received thereby.").

Here, "[b]ecause Washington law governed the claim, it also governs the award of fees." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). In matters of class action attorney fees, the "Washington practice" is to look to federal law for guidance. *Id.* Under federal

1    law, "[t]he district court may exercise its discretion to choose between the lodestar and

2    percentage method in calculating fees." *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d

3    988, 992 (9th Cir. 2010). "The 'lodestar method' is appropriate in class actions brought under

4    fee-shifting statutes…where the relief sought—and obtained—is often primarily injunctive in

5    nature and thus not easily monetized, but where the legislature has authorized the award of fees

6    to ensure compensation for counsel undertaking socially beneficial litigation." *In re Bluetooth*

7    *Headset Products Liab. Litig.*, 654 F.3d at 941. Even though a "fee-shifting statute" is not

8    involved here, the Court finds that the lodestar method is appropriate for three reasons. First, and

9    indisputably, "plaintiffs' counsel's request for attorneys fees involves an element of fee shifting."

10   *Edelman v. PSI Associates II, Inc.*, 147 F.R.D. 217, 220 (C.D. Cal. 1993). Second, as Plaintiffs

11   themselves have argued, "[t]he complexity and the societal importance of shareholder litigation

12   requires the involvement of the most able counsel obtainable." (Dkt. No. 103 at 38.) And third,

13   because the settlement has not created a common fund or other direct, quantifiable monetary

14   benefit for Plaintiffs, "there is no way to gauge the net value of the settlement or any percentage

15   thereof." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). The lodestar method

16   therefore provides a useful check on Plaintiffs' requested fee, as it enables the Court to determine

17   whether it is truly reasonable. *See Staton*, 327 F.3d at 966 (holding that if the parties had

18   negotiated a fee award, "the district court's review would have focused on the reasonableness of

19   the fee request under the lodestar calculation method").

20        "Under the lodestar/multiplier method, the district court first calculates the 'lodestar' by

21   multiplying the reasonable hours expended by a reasonable hourly rate." *In re Washington Pub.*

22   *Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1306 (9th Cir. 1994). Plaintiffs' counsel have

23   expended a total of 2,818.1 hours on this matter. (Dkt. No. 108.) After multiplying this figure by

FINAL ORDER AND JUDGMENT
PAGE - 7

Plaintiffs' counsel's various hourly rates—each of which the Court finds to be reasonable, given the complexity of the matter—the Court finds that Plaintiffs' counsel's lodestar is $1,357,058.50.[1] (*Id.*) In addition, Plaintiffs' counsel have accrued $105,985.94 in costs. (*Id.*)

This lodestar figure is "presumptively reasonable." *Cunningham v. Cnty. of Los Angeles,* 879 F.2d 481, 488 (9th Cir. 1988). However, the Court "may adjust it upward or downward by an appropriate positive or negative multiplier reflecting a host of 'reasonableness' factors, 'including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment.'" *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d at 941-42 (quoting *Hanlon,* 150 F.3d at 1029); *see also In re Fab Universal Corp. S'holder Derivative Litig.*, No. 14 CIV 687(RWS), 2015 WL 7299773, at *4 (S.D.N.Y. Nov. 17, 2015) (applying several factors, including the complexity of the litigation and the benefit achieved, to determine whether the lodestar should be adjusted in a shareholder derivative action). These are known as the *Kerr* factors, and courts have held that a number of them are already subsumed in the lodestar calculation itself. *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d at 942 n.7.[2] The *Kerr* factors—the most important of which is the benefit

---

[1] In its previous Minute Order, (Dkt. No. 109), the Court combined Plaintiffs' counsel's fees and its costs to reach a lodestar, however this was improper. *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d at 1306.

[2] The rest of the factors, which the Court has considered where appropriate, are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and the ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

achieved—"only warrant a departure from the lodestar figure in 'rare and exceptional cases.'" *Id.* at 942 & n.7 (quoting *Fischer v. SJB–P.D., Inc.,* 214 F.3d 1115, 1119 n. 4 (9th Cir. 2000)). In moving for a fee of $7.3 million, Plaintiffs request a lodestar multiplier of roughly 5.38. The Court finds that the *Kerr* factors support an upward adjustment to the lodestar. They do not, however, justify Plaintiffs' requested fee.

Plaintiffs have achieved a substantial benefit for Microsoft and its shareholders, and have done so at significant risk. But this does not mean they are entitled to a multiplier of 5.38. In *Vizcaino*, the Ninth Circuit tallied the multipliers in 23 class action suits; the average was 3.28. *Cohn v. Nelson*, 375 F. Supp. 2d 844, 862 (E.D. Mo. 2005) (citing *Vizcaino*, 290 F.3d at 1052-54). This is more than two points below Plaintiffs' counsel's requested multiplier. The Court therefore finds it hard to imagine, as Plaintiffs' counsel seem to suggest, that attorneys will be dissuaded from pursuing shareholder derivative suits if the millions of dollars in fees they are awarded only double or triple their lodestar. Thus, even though the Court finds that this is the "rare" case that warrants a departure from the lodestar, it is not so "exceptional" as to justify Plaintiffs' counsel's requested fee. *See Staton*, 327 F.3d at 966 ("Were the amount of fees Boeing agreed to pay in the settlement agreement distinctly higher than the fees class counsel could have been awarded by the district court using the lodestar method, the court would almost surely have had to find the fees unreasonable."). Plaintiffs have convinced Microsoft to fund the ACO for the next five years—and this is no doubt a valuable benefit. But there is no indication that the ACO will remain a permanent fixture at Microsoft. Under the settlement, Microsoft may

---

*In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d at 942 n.7 (quoting *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)).

choose to dissolve the office after five years, essentially nullifying the long-term benefits of Plaintiffs' counsel's achievement. (Dkt. No. 96-1 at 30.) The Court therefore finds that Plaintiffs' counsel's efforts—while praiseworthy—merit them a multiplier of 2.5, rather than 5.38, for a fee of $3,392,646.25. In addition, the Court awards Plaintiffs their costs of $105,985.94.

Plaintiffs also move the Court to approve incentive awards of $5,000 each to be paid to the Named Plaintiffs from Plaintiffs' counsel's fee award. (Dkt. No. 96-1 at 16.) "Incentive awards are fairly typical in class actions." *Hartless v. Clorox Co.,* 273 F.R.D. 630, 646-47 (S.D. Cal. 2011). However, they must not be so disproportionate as to undermine the adequacy of the class representatives. *Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1163-64 (9th Cir. 2013). In this instance, the Court finds that the incentive awards requested are modest in light of the results obtained by counsel, and are in line with those awarded in other cases. *See Pelletz v. Weyerhaeuser Co.*, 592 F. Supp. 2d 1322, 1330 n.9 (W.D. Wash. 2009) (cataloguing other class action settlements that have included incentive awards). The Court therefore approves Plaintiffs' requested incentive awards.

## C. Conclusion

For the foregoing reasons, Plaintiffs' motion for final approval of derivative litigation settlement and agreed-to attorney fees (Dkt. No. 103) is GRANTED IN PART. The Court hereby APPROVES the Stipulation (Dkt. No. 96-1), but only awards Plaintiffs $3,392,646.25 in fees and $105,985.94 in costs, rather than their requested total of $7.3 million.

//

//

//

//

DATED this 13th day of January 2016.

John C. Coughenour
UNITED STATES DISTRICT JUDGE